**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone:  (310) 405-7190
E-mail:  jpafiti@pomlaw.com

**Attorneys for Plaintiff**
- *additional counsel on signature page*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BLOOM ENERGY CORPORATION, KR SRIDHAR, RANDY FURR, L. JOHN DOERR, SCOTT SANDELL, EDDY ZERVIGON, COLIN L. POWELL, PETER TETI, and MARY A. AYOTTE, <br><br> Defendants. | Case No.: <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiff Elissa M. Roberts ("Plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Bloom Energy Corporation ("Bloom Energy" or the "Company"), as well as media and analyst reports about the Company and Company press releases.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this securities class action on behalf of all persons who purchased or otherwise acquired Bloom Energy common stock pursuant or traceable to the Form S-1 Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with Bloom Energy's July 2018 initial public stock offering (the "IPO" or "Offering").

2.     This action asserts non-fraud strict liability claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") against Bloom Energy and certain Bloom Energy officers and directors (collectively, the "Defendants").

3.     Bloom Energy is a San Jose, California-based corporation that designs, manufactures, and sells solid-oxide fuel cell systems.

4.     In July 2018, Defendants commenced the IPO, issuing approximately 18 million shares of its common stock to the investing public at $15.00 per share, all pursuant to the Registration Statement.

5.     The Registration Statement was materially misleading as it failed to disclose known events and trends that were severely affecting the Company's business and that made investment in Bloom Energy significantly riskier than presented in the Registration Statement.  In particular, the Registration Statement failed to disclose that the Company was experiencing material construction

delays. These construction delays would cause system deployments (or "acceptances" as Defendants referred to them) to fall significantly below even the low end of the Company's previously announced guidance.

6. While the Registration Statement purported to warn of risks that *"may* arise," which could materially affect the Company, in actuality these material negative events were already occurring. As a result, the representations and purported risk disclosures were false and misleading because, by the time of the IPO, construction delays had already impacted or would soon impact Bloom Energy's ability to deliver acceptances in line with its guidance.

7. With these misrepresentations and omissions, the IPO was lucrative for Defendants, who raised approximately $284.3 million in net proceeds.

8. Just one fiscal quarter after the IPO, on November 5, 2018, the Company announced it delivered only 206 acceptances for the quarter, below even the low end of its previously provided guidance of 215 to 235 acceptances. In addition, it provided guidance of only 225 to 275 acceptances for the fourth quarter of 2018, well below the 300 plus acceptances that analysts expected.

9. As the market digested this news, Bloom Energy stock plummeted to under $10.00 per share, $5.00 below the IPO price, wiping out tens of millions of dollars investors provided to the Company in the IPO.

10. Defendants are responsible for the false and misleading statements and omitted material facts made in connection with the Offering. Defendants authorized the Registration Statement or participated in making the false and misleading statements contained therein. The Underwriter Defendants (as defined herein) orchestrated and conducted the Offering.

11. Plaintiff now brings this action on behalf of the Class (as defined herein) to remedy the wrongful conduct described herein.

## JURISDICTION AND VENUE

12. The claims alleged herein arise under Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v). Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) as Bloom Energy is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Bloom Energy common stock pursuant or traceable to the Registration Statement and was damaged thereby.

15. Defendant Bloom Energy is a Delaware corporation with principal executive offices located at 4353 North First Street, San Jose, California. Bloom Energy designs, manufactures, and sells solid-oxide fuel cell systems for on-site power generation. The fuel cell systems, or Energy Servers, convert fuel into electricity without combustion, providing efficient energy generation with reduced operating costs and lower greenhouse gas emissions.

16. Defendant KR Sridhar ("Sridhar") is Bloom Energy's Founder and a director and has been since January 2001; Chief Executive Officer and Chairman of the Board of Directors and has been since April 2002; and President since at least July 2011. Defendant Sridhar reviewed and signed the Registration Statement.

17.     Defendant Randy Furr ("Furr") is Bloom Energy's Chief Financial Officer and has been since April 2015, and Executive Vice President and has been since at least March 2016.  Defendant Furr reviewed and signed the Registration Statement.

18.     Defendant L. John Doerr ("Doerr") is Bloom Energy's Lead Independent Director and has been since July 2018 and a director and has been since May 2002.  Defendant Doerr reviewed and signed the Registration Statement.

19.     Defendant Scott Sandell ("Sandell") is a Bloom Energy director and has been since August 2003.  Defendant Sandell reviewed and signed the Registration Statement.

20.     Defendant Eddy Zervigon ("Zervigon") is a Bloom Energy director and has been since October 2007.  Defendant Zervigon reviewed and signed the Registration Statement.

21.     Defendant Colin L. Powell ("Powell") is a Bloom Energy director and has been since January 2009.  Defendant Powell reviewed and signed the Registration Statement.

22.     Defendant Peter Teti ("Teti") is a Bloom Energy director and has been since November 2015.  Defendant Teti reviewed and signed the Registration Statement.

23.     Defendant Mary K. Bush ("Bush") is a Bloom Energy director and has been since January 2017.  Defendant Bush reviewed and signed the Registration Statement.

24.     Defendant Kelly A. Ayotte ("Ayotte") is a Bloom Energy director and has been since November 2017.  Defendant Ayotte reviewed and signed the Registration Statement.

25.     The Defendants named in ¶¶16-24 are collectively referred to herein as the "Individual Defendants."   The Individual Defendants each signed or were identified as incoming officers or directors in the Registration Statement, and/or solicited the investing public to purchase securities issued pursuant thereto, hired and assisted the underwriters, planned and contributed to the IPO and Registration Statement, and attended road shows and other promotions to meet with and present

4

favorable information to potential Bloom Energy investors, all motivated by their own and the Company's financial interests.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired stock of Bloom Energy pursuant or traceable to the Company's Registration Statement issued in connection with the IPO and who were damaged thereby (the "Class").  Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of the Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Bloom Energy's stock is actively traded on the New York Stock Exchange ("NYSE") under the ticker symbol "BE" and millions of shares were sold in the IPO.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal securities law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated federal securities laws;

(b)     whether statements made by the Defendants in the Registration Statement contained materially false and misleading statements, or misrepresented or omitted material information about the Company's business operations; and

(c)     the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## DEFENDANTS' FALSE AND MISLEADING
## REGISTRATION STATEMENT AND PROSPECTUS

32.     On June 12, 2018, Defendants filed with the SEC on Form S-1 a draft Registration Statement, which would register the Bloom Energy shares to be issued in the Offering.  On July 24, 2018, Defendants filed a final amendment to the Registration Statement, which registered over 20.7 million Bloom Energy shares for sale.  The SEC declared the Registration Statement effective that same day.  Defendants filed the final Prospectus for the IPO, which forms part of the Registration Statement, on July 26, 2018, pricing the IPO at $15.00 per share.  The Company and the Individual Defendants prepared, reviewed, or signed the Registration Statement which Defendants utilized to complete the Offering.  Through the IPO, Defendants issued and sold 20.7 million shares of Class A stock, all

1
2
pursuant to the Registration Statement.  The Company received net proceeds of $284.3 million, net of

underwriting discounts, commissions, and estimated offering costs.

3
4
5
6
33.     The Registration Statement explained that there is significant lead time between ordering

the Company's products and actual installation of its energy generating systems.  In particular, the

Registration Statement explained that:

7
8
9
10
> Deployments might span nine to 12 months from the time the order is booked. Once we
> have the design completed and permits in hand, it typically takes us about three months
> to manufacture, install, and commission a system. This generally allows us well over six
> months to diligence, design, permit, and construct the site installation infrastructure
> necessary to deploy our systems.

11
12
13
14
15
16
17
18
34.     It is only after a system is installed, producing power, and the ownership changes that

the Company records an "acceptance."   Analysts appreciated that this long lead time made the

Company's forecasts on acceptances reliable.   The Prospectus stated that due to the variability in

customer purchase options, investors should understand the Company's business by looking at its "key

operating metrics," namely acceptances, billings, and unit level costs.  The Prospectus explained that

"[t]hese operating metrics provide useful insight into the operational trajectory, cash generation, and

cost profile of the business."

19
20
21
35.     The Prospectus described certain "risks" related to Bloom Energy, including that the

Company was dependent on construction schedules that may be delayed. In particular, the Registration

Statement stated:

22
23
24
> Our business is subject to risks associated with construction, cost overruns and delays,
> including those related to obtaining government permits, and other contingencies that
> may arise in the course of completing installations.

25
*       *       *

26
27
28
> ***Our business is subject to risks associated with construction, utility
> interconnection, cost overruns and delays, including those related to obtaining
> government permits, and other contingencies that may arise in the course of
> completing installations.***

7

1
2
3
4

Because we do not recognize revenue on the sales of our Energy Servers until installation and acceptance, our financial results are dependent, to a large extent, on the timeliness of the installation of our Energy Servers. Furthermore, in some cases, the installation of our Energy Servers may be on a fixed price basis, which subjects us to the risk of cost overruns or other unforeseen expenses in the installation process.

5

\* \* \*

6
7
8
9
10
11
12
13
14
15
16
17
18

The construction, installation and operation of our Energy Servers at a particular site is also generally subject to oversight and regulation in accordance with national, state and local laws and ordinances relating to building codes, safety, environmental protection and related matters, and typically requires various local and other governmental approvals and permits, including environmental approvals and permits, that vary by jurisdiction. In some cases, these approvals and permits require periodic renewal. It is difficult and costly to track the requirements of every individual authority having jurisdiction over our installations, to design our Energy Servers to comply with these varying standards, and to obtain all applicable approvals and permits. We cannot predict whether or when all permits required for a given project will be granted or whether the conditions associated with the permits will be achievable. The denial of a permit or utility connection essential to a project or the imposition of impractical conditions would impair our ability to develop the project. In addition, we cannot predict whether the permitting process will be lengthened due to complexities and appeals. Delay in the review and permitting process for a project can impair or delay our and our customers' abilities to develop that project or increase the cost so substantially that the project is no longer attractive to us or our customers. Furthermore, unforeseen delays in the review and permitting process could delay the timing of the installation of our Energy Servers and could therefore adversely affect the timing of the recognition of revenue related to the installation, which could harm our operating results in a particular period.

19
20
21
22
23
24

In addition, the completion of many of our installations is dependent upon the availability of and timely connection to the natural gas grid and the local electric grid. In some jurisdictions, the local utility company(ies) or the municipality has denied our request for connection or required us to reduce the size of certain projects. Any delays in our ability to connect with utilities, delays in the performance of installation-related services or poor performance of installation-related services by our general contractors or sub-contractors will have a material adverse effect on our results and could cause operating results to vary materially from period to period.

25
26
27
28

Furthermore, we rely on third party general contractors to install Energy Servers at our customers' sites. We currently work with a limited number of general contractors, which has impacted and may continue to impact our ability to make installations as planned. Our work with contractors or their sub-contractors may have the effect of us being required to comply with additional rules (including rules unique to our customers), working conditions, site remediation and other union requirements, which can add costs and complexity to an installation project. The timeliness, thoroughness

8

and quality of the installation-related services performed by our general contractors and their sub-contractors in the past have not always met our expectations or standards and in the future may not meet our expectations and standards.

\*     \*     \*

In addition to the other risks described in this "Risk Factors" section, the following factors could also cause our financial condition and results of operations to fluctuate on a quarterly basis:

- the timing of installations, which may depend on many factors such as availability of inventory, product quality or performance issues, or local permitting requirements, utility requirements, environmental, health and safety requirements, weather and customer facility construction schedules.

\*     \*     \*

To the extent we are successful in growing our business, we may need to increase our production capacity. Our ability to plan, construct and equip additional manufacturing facilities is subject to significant risks and uncertainties, including the following:

- The expansion or construction of any manufacturing facilities will be subject to the risks inherent in the development and construction of new facilities, including risks of delays and cost overruns as a result of factors outside our control, such as delays in government approvals, burdensome permitting conditions, and delays in the delivery of manufacturing equipment and subsystems that we manufacture or obtain from suppliers.

\*     \*     \*

**Factors Affecting Our Future Performance**

*Delivery and Installation of Our Product*

The timing of delivery and installations of our products have a significant impact on the timing of the recognition of product revenue. Many factors can cause a lag between the time that a customer signs a purchase order and our recognition of product revenue. These factors include the number of Energy Servers installed per site, local permitting and utility requirements, environmental, health and safety requirements, weather and customer facility construction schedules.

36.     The truth was, however, that these risks had already come to fruition, as the Company was facing significant construction delays that would prevent it from reaching even the low end of its publicly stated guidance for acceptances.

9

37.     Further, while the Registration Statement warns that delivery and installation of products are subject to "customer facility construction schedules," it fails to mention that businesses, especially those in the retail business, will not allow construction during the fourth quarter, and due to these construction date blackouts, projects for which acceptances slipped from the third quarter would not be made up in the fourth quarter.

38.     Failure to include these known risks and trends in the Registration Statement violates the law.  First, SEC Regulation S-K, 17 C.F.R. § 229.303, requires disclosure of any known events or uncertainties that, at the time of the Offering, had caused, or were reasonably likely to cause, a materially negative impact on Bloom Energy.  The severe yet undisclosed issues with the Company's construction delays and inability to build in the fourth quarter, were likely to (and in fact did) materially and adversely affect Bloom Energy.

39.     Second, SEC Regulation S-K, 17 C.F.R. § 229.503, required the "Risk Factor" section of the Registration Statement to discuss the most significant factors that made the Offering risky or speculative and that each risk factor adequately described the risk.  Defendants' failure to disclose the already occurring significant problems underlying its base business, as well as the likely material effects it would have on the Company's share price, rendered the Registration Statement's many references to known risks that "*if*" occurring "*may*" or "*could*" adversely affect the Company as false and misleading.  These so-called "risks" were already materializing before the Offering.

## THE TRUTH BEGINS TO EMERGE

40.     On Monday, November 5, 2018, Bloom Energy shocked the market when it announced its disappointing acceptances for the third quarter of fiscal year 2018 results and provided acceptance guidance for the fourth quarter significantly below analysts' expectations.  In particular, the Company reported that it only achieved 206 acceptances, materially below its guidance number of 215 to 235 acceptances.  In addition, the Company announced guidance for the fourth quarter of acceptances

10

between 225 and 275. In contrast, analysts at JP Morgan had estimated 333 acceptances in the fourth quarter.

41.     During the third quarter earnings call, analyst Michael Weinstein at Credit Suisse asked if the acceptances that were delayed in the third quarter would occur in the fourth quarter.  Defendant Furr responded in the negative, explaining that many data center and retail businesses prevent construction during the fourth quarter and weather would be challenging on the East Coast.  In particular, Defendant Furr stated:

> So look, I think when it comes -- we were a bit light in Q3, which we talked about here. And then when it comes to Q4, some of those acceptances in Q3 got pushed to Q4. I think, normally, under normal circumstances here, we'd probably be looking at a bit higher in Q4. But bear in mind, Q4 for us, we have a lot of customers that are, say, in the data center business or in the retail business, and there's a fair amount of blackouts in Q4. Plus, we're often challenged with the weather certainly on the East Coast. And from the estimates that we put out there, the outlook going forward, we just didn't feel comfortable with just taking all that and increasing the amounts in Q4.

42.     The price of Bloom Energy stock fell precipitously, closing as low as $9.21 per share, almost 40% below the IPO price and remains below the IPO price to this date.  All told, investors suffered millions of dollars in losses.

## COUNT I

### (Violations of Section 11 of the Securities Act Against All Defendants)

43.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

44.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against all Defendants.

45.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of the Section 11 claim.

46.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary in order to make the statements made not misleading, and omitted to state material facts required to be stated therein.

47.     Defendant Bloom Energy is the registrant and issuer of the stock sold in the Offering. As issuer of the stock, the Company is strictly liable to plaintiff and the Class for the misstatements and omissions in the Registration Statement.

48.     The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

49.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

50.     By reason of the conduct alleged herein, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

51.     Plaintiff acquired Bloom Energy shares pursuant to the Registration Statement.

52.     Plaintiff and the Class have sustained damages.  The value of Bloom Energy common stock has declined substantially subsequent and due to Defendants' violations.

53.     At the time of their purchases of Bloom Energy stock, plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff filed this Complaint.  Less than three years have elapsed between the time that the securities upon which this Cause of Action is brought were offered to the public and the time Plaintiff filed this Complaint.

54.     By virtue of the foregoing, plaintiff and the other members of the Class are entitled to damages under Section 11 of the Securities Act from all of the Defendants, and each of them, jointly and severally.

## COUNT II

### (Violations of Section 15 of the Securities Act Against The Individual Defendants)

55.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

56.     This Count is brought pursuant to Section 15 of the Securities Act against Defendant Bloom Energy and the Individual Defendants.

57.     The Individual Defendants were controlling persons of Bloom Energy by virtue of their positions as directors or senior officers of Bloom Energy.  The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors or officers or major stockholders of Bloom Energy.  The Individual Defendants controlled the Company and all of Bloom Energy's employees.

58.     Defendant Bloom Energy and the Individual Defendants were each a culpable participant in the violations of Section 11 of the Securities Act alleged in Count I above, based on their having signed, or authorized the signing of, the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

59.     By reason of such wrongful conduct, Defendant Bloom Energy and the Individual Defendants are liable pursuant to Section 15 of the Securities Act.  As a direct and proximate result of said wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of Bloom Energy stock.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Declaring this action to be a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and Plaintiff's counsel as Class counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.    Awarding rescission or a rescissory measure of damages; and

E.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  May 28, 2019

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone:  (310) 405-7190
Email:  jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:   (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:   (312) 377-1184
Email: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, _____Elissa M. Roberts_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against Bloom Energy Corporation ("Bloom Energy" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Bloom Energy securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Bloom Energy securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Bloom Energy securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

Executed ___03/ 29 / 2019___
         (Date)

_____
(Signature)

___Elissa Roberts___
(Type or Print Name)

**Bloom Energy Corporation (BE)**                                          **Roberts, Elissa M.**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 9/21/2018 | Purchase | 7 | $30.2787 |
| 10/5/2018 | Purchase | 52 | $28.3400 |