1   Lisa R. Bugni (SBN 323962)
    lbugni@kslaw.com
2   KING & SPALDING LLP
    101 Second Street, Suite 2300
3   San Francisco, CA 94105
    Telephone: 415-318-1234
4
    James P. Cusick (*pro hac vice* pending)
5   jcusick@kslaw.com
    KING & SPALDING LLP
6   1185 Avenue of the Americas, 34th Floor
    New York, NY 10036
7   Telephone: 212-556-2100

8   Kenneth Y. Turnbull (*pro hac vice* pending)
    kturnbull@kslaw.com
9   KING & SPALDING LLP
    1700 Pennsylvania Avenue, NW, 2nd Floor
10  Washington, D.C. 20006
    Telephone: 202-737-0500
11
    *Attorneys for Defendant*
12  *PricewaterhouseCoopers LLP*

13

14                   UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| 17  ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated, | Lead Case No. 4:19-cv-02935-HSG |
| 18 | <u>CLASS ACTION</u> |
| 19            Plaintiff, | **DEFENDANT PRICEWATERHOUSECOOPERS LLP'S** |
| 20      vs. | **NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED** |
| 21  BLOOM ENERGY CORPORATION, *et al.*, | **COMPLAINT** |
| 22        Defendants. | Honorable Haywood S. Gilliam, Jr. |
| 23 | Hearing Date:  October 15, 2020 |
| | Hearing Time:  2:00 p.m. |
| 24 | Place: Courtroom 2, 4th Floor |

25

26

27

28

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

Please take notice that Defendant PricewaterhouseCoopers LLP ("PwC") brings this

4

motion to dismiss for hearing before the Honorable Haywood S. Gilliam, Jr., Oakland Courthouse,

5

Courtroom 2-4th Floor, Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland,

6

California 94612, on October 15, 2020, at 2:00 p.m.

7

As set forth in the attached memorandum, the Court should dismiss PwC from this action

8

in its entirety under Federal Rules of Civil Procedure 12(b)(6) and 8(a) because the Second

9

Amended Complaint fails to state a claim against PwC upon which relief can be granted.

10

Lead Plaintiff James Everett Hunt and the other plaintiffs listed in the Second Amended

11

Complaint ("Plaintiffs") seek to assert a claim against PwC under Section 11 of the Securities Act

12

of 1933.  Plaintiffs fail, however, to plead the falsity of PwC's opinion statement in Bloom

13

Energy's registration statement that there were no material errors in Bloom Energy's 2016 and

14

2017 financial statements.  Plaintiffs' Section 11 claim against PwC (Count I) therefore fails as a

15

matter of law and should be dismissed.

16

This motion is based on the attached memorandum, Exhibits 1 and 1A to the Omnibus

17

Declaration of Robin Wechkin re Defendants' Motions to Dismiss Second Amended Complaint,

18

and such argument as may be presented before or at the hearing on this matter.

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF LAW IN SUPPORT

## TABLE OF CONTENTS

Summary of Argument ........................................................................................................ 1

Statement of Relevant Facts............................................................................................... 2

A.    Bloom Energy's Registration Statement................................................................ 2

B.    PwC's Audit Report ............................................................................................... 2

C.    Bloom Energy's Restatement ................................................................................ 3

D.    The Allegations Against PwC................................................................................ 5

Pleading Standard .............................................................................................................. 5

Argument ........................................................................................................................... 6

I.     Plaintiffs do not and cannot allege that PwC's audit report was objectively
       false. ...................................................................................................................... 6

II.    Plaintiffs also do not allege that PwC's audit report was subjectively false. ............... 10

Conclusion ....................................................................................................................... 11

1

## **TABLE OF AUTHORITIES**

2
**Page(s)**

3
**Cases**

4
*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
5
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019)................................10

6
*Ashcroft v. Iqbal*,
No. 556 U.S. 662 (2009)...........................................................................................................5, 7
7

8
*Buttonwood Tree Value Partners, LP v. Sweeney*,
No. 10000537CJC, 2012 WL 2086607 (C.D. Cal. June 7, 2012) ............................................6

9
*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
10
856 F.3d 605 (9th Cir. 2017) ...........................................................................................1, 6, 8

11
*Greenberg v. Sunrun Inc.*,
233 F. Supp. 3d 764 (N.D. Cal. 2017) ......................................................................................8
12

13
*Johnson v. CBD Energy Ltd.*,
No. H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) .................................................11

14
*In re Lone Pine Res., Inc.*,
15
No. 12 Civ. 4839(GBD), 2014 WL 1259653 (S.D.N.Y. Mar. 27, 2014) .................................9

16
*Myers v. Winn Law Grp., APC*,
No. 2:11-CV-02372 JAM, 2012 WL 5187771 (E.D. Cal. Oct. 17, 2012)................................8
17

18
*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)................................................................................................1, 6, 10, 11

19
*Querub v. Moore Stephens Hong Kong*,
20
649 F. App'x 55 (2d Cir. 2016) ..........................................................................................6, 11

21
*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) ....................................................................................................8
22

23
*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
No. 1:12–cv–00993, 2015 WL 3833849 (M.D. Pa. June 22, 2015) .......................................11

24
*Sollberger v. Wachovia Sec., LLC*,
No. SACV 09-0766AGANX, 2010 WL 2674456 (C.D. Cal. June 30, 2010).........................7
25

26
*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
No. 2:14–cv–02571–MCE–KJN, 2017 WL 1063565 (E.D. Cal. Mar. 21,
27
2017) ........................................................................................................................................11

28

iii

*In re Stac Elecs. Sec. Litig.*,
 89 F.3d 1399 (9th Cir. 1996) ...................................................................................................6

*In re Velti PLC Sec. Litig.*,
 No. 13-cv-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ..............................6, 10

*Walker v. Fred Meyer, Inc.*,
 953 F.3d 1082 (9th Cir. 2020) ................................................................................................2

*Wong v. Arlo Techs., Inc.*,
 No. 19-CV-00372-BLF, 2019 WL 7834762 (N.D. Cal. Dec. 19, 2019) ...................................2

*Xu v. Gridsum Holdings, Inc*.,
 No. 18 Civ. 3655 (ER), 2020 WL 1508748 (S.D.N.Y. Mar. 30, 2020)....................................9

**Statutes**

15 U.S.C. § 77k(a) ...............................................................................................................1, 6, 10

**Other Authorities**

SEC, Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45,150 (Aug. 19, 1999) .............................9

SEC, Staff Accounting Bulletin No. 108, 71 Fed. Reg. 54,580 (Sept. 18, 2006)...........................4

Fed. R. Civ. P. 8(a) .......................................................................................................1, 7, 8

Fed. R. Civ. P. 12(b)(6)..................................................................................................................1

## SUMMARY OF ARGUMENT

Long after they filed suit against Bloom Energy ("the Company") and the underwriters, Plaintiffs filed a Second Amended Complaint ("Complaint") adding a Section 11 claim against PwC, Bloom Energy's independent registered public accounting firm.  Compl. ¶ 35.  Section 11 affords a cause of action for material misstatements or omissions of fact in "the registration statement."  15 U.S.C. § 77k(a).  Thus, although the Complaint alleges a variety of purportedly false or misleading statements, the Section 11 claim against PwC relates to one document and one event—Bloom Energy's registration statement for its initial public offering in July 2018.  That registration statement contained PwC's audit report setting forth its "opinion" that Bloom Energy's 2016 and 2017 financial statements "present fairly, in all material respects, the financial position of the Company."

Nowhere in the Complaint do Plaintiffs take issue with PwC's opinion.  To the contrary, the Complaint does not even mention PwC's audit report.  Nor do Plaintiffs allege that Bloom Energy's 2016 and 2017 financial statements were materially misstated.  Instead, Plaintiffs adopt the Company's determination in February of this year that, while there were material errors in certain of Bloom Energy's *2018 and 2019* financial statements, the errors in the *2016 and 2017* financial statements were "immaterial."  Compl. ¶¶ 401, 412.  That distinction is fatal to Plaintiffs' claim against PwC.  PwC's opinion was that there were no material errors in the 2016 and 2017 financial statements, and Plaintiffs' allegations are in full accord with that opinion.

In addition to failing to plead that PwC's opinion was objectively false, Plaintiffs cannot plead subjective falsity, which is necessary to establish that an opinion is a misstatement of fact under Section 11.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017).

Because Plaintiffs fail to state a claim against PwC upon which relief can be granted, their Section 11 claim against PwC should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF RELEVANT FACTS[1]

### A. Bloom Energy's Registration Statement

Bloom Energy manufactures stationary power generation platforms, called Energy Servers, that are intended to deliver clean and sustainable power. Compl. ¶¶ 2, 41. In 2018, after operating privately for a number of years, the Company went public—*i.e.*, it registered its shares with the Securities and Exchange Commission ("SEC") on Form S-1 and conducted an initial public offering ("IPO"). *Id.* ¶ 50. On July 26, 2018, Bloom Energy filed its final prospectus for the IPO with the SEC, based on previously filed Forms S-1 (the "Registration Statement"). *Id.* The Registration Statement was approximately 280 pages. It included Bloom Energy's disclosures regarding the nature of its business, risk factors, executive compensation, and numerous other matters (Omnibus Decl. Ex. 1 at 1–217). It also included Bloom Energy's financial statements, prepared by the Company, as of and for the years ended December 31, 2016 and 2017 and as of and for the three months ended March 31, 2018 (*id.* at F-3 to F-65). Finally, it included PwC's Report of Independent Registered Public Accounting Firm (hereafter, "audit report") on Bloom Energy's 2016 and 2017 annual financial statements (*id.* at F-2; Omnibus Decl. Ex. 1A).

### B. PwC's Audit Report

PwC's audit report was on Bloom Energy's 2016 and 2017 financial statements. *Id.* All other information in the Registration Statement was not audited by PwC and not the subject of PwC's audit report. In its audit report, using standard language required by professional auditing standards, PwC explained that the Company's 2016 and 2017 "financial statements are the

---

[1] The statement of relevant facts is based on allegations in the Complaint and documents referenced therein, which the Court may consider on a Rule 12 motion. *See Walker v. Fred Meyer, Inc*., 953 F.3d 1082, 1085 n.1 (9th Cir. 2020) (a document that is referred to throughout the complaint is properly considered in ruling on a motion to dismiss); *Wong v. Arlo Techs., Inc.*, No. 19-CV-00372-BLF, 2019 WL 7834762, at *4 (N.D. Cal. Dec. 19, 2019) (considering on motion to dismiss Section 11 claims documents that were referred to and quoted in the complaint). PwC's audit report on Bloom Energy's 2016 and 2017 financial statements, which was included in the registration statement referenced throughout the Complaint, is attached as Exhibit 1A to the Omnibus Declaration of Robin Wechkin re Defendants' Motions to Dismiss Second Amended Complaint ("Omnibus Decl.") submitted with Defendants' motions.

responsibility of the Company's management." *See* Omnibus Decl. Ex. 1A.[2]  PwC's responsibility was "to express an opinion on the Company's consolidated financial statements based on [its] audits." *Id.*  That opinion, dated March 7, 2018 (except for the effects of a reverse stock split not at issue here), and labeled as "Opinion on the Financial Statements**,**" stated:

> We have audited the accompanying consolidated balance sheets of Bloom Energy Corporation and its subsidiaries as of December 31, 2017 and December 31, 2016, and the related consolidated statements of operations, of comprehensive loss, of convertible redeemable preferred stock and stockholders' deficit, and of cash flows for each of the two years in the period ended December 31, 2017, including the related notes (collectively referred to as the "consolidated financial statements"). In our *opinion*, the consolidated financial statements *present fairly, in all material respects*, the financial position of the Company as of December 31, 2017 and December 31, 2016, and the results of its operations and its cash flows for each of the two years in the period ended December 31, 2017 in conformity with accounting principles generally accepted in the United States of America.

*Id.* (emphasis added).

As indicated above, PwC's opinion contained important limitations.  First, it related only to Bloom Energy's 2016 and 2017 financial statements, not to its later financial statements. Second, it addressed only whether those financial statements were fairly presented "in all material respects," not whether they contained immaterial errors.  Third, PwC was providing an opinion, not stating a fact.

## C.  Bloom Energy's Restatement

Bloom Energy's business includes the sale of Energy Servers, and one type of contract relating to those sales is a Managed Services Agreement ("MSA").  Compl. ¶ 400.  Under an MSA, Bloom Energy sells its Energy Servers to a bank, which then leases the equipment back to the Company.  Bloom Energy, in turn, subleases the equipment to a customer.  Bloom Energy enters into a service contract with the customer, which pays the bank a fixed fee for its use of the Energy Server and pays Bloom Energy for its maintenance and operation of the Energy Server.  *Id.* ¶¶ 81, 400.  The MSAs raised a complex accounting question:  Should the arrangement be classified as a sale (subject to an operating lease), such that Bloom Energy would recognize the revenue upfront

---

[2] Professional auditing standards are promulgated by the Public Company Accounting Oversight Board, available on its website (www.pcaob.org), and referred to as "AS."  *See, e.g.*, AS 3101.09(a) (audit report must include a "statement that the financial statements are the responsibility of the company's management").

1    when it sold its equipment to the bank?  Or should it be classified as a financing, such that Bloom

2    Energy would recognize revenue over the life of the arrangement?  *Id.* ¶ 86.

3            Prior to late 2019, Bloom Energy had concluded, and PwC had concurred, that certain

4    MSAs should be accounted for as sales.  *Id.* ¶ 400.  In late 2019, in the course of reviewing an

5    MSA transaction, "PwC identified an issue it had not previously identified related to the

6    accounting for the Impacted MSA transactions," which led Bloom Energy and PwC to reevaluate

7    the accounting treatment for the transactions.  *Id.*  After reevaluating the transactions, Bloom

8    Energy and PwC determined that MSAs that had previously been accounted for as sales should

9    have been accounted for as financings instead.  *Id.*

10           On February 12, 2020, Bloom Energy announced that it would "restate" certain prior

11   financial statements and "revise" other prior financial statements to account for the change in

12   treatment of certain MSAs as financings.  *Id.*  The distinction between a restatement and a revision

13   under generally accepted accounting principles is critical, and it turns on materiality.   A

14   *restatement* is the correction of a material error in previously issued financial statements, which

15   requires a registrant (here, Bloom Energy) to restate and reissue those financial statements.  A

16   *revision* is the correction of *immaterial* errors, which does not require financial statements to be

17   restated and reissued.  *See* SEC, Staff Accounting Bulletin No. 108, 71 Fed. Reg. 54,580, 54,582

18   (Sept. 18, 2006).  Additionally, in the case of a restatement, the SEC requires the registrant to file

19   a report on Form 8-K disclosing that its financial statements and the auditor's report thereon should

20   no longer be relied upon.  Such a filing is not required for a revision.  *See* SEC Form 8-K, Item

21   4.02 ("Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or

22   Completed Interim Review").

23           On March 31, 2020, Bloom Energy filed its 2019 10-K with the SEC, which included

24   restated financial statements for certain prior periods and revised financial statements for other

25   prior periods.  Compl. ¶¶ 411–12.  Specifically, Bloom Energy restated: (1) its 2018 annual

26   financial statements and (2) its quarterly financial information for the quarters ended from June

27   30, 2018 to September 30, 2019.  *Id.*  None of these was the subject of PwC's audit report in the

28   Registration Statement (Omnibus Decl. Ex. 1A); that report addressed only Bloom Energy's 2016

4

-

and 2017 financial statements.  Bloom Energy also revised (not restated): (1) unaudited selected financial data for 2016, (2) its audited annual financial statements for 2017, and (3) its unaudited quarterly financial statements for the three months ended March 31, 2018—because, as Plaintiffs acknowledge, the errors in these periods were "not material to warrant restatement of reported figures."  Compl. ¶ 412; *see also id.* ¶ 401 ("immaterial impacts to [the] financial statements in the periods of Q1 of 2016 to Q1 of 2018").  The Complaint does not allege the amount of the revisions to the 2016 financial data.  The corrections to the 2017 financial statements reduced the Company's total revenue and increased its net loss by a mere 2.8% and 4.7%, respectively.  *Id.* ¶¶ 90, 170, 413.

### D.  The Allegations Against PwC

PwC's name appears in only eight of the Complaint's 522 paragraphs.  Plaintiffs refer to PwC's status as auditor (*id.* ¶¶ 35, 115) and assert legal conclusions (*id.* ¶¶ 37, 117).  Plaintiffs allege that PwC "assisted Bloom Energy . . . in preparing their financial statements for the IPO and purportedly conducted an adequate and reasonable . . . 'due diligence' investigation."  *Id.* ¶ 116.  Plaintiffs also plead that in late 2019 PwC identified an issue with the Company's accounting for certain MSAs, which led the Company in early 2020 to restate and revise certain of its financial statements.  *Id.* ¶¶ 80, 400, 455.  While the Complaint obliquely refers to PwC's audit of Bloom Energy's 2016 and 2017 financial statements ("'due diligence' investigation"), it does not mention PwC's audit report on those financial statements, much less allege that that audit report contained an untrue statement or omission of material fact.

### PLEADING STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations control whether a claim is plausible because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

**ARGUMENT**

Section 11 establishes a private remedy for purchasers of a security when a registration statement contained "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading."  15 U.S.C. § 77k(a).  "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment."  *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (quotation omitted).

Additionally, in *Omnicare* the Supreme Court set forth requirements for challenging an opinion in a registration statement under Section 11's false statement prong.  "[B]oth objective and subjective falsity must be alleged."  *City of Dearborn Heights*, 856 F.3d at 615 (discussing *Omnicare*).  Those requirements apply here because PwC's audit report was manifestly an opinion. It began with a section titled "Opinion on the Financial Statements," in which PwC stated "In our opinion, the consolidated financial statements present fairly, in all material respects . . . ." Omnibus Decl. Ex. 1A; *see Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) (Summary Order) ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."); *In re Velti PLC Sec. Litig.*, No. 13-cv-03889-WHO, 2015 WL 5736589, at *17–18 (N.D. Cal. Oct. 1, 2015) (applying *Omnicare* to auditor's report).  *See generally Buttonwood Tree Value Partners, LP v. Sweeney*, No. 10-000537-CJC, 2012 WL 2086607, at *2 (C.D. Cal. June 7, 2012) (pre-*Omnicare*) ("An auditor's report is a statement of professional opinion, not fact.").

## I.   Plaintiffs do not and cannot allege that PwC's audit report was objectively false.

Plaintiffs do not even refer to PwC's audit report on Bloom Energy's 2016 and 2017 financial statements—much less allege that the opinion set forth in that report contained an untrue statement or omission of material fact.  Instead, Plaintiffs offer a handful of allegations against PwC that are unremarkable—*e.g.*, PwC has served as Bloom Energy's auditor (Compl. ¶¶ 35,

6

115)—or "mere conclusory statements [that] do not suffice," *Iqbal*, 556 U.S. at 678—*e.g.*, PwC is one of the defendants sued under Section 11 and is liable (Compl. ¶¶ 37, 117).

Plaintiffs' remaining allegations are equally inadequate.  Plaintiffs plead that:

> PwC assisted Bloom Energy and [its officers] in preparing their financial statements for the IPO and purportedly conducted an adequate and reasonable investigation into the business, operations, financial statements, and accounting of Bloom Energy, an undertaking known as a 'due diligence' investigation. The due diligence investigation was required of the [sic] PwC.  During the course of its 'due diligence,' PwC had continual access to internal, confidential, current corporate information concerning Bloom Energy's most up-to-date operational and financial results and prospects.

*Id.*  ¶ 116. While "'due diligence' investigation" seems to refer to PwC's audit of Bloom Energy's 2016 and 2017 financial statements, the Complaint is devoid of any allegation that the audit was deficient or that PwC's audit report contained a material misstatement or omission.  And the Company ultimately determined that those financial statements contained only "immaterial" errors.  *Id.*  ¶¶ 401, 412.

Plaintiffs also assert, based on the Company's SEC filing, that in late 2019 "PwC identified an issue with [the Company's] accounting for managed services agreements which led to the restatement of [certain of] Bloom Energy's financial statements."  *Id.* ¶ 80; *see also* ¶¶ 400, 455.  But that restatement was of certain of Bloom Energy's 2018 and 2019 financial statements, *id*. ¶ 400, while the PwC audit report included in the Registration Statement addressed the 2016 and 2017 financial statements.

Finally, Plaintiffs offer several allegations against the "Section 11 Defendants"—a group of 21 defendants (*id.* ¶ 37)—that are woefully insufficient.  *Id.* ¶¶ 48, 49, 61, 65, 91, 104, 106, 118, 119, 120, 123.  None of those allegations refers to PwC's audit report in the Registration Statement.  Many of them are legally insufficient, conclusory statements of liability.  *See, e.g.*, *id.* ¶ 120 ("By reason of the conduct alleged herein, each Section 11 Defendant violated, and/or controlled a person who violated, the Securities Act.").  And generalized allegations against all "Section 11 Defendants" run afoul of Plaintiffs' obligation, even under Rule 8(a), to provide a plain statement of the conduct alleged against *each* defendant.  *See, e.g.*, *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AG(ANX), 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ("One common

7

1   theme of Rule 8(a), Rule 9(b), *Iqbal*, *Twombley* [sic], and federal securities laws on pleading is
2   that plaintiffs must give the defendants a clear statement about what the defendants allegedly did
3   wrong."); *see also, e.g.*, *Myers v. Winn Law Grp., APC*, No. 2:11-CV-02372 JAM KJN PS, 2012
4   WL 5187771, at *1 (E.D. Cal. Oct. 17, 2012) ("[A] pleading's repeated references to all
5   'defendants' collectively was insufficient because it left each defendant wondering which
6   defendant took which alleged actions.").

7        In addition to not even mentioning PwC's audit report, the Complaint suffers from another
8   fundamental defect.  In its audit report, PwC opined that Bloom Energy's 2016 and 2017 financial
9   statements "present fairly, in all *material* respects," the financial position of the Company—*not*
10  that those financial statements were free of immaterial errors.  *See* Omnibus Decl. Ex. 1A
11  (emphasis added).  As a threshold matter, then, Plaintiffs must at least allege that Bloom Energy's
12  2016 or 2017 financial statements contained a *material* error.  *See City of Dearborn Heights*, 856
13  F.3d at 615 (requiring objective falsity).  *See generally In re Rigel Pharms., Inc. Sec. Litig.*, 697
14  F.3d 869, 886 n.15 (9th Cir. 2012) (affirming dismissal of Section 11 claim because plaintiff did
15  "not allege a material omission or misrepresentation" under Rule 8(a)); *Greenberg v. Sunrun Inc*.,
16  233 F. Supp. 3d 764, 772 (N.D. Cal. 2017) ("a statement must be both (1) false and (2) material to
17  investors").

18       Here, Plaintiffs do not allege a material error in the 2016 and 2017 financial statements.
19  Instead, Plaintiffs adopt Bloom Energy's determination that the corrections made to those financial
20  statements earlier this year were "not material."  Compl. ¶ 412 (citing Bloom Energy's 2019 10-
21  K); *see also id.* ¶ 401 ("immaterial impacts to [the] financial statements in the periods of Q1 of
22  2016 to Q1 of 2018").  Plaintiffs do allege material errors in the 2018 annual financial statements
23  and certain of the 2018 and 2019 quarterly financial statements, which required the Company to
24  restate those periods.  Compl. ¶ 412.  But those financial statements were not the subject of PwC's
25  audit report included in the Registration Statement.

26       Other allegations corroborate that the 2016 and 2017 errors were not material.  The SEC
27  Staff has set forth, in Staff Accounting Bulletin No. 99 ("SAB 99"), quantitative and qualitative
28  factors that courts often look to for purposes of assessing whether a plaintiff has pleaded that a

8

misstatement is material.  *See In re Lone Pine Res., Inc.*, No. 12 Civ. 4839(GBD), 2014 WL 1259653, at * 4 (S.D.N.Y. Mar. 27, 2014) ("Courts in the Second Circuit rely on [SAB 99] in assessing materiality and consider both quantitative and qualitative factors.").

SAB 99 states that financial statement errors of less than 5% are generally not material, absent qualitative factors not alleged here.  *See* SAB 99, 64 Fed. Reg. 45,150, 45,151 (Aug. 19, 1999) ("The use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption that—without considering all relevant circumstances—a deviation of less than the specified percentage with respect to a particular item on the registrant's financial statements is unlikely to be material."); *Lone Pine Res.*, 2014 WL 1259653, at *4 (plaintiff's failure to plead facts showing error of "5% or more" undercut inference of materiality).  Here, Plaintiffs do not quantify the revisions to the 2016 financial data, and they allege that the corrections to the 2017 financial statements reduced the Company's total revenue and increased its net loss that year by 2.8% and 4.7%, respectively.  Compl. ¶¶ 90, 170, 413.

Plaintiffs also fail to allege facts demonstrating that the 2016 and 2017 errors were material in light of "the various qualitative factors in SAB No. 99."  *Lone Pine Res.*, 2014 WL 1259653, at *5.  For example, they do not and cannot allege that the minor errors in those years involved "concealment of an unlawful transaction."  *Id.* (citing SAB 99).  Nor do or can Plaintiffs allege that the revisions for those years "change[d] a loss into income or vice versa" or "affect[ed] the registrant's compliance with loan covenants or other contractual requirements."  *See* SAB 99, 64 Fed. Reg. at 45,152; Compl. ¶ 413 (noting losses for both original and revised 2017 financial statements); *id.* ¶ 400 ("compliance with all of [Bloom Energy's] financial covenants under its credit facilities and notes" was unaffected).  Plaintiffs have thus failed to plead a qualitatively material misstatement in Bloom Energy's 2016 and 2017 audited financial statements.  *See Xu v. Gridsum Holdings, Inc.*, No. 18 Civ. 3655 (ER), 2020 WL 1508748, at *8–9 (S.D.N.Y. Mar. 30, 2020) (dismissing Section 11 claim because plaintiffs failed to plead facts showing that corrections to financial statements, even those above 5% quantitative threshold, were qualitatively material under SAB 99).

1    A Section 11 claim requires a *material* misstatement.  15 U.S.C. § 77k(a).  Plaintiffs do not

2    allege any specific errors in the 2016 financial statements.  And the errors in the 2017 financial

3    statements were less than 5% and qualitatively insignificant, fully supporting the Company's

4    determination, cited by Plaintiffs, that those errors were "immaterial."  Compl. ¶¶ 401, 412.

5    Plaintiffs do not and cannot show that PwC's audit report was objectively false.

6    **II.     Plaintiffs also do not allege that PwC's audit report was subjectively false.**

7        Even if Bloom Energy had restated its 2016 and 2017 financial statements because of

8    material errors (which it did not), that would not suffice to plead that PwC's audit report contained

9    a materially false statement of fact under Section 11.  The allegation that a speaker's "belief turned

10   out to be wrong" does not give rise to liability as a materially false statement of fact under Section

11   11.  *Omnicare*, 575 U.S. at 186.  That is because "a sincere statement of pure opinion is not an

12   'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief

13   wrong."  *Id.*  Rather, a pure statement of opinion is actionable as a factual misstatement only if the

14   speaker did not sincerely believe the opinion at the time, *id.* at 184–85—*i.e.*, if the belief was not

15   "honestly held," *id.* at 186.  The requirement to plead subjective falsity to establish that a pure

16   opinion is actionable as a factual misstatement is consistent with the intent of Section 11, which

17   "does not allow investors to second-guess inherently subjective and uncertain assessments" or

18   engage in "Monday morning quarterback[ing]."  *Id.*

19       In *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *17–18 (N.D. Cal. Oct. 1, 2015), Judge

20   Orrick applied *Omnicare* to an auditor's opinion.  *Id.* at *17–18.  He dismissed a Section 11 claim,

21   holding that plaintiffs had failed to plead that the auditor's opinion was a false statement of fact

22   because their complaint "repeatedly disavow[ed] any allegation sounding in fraud or deception in

23   support of plaintiffs' Securities Act claims."  *Id.* at *18.  That disavowal precluded any allegation

24   that the audit opinion was not "'honestly held.'"  *Id.* (quoting *Omnicare*, 575 U.S. at 186).  *See*

25   *generally In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110,

26   at *17 (S.D.N.Y. Sept. 9, 2019) ("allegations of misstatements of opinion are based on knowing

27   (or possibly reckless) conduct, and therefore likely involve the same conduct that underlie claims

28

1  of fraud").  Other courts have dismissed Section 11 claims against independent auditors on similar

2  grounds.[3]

3         Here, Plaintiffs "specifically disclaim any reference to or reliance on fraud allegations for

4  the purpose of [their Securities Act] claims."  Compl. ¶ 49.  And nowhere do Plaintiffs allege facts

5  that, if true, would suggest PwC did not sincerely believe the opinion on Bloom Energy's 2016

6  and 2017 financial statements set forth in PwC's audit report.  Indeed, Plaintiffs do not refer to

7  that report at all, and their only allegation about the audit is that PwC "purportedly conducted an

8  adequate and reasonable investigation."  *Id.* ¶ 116.  Plaintiffs have failed to plead the requisite

9  subjective falsity.

10                                      **CONCLUSION**

11        Plaintiffs have pleaded a handful of legally insufficient allegations against PwC.  They do

12  not even refer to PwC's audit report in which it opined that Bloom Energy's 2016 and 2017

13  financial statements were fairly presented "in all material respects."  Elsewhere, Plaintiffs adopt

14  the Company's subsequent determination that those financial statements did not warrant

15  restatement because the errors in those financial statements were immaterial.  Plaintiffs also do not

16  and cannot plead the subjective falsity required by *Omnicare*. The Court should dismiss Count I

17  as to PwC with prejudice.

18  Date: July 1, 2020                                  By: */s/ Lisa R. Bugni*
                                                         Lisa R. Bugni (SBN 323962)
19                                                       lbugni@kslaw.com
                                                         KING & SPALDING LLP
20                                                       101 Second Street Suite 2300
                                                         San Francisco, California 94105
21                                                       Telephone: 415-318-1234

22

23  [3] *See also Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 58 (2d Cir. 2016) (affirming
    summary judgment in favor of the auditor because there was "no evidence that [the auditor] did
24  not believe its 'clean audit opinions'") (Summary Order); *Johnson v. CBD Energy Ltd.*, No. H-15-
    1668, 2016 WL 3654657, at *10–11 (S.D. Tex. July 6, 2016) (rejecting argument that audit opinion
25  constitutes a "certification" that falls outside the *Omnicare* framework); *Se. Pa. Transp. Auth. v.
    Orrstown Fin. Servs., Inc.*, No. 1:12–cv–00993, 2015 WL 3833849, at *34 (M.D. Pa. June 22,
26  2015) (dismissing Section 11 claim against auditor because "Plaintiff has failed to point to a factual
    basis supporting its allegation that [the auditor] did not believe its opinion").  A few courts have
27  declined to treat audit reports as pure opinions under *Omnicare*, but these cases are wrongly
    decided.  *See, e.g.*, *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, No.
28  2:14–cv–02571–MCE–KJN, 2017 WL 1063565 (E.D. Cal. Mar. 21, 2017).

James P. Cusick (*pro hac vice* pending)
jcusick@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: 212-556-2100

Kenneth Y. Turnbull (*pro hac vice* pending)
kturnbull@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW, 2nd Floor
Washington, D.C. 20006
Telephone: 202-737-0500

*Attorneys for PricewaterhouseCoopers LLP*