1  Sara B. Brody (SBN 130222)
sbrody@sidley.com

2  Sarah A. Hemmendinger (SBN 298659)
shemmendinger@sidley.com

3  SIDLEY AUSTIN LLP
555 California Street, Suite 2000

4  San Francisco, CA 94104
Telephone: (415) 772-1200

5

6  Matthew J. Dolan (SBN 291150)
mdolan@sidley.com

7  SIDLEY AUSTIN LLP
1001 Page Mill Road, Building 1

8  Palo Alto, CA 94304
Telephone: (650) 565-7000

9  Robin Wechkin (admitted *pro hac vice*)
rwechkin@sidley.com

10  SIDLEY AUSTIN LLP
1420 Fifth Avenue, Suite 1400

11  Seattle, WA 98101
Telephone: (415) 439-1799

12

13  *Attorneys for Defendants Bloom Energy Corp.,
KR Sridhar and Randy Furr*

14

15             UNITED STATES DISTRICT COURT

16          NORTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>     vs.<br><br>BLOOM ENERGY CORPORATION, et al.,<br><br>           Defendants. | Lead Case No. 3:19-cv-02935-HSG<br><br><u>CLASS ACTION</u><br><br>**SECTION 10(B) DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Honorable Haywood S. Gilliam, Jr.<br>Hearing Date:  October 15, 2020<br>Hearing Time: 2:00 p.m.<br>Oakland Courthouse, Courtroom 2, 4th Floor |

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on October 15, 2020, at 2:00 p.m., the Section 10(b) Defendants will and hereby do bring this motion for hearing before the Honorable Haywood S. Gilliam, Jr., Courtroom 2, Fourth Floor, Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California, 94612.  The Section 10(b) Defendants are Bloom Energy Corporation (Bloom or the Company), its CEO KR Sridhar and its former CFO Randy Furr.

As set forth in the attached memorandum, the Court should dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the claims asserted under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).  Lead Plaintiff James Everett Hunt, together with other plaintiffs listed in the Second Amended Complaint (Plaintiffs), has failed to state a claim on which relief may be granted.  Plaintiffs fail to plead their Section 10(b) claims with the particularity required by the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b).  Specifically, Plaintiffs have (1) failed to plead with particularity that any Section 10(b) Defendant made a materially false or misleading statement, (2) failed to establish a strong inference of intentional fraud, and (3) with respect to certain challenged statements, failed to plead loss causation with particularity.

Plaintiffs also allege a "controlling person" claim against Sridhar and Furr under 15 U.S.C. § 78t(a) of the Exchange Act.  This claim fails because Plaintiffs have not established a primary violation under Section 10(b).

Each of the three Section 10(b) Defendants, together with 18 other parties, is also named as a defendant in Plaintiffs' separately-pled claim under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k.  These 21 defendants are separately filing two motions to dismiss Plaintiffs' Section 11 claim:  (1) a motion filed by PricewaterhouseCoopers LLP (PwC), Bloom's independent auditor, and (2) a motion filed by the 20 remaining defendants, who are referred to as the "Section 11 Defendants."[1]

---

[1] Concurrently with their motions to dismiss, all Defendants are also collectively moving to strike from the Complaint references to all plaintiffs other than the court-appointed Lead Plaintiff.

Plaintiffs' Section 10(b) and Section 11 claims are based on largely overlapping challenged statements.  With respect to both claims, Plaintiffs bear the burden of pleading that the challenged statements were materially false or misleading when made.  In an effort to promote efficiency and avoid repetition, the Section 10(b) Defendants incorporate into this motion the discussion of falsity presented in the Section 11 Defendants' motion and memorandum.

This motion is based on the attached memorandum, the memorandum submitted by the Section 11 Defendants, the Omnibus Request for Judicial Notice, the Omnibus Declaration of Robin Wechkin and all attached exhibits, and such argument as may be presented before or at the hearing in this matter.

# **Table of Contents**

I.    PRELIMINARY STATEMENT/INTRODUCTION ................................................................ 1

II.   BACKGROUND ................................................................................................ 3

III.  DISCUSSION ................................................................................................... 4

  A.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Any Of The Seven Groups Of Challenged Statements. ................................................................................ 4

    1.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Their "Construction Delay" Claim. ............................................................................................ 5

    2.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Bloom's Accounting For MSAs. ................................................................................................. 7

    3.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Statements Related To Internal Controls. ..................................................................................... 12

    4.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Their Attack On Bloom's Accounting For Contingent Liabilities. ................................................ 14

    5.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To ASC 606. ................ 17

    6.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Challenged Statements About Fuel Cell Life. ................................................................................... 17

    7.  Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Challenged Statements About Efficiency And Emissions. ...................................................................... 18

  B.  Plaintiffs Have Not Created A Cogent And Compelling Inference Of Intentional Wrongdoing Under A Holistic Analysis. ........................................................... 19

    1.  Plaintiffs' Generic Financial Motivation Allegations Do Not Support A Strong Inference of Scienter. .................................................................................. 19

    2.  Plaintiffs' Scienter Allegations Are As Defective Considered Together As Considered Separately. ................................................................................. 20

  C.  Plaintiffs Have Not Established Loss Causation With Respect To Bloom's Statements About Fuel Cell Life And ASC 606. ................................................................ 22

IV.   CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Decisions**

*Bao v. Solarcity Corp.*,
  2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ..................................................................9

*Bonanno v. Cellular Biomedicine Group, Inc.*,
  2016 WL 4585753 (N.D. Cal. Sept. 2, 2016) ..........................................................23

*Bruce v. Suntech Power Holdings Co.*,
  2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) .........................................................13

*In re Cadence Design Sys., Inc., Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ...............................................................9, 11

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
  540 F. Supp. 2d 464 (S.D.N.Y. 2008)......................................................................9

*City of Dearborn Heights Act 435 Police & Fire Ret. Sys v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ..................................................................................23

*Diaz v. Northern Dynasty Minerals Ltd.*,
  2018 WL 5099749 (C.D. Cal. April 30, 2018) ........................................................17

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ....................................................................................8

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005)................................................................................................22

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..................................................................13

*In re Herbalife Sec. Litig.*,
  2015 WL 12732428 (C.D. Cal. Mar. 27, 2015)........................................................23

*In re Hypercom Corp. Sec. Litig.*,
  2006 WL 1836181 (D. Ariz. July 5, 2006) ...................................................8, 11, 13

*Jasin v. Vivus, Inc.*,
  2016 WL 1570164 (N.D. Cal. Apr. 19, 2016), *aff'd* 721 F. App'x 665 .......................21

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) .................................................................................20

*In re Loudeye Corp. Sec. Litig.*,
  2007 WL 2404626 (W.D. Wash. Aug. 17, 2007) .....................................................13

*M & M Hart Living Trust v. Global Eagle Entm't, Inc.*,
2017 WL 5635425 (C.D. Cal. Oct. 30, 2017).............................................................13

*McGovney v. Aerohive Networks, Inc.*,
2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ...........................................................19

*Metzler Inv. GmbH v. Corinthian Coll., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .................................................................................19

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ......................................................................... 22-23

*Miller v. PCM, Inc.*,
2018 WL 5099722 (C.D. Cal. Jan. 3, 2018) ..........................................................23

*Mineworkers' Pension Scheme v. First Solar Inc.*,
881 F.3d 750 (9th Cir. 2018) ...................................................................................22

*In re NVidia, Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ..............................................................................5, 7

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
50 F. Supp. 3d 1328 (C.D. Cal. 2014) ........................................................8, 10, 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)...........................................................................................7, 12, 17

*In re Omnicom Grp., Inc., Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010).............................................................................22, 23

*Oregon Pub. Emp. Ret. Fund v. Apollo Grp.*,
774 F.3d 598 .............................................................................................................22

*Plumley v. Sempra Energy*,
2017 WL 2712297 (S.D. Cal. June 20, 2017)........................................................19

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) ...........................................................................18, 19

*Prodanova v. H.C. Wainwright & Co.*,
2018 WL 8017791 (C.D. Cal. Dec. 11, 2018) .........................................................5

*In re Radian Sec. Litig.*,
612 F. Supp. 2d 594 (E.D. Pa. 2009) ......................................................................19

*In re Regulus Therapeutics Inc. Sec. Litig.*,
406 F. Supp. 3d 845 (S.D. Cal. 2019).....................................................................20

*In re Rigel Pharm., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012) .......................................................................4, 15, 20

*Rochester Laborers Pension Fund v. Monsanto Co.*,
    883 F. Supp. 2d 835 (E.D. Mo. 2012)......................................................................16

*Roth v. OfficeMax, Inc.*,
    527 F. Supp. 2d 791 (N.D. Ill. 2007) ......................................................................13

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016).....................................................................14

*In re Taleo Corp. Sec. Litig.*,
    2010 WL 597987 (N.D. Cal. Feb. 17, 2010) .........................................................9, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................4, 5, 19

*In re Tibco Software, Inc.*,
    2006 WL 1469654 (N.D. Cal. May 25, 2006) ..........................................................20

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) .......................................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*,
    2017 WL 6041723 (N.D. Cal. Dec. 6, 2017) .............................................................5

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd*, 794 F. App'x 669 (9th Cir. 2020) .........7

*Yates v. Mun. Mortg. & Equity, LLC*,
    744 F.3d 874 (4th Cir. 2014) ..................................................................................20

*Zucco Partners v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................6, 7, 12, 13

**Statutes**

15 U.S.C. § 77k  (Section 11 of the Securities Act of 1933) ................................... *passim*

15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act of 1934)............................. *passim*

15 U.S.C. § 78t(a) (Section 20a of the Securities Exchange Act of 1934) ............................................ i

15 U.S.C. § 78u-4(b)(2) ...........................................................................................5

15 U.S.C. § 7241 ...................................................................................................14

15 U.S.C. § 7262 ...................................................................................................14

Private Securities Litigation Reform Act (PSLRA)............................................. i, 2, 4, 12

Sarbanes-Oxley Act §§ 302, 404 .........................................................................4, 12, 14

1

**Other Authorities**

2

17 CFR § 240.13a-11 ...................................................................................................................16

3

17 CFR § 240.15d-11 ...................................................................................................................16

4

Fed. R. Civ. Proc. 9(b) .................................................................................................................. i

5

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................................... i

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.      PRELIMINARY STATEMENT/INTRODUCTION

The current complaint in this action consists of two parts.  In the first, Plaintiffs assert claims under Section 11 of the 1933 Act against a large slate of defendants – Bloom, nine of Bloom's current or former officers and directors, the ten underwriters of Bloom's IPO and Bloom's independent auditor.  In the second part of the complaint, Plaintiffs assert a claim under Section 10(b) of the 1934 Act against only three defendants – Bloom, its CEO KR Sridhar and its former CFO Randy Furr.  The present motion addresses the second part of the complaint, which contains the Section 10(b) claims.  The first part of the complaint is addressed in two separate motions and memoranda – one filed by all of the Section 11 defendants except the auditor (the Section 11 Defendants' Brief) and one filed by the auditor, PwC.

Plaintiffs challenge a common core of statements in their Section 11 and Section 10(b) claims – statements that appear in Bloom's IPO Registration Statement.  Under Section 10(b), Plaintiffs also target similar or identical statements Bloom made in the 16 months after its IPO.  Because Plaintiffs' Section 11 and Section 10(b) claims arise from largely overlapping statements, they also share many of the same defects.  In this brief, we therefore do not repeat but instead incorporate by reference the arguments in the Section 11 Defendants' Brief, which relate primarily to Plaintiffs' failure to identify materially false or misleading statements in the Registration Statement.  These arguments provide ample grounds to dismiss Plaintiffs' Section 10(b) claim as to all challenged statements in the Registration Statement, as well as to the many similar challenged statements made outside the Registration Statement.

The purpose of this brief is twofold:  (1) to address the limited set of statements Plaintiffs challenge under Section 10(b) that differ in any relevant way from those challenged under Section 11, and (2) to explain why Plaintiffs' failure to plead elements unique to their Section 10(b) claim – scienter and loss causation, both of which are governed by heightened pleading standards – provides an additional reason to dismiss the Section 10(b) claim.  We suggest that the Court review the Section 11 Defendants' Brief before reading the current brief.

*Scienter.*  Under the Private Securities Litigation Reform Act (PSLRA), Plaintiffs must plead particularized facts supporting a strong inference that the two individual Section 10(b) defendants –

1   Sridhar and Furr – made intentionally false or misleading public statements.  Plaintiffs have not

2   come close to meeting this heightened standard.  Plaintiffs make virtually no effort to plead facts

3   showing that the two executives knew that those statements were (purportedly) false or misleading.

4   With respect to the four claims related to Bloom's financial statements or internal controls – each of

5   which must be analyzed as a statement of opinion – Plaintiffs allege no facts showing that Sridhar or

6   Furr knew the challenged accounting was wrong.  Meanwhile, the fact that PwC repeatedly agreed

7   that Bloom's accounting was appropriate weighs heavily against any such inference.

8          Plaintiffs similarly plead no facts showing that Sridhar or Furr believed that two challenged

9   projections – one related to third-quarter 2018 product acceptances and one to fuel cell lifespan –

10  were (allegedly) wrong.  Plaintiffs' sole confidential witness, CW 1, who speaks only to the product

11  acceptance forecast, does not claim even to have met Sridhar or Furr, and plainly has no basis on

12  which to make assertions about what the two executives knew.  Plaintiffs' allegations of financial

13  motivation are similarly deficient.  Plaintiffs identify no discretionary stock sales, and their

14  references to incentive compensation and corporate objectives could be made with respect to

15  virtually any public company.  Taken separately or considered holistically, Plaintiffs' scienter

16  allegations fall short of the PSLRA's rigorous pleading standard.

17         **_Loss causation._**  Plaintiffs claim that the allegedly concealed truth about fuel cell lifespan

18  was revealed when a short seller disseminated a critique of Bloom's business in September 2019.

19  The authors of the critique did not purport to present new facts about Bloom; to the contrary, they

20  explicitly stated that their report was based on their analysis of publicly available information.

21  Plaintiffs' challenge to statements about fuel cell life therefore fails on causation grounds:  A short

22  seller's analysis of already-public information does not constitute a corrective disclosure and cannot

23  establish loss causation.  Plaintiffs also fail to plead loss causation with respect to their claim that

24  Bloom wrongly delayed adopting a new accounting standard, ASC 606.

25         For all of the length and seeming detail of their complaint, Plaintiffs have failed to plead

26  what the PSLRA requires:  particularized facts supporting a cogent and compelling inference of

27  intentional fraud.  The Court should dismiss Plaintiff' Section 10(b) claim in its entirety.

28

## II.     BACKGROUND

Plaintiffs' Section 10(b) claims arise from three events.  The first event, which triggered this litigation, was Bloom's November 5, 2018 announcement of third-quarter 2018 results.  Bloom had projected 215 to 235 acceptances in that quarter.  Bloom finished the quarter with 206 acceptances, and Plaintiffs allege that the announcement of this small miss drove the Company's stock price down.  ¶ 483.[2]  Plaintiffs' Section 10(b) claim is based on the same (or very similar) risk disclosure statements Plaintiffs challenge under Section 11.  ¶¶ 53, 138, 199.

The second event occurred on September 17, 2019 – four months after this action was filed – when a short seller called Hindenburg Research issued a critique of Bloom's business.  ¶¶ 157, 181, 185.  Short sellers benefit when a company's stock price declines, and they often issue statements or reports about a company's business with the object of driving the stock price down.  The authors of the Hindenburg report explicitly acknowledged this:  "You should assume that as of the publication date of any short-biased report or letter, Hindenburg Research . . . along with our clients and/or investors has a short position . . . and therefore stands to realize significant gains in the event that the price of any stock covered herein declines."  Ex. 21 at 59.

Unlike plaintiffs asserting claims under Section 10(b), short sellers are not primarily concerned with showing that a company's previous public statements were intentionally false.  Their objective is more simply to show that a stock is overvalued.  The Hindenburg authors sought to demonstrate this by analyzing publicly available information about Bloom that, in their view, showed that the Company could not succeed in its business.  The authors projected that Bloom's service business will be massively unprofitable in the future, as the Company fulfills obligations under future service contracts.  ¶ 157.  They further disputed Bloom's estimate that its newer-generation fuel cells have a five-year lifespan, ¶ 185, and charged that Bloom's Energy Servers are neither efficient nor clean.  ¶ 181.  Based on this critique, Plaintiffs challenge (1) all of Bloom's financial statements between 2016 and the third quarter of 2019; (2) statements in the Registration Statement about fuel cell lifespan; and (3) statements in the Registration Statements as well as subsequent written and oral statements about efficiency and emissions.  *E.g.*, ¶¶ 201, 274 (financial

---

[2] All "¶ _" citations refer to paragraphs in the Second Amended Complaint, Dkt. No. 113.   All "Ex. _" citations refer to exhibits to the concurrently-filed Omnibus Declaration of Robin Wechkin.

1    statements); ¶¶ 75, 184 (fuel cell lifespan); ¶¶ 194, 225, 235 (efficiency and emissions).

2        The third and final event underlying Plaintiffs' claims took place in February-March 2020,

3    when Bloom advised investors that it had made an error in accounting for Managed Services

4    transactions.  Bloom announced on February 12, 2020 that it would (1) revise its financial statements

5    for 2016, 2017 and the first quarter of 2018, and (2) restate its financial statements for the second

6    quarter of 2018 through the third quarter of 2019.  ¶ 400.  Bloom then issued revised and restated

7    financial statements in its 2019 Form 10-K, filed March 31, 2020.  Ex. 12 at 164-212.

8        Based on this revision and restatement, Plaintiffs challenge Bloom's financial statements for

9    every period between 2016 and the third quarter of 2019.  *E.g.*, ¶¶ 205-06, 250-51, 279-82.  For the

10    final six quarters – the second quarter of 2018 through the third quarter of 2019 – Plaintiffs also

11    challenge Bloom's Sarbanes-Oxley Section 302 certifications.  *E.g.*, ¶¶ 210, 255, 286.  In these

12    certifications, Sridhar and Furr stated that, based on their knowledge, the reported financial

13    statements in the Forms 10-Q and 10-K at issue were accurate and the filings contained no materially

14    false or misleading statements.  *Id.*  Plaintiffs claim that because Bloom's financial statements

15    contained errors, the Section 302 certifications were intentionally false or misleading.

16        Plaintiffs also challenge statements Bloom made under a different provision of Sarbanes-

17    Oxley, Section 404.  Pursuant to Section 404, Bloom stated that management had concluded, based

18    on its evaluation, that the Company's internal controls were effective.  *E.g.*, ¶¶ 253, 284.  Plaintiffs

19    claim that these statements were deliberately false or misleading in light of Bloom's acknowledge-

20    ment in its 2019 Form 10-K that a control weakness existed as of December 31, 2019.  ¶ 415.

21   **III.**    **DISCUSSION**

22        **A.**    **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Any Of The Seven**
23               **Groups Of Challenged Statements.**

24        Under the exacting standards of the PSLRA, Plaintiffs must plead both falsity and scienter

25    with particularity.  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876-77 (9th Cir. 2012)

26    (plaintiffs must "state with particularity both the facts constituting the alleged violation and the facts

27    evidencing scienter") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  The

28    scienter standard is demanding:  Plaintiffs must "state with particularity facts giving rise to a strong

inference that the defendant acted" with scienter.  15 U.S.C. § 78u-4(b)(2).  A court should deny a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  Plaintiffs must thus "plead with particularity facts that give rise to a 'strong' – i.e., a powerful or cogent – inference." *Id.* at 323.  Courts evaluate scienter allegations both individually and holistically.  *In re NVidia, Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014).

Plaintiffs must satisfy this standard, moreover, with respect to the two individual Section 10(b) defendants – Sridhar and Furr.  The Ninth Circuit has held that the theory of corporate or collective scienter is available, at most, in narrow circumstances in which the challenged statements are "so dramatically false . . . [as] to create an inference of scienter that at least some corporate officials knew of falsity upon publication." *NVidia*, 768 F.3d at 1063 (rejecting corporate scienter allegations) (internal quotation marks omitted).  Plaintiffs here appear to recognize that they cannot meet this standard:  In connection with corporate scienter, they state only that Bloom is liable for the actions of Sridhar, Furr and all other employees under principles of *respondeat superior*.  ¶¶ 478-79.

*Respondeat superior* does not relieve Plaintiffs of the obligation to show that the executives who made the challenged statements – Sridhar and Furr – did so knowing of their purported falsity.  "[L]iability for fraud cannot be imputed to a corporation without evidence that an agent of the corporation who participated in making the challenged statements did so with scienter." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, 2017 WL 6041723, at *8 (N.D. Cal. Dec. 6, 2017); *Prodanova v. H.C. Wainwright & Co.*, 2018 WL 8017791, at *14 (C.D. Cal. Dec. 11, 2018) (dismissing Section 10(b) claim where plaintiffs could not show that the author of the challenged statement knew that it was false; rejecting argument that plaintiffs could show corporate scienter by reference to a different employee's purported knowledge).  Plaintiffs have not pled facts here showing that Sridhar and Furr made intentionally false statements, and this shortfall is equally fatal to Plaintiffs' effort to plead scienter as to Bloom.

              1.      **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Their "Construction Delay" Claim**.

As discussed in the Section 11 Defendants' Brief, Bloom cautioned investors that the

1   processes of construction, installation and acceptance were subject to delay resulting from various

2   factors outside the Company's control, from weather to customer financing arrangements – factors

3   that are virtually impossible to predict.  Fairly read, the challenged statements did not conceal the

4   fact that delay was an ongoing feature of Bloom's business; they revealed that fact.

5          Plaintiffs' construction delay claims also fail under Section 10(b) for reasons beyond those

6   discussed in the Section 11 Defendants' Brief.  Plaintiffs rely almost entirely on views attributed to

7   CW1.  Confidential witness allegations are subject to the PSLRA's rigorous pleading standards.

8   Plaintiffs must accordingly provide a "basis for determining that the witnesses in question have

9   *personal knowledge* of the events they report." *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981,

10  995 (9th Cir. 2009) (emphasis added).  Plaintiffs must also describe confidential witnesses "with

11  sufficient particularity to support the probability that a person in the position occupied by the source

12  would possess the information alleged." *Id.* (internal quotation marks and citation omitted).

13         Plaintiffs fall far short of these standards.  Plaintiffs admit that CW1 left Bloom five months

14  before the IPO – which is when the challenged statements were made – and seven months before the

15  end of the third quarter of 2018, when Bloom narrowly missed guidance on acceptances.  ¶¶ 142,

16  431.  By definition, CW1 did not have personal knowledge of the facts about Bloom's third-quarter

17  performance attributed to him.  Plaintiffs seek to cure this fatal defect with the claim that CW1 stated

18  that construction delays "continued after he left." *Id.*  Even if this could substitute for personal

19  knowledge – and it clearly cannot – Plaintiffs would need to specify *how* CW1 came to know about

20  events at Bloom that occurred after he left Bloom.  Again, Plaintiffs must plead facts establishing a

21  *basis* for CW1's purported knowledge. *Zucco*, 552 F.3d at 995.  Plaintiffs have not done so.

22         Equally critically, Plaintiffs plead no facts showing that Sridhar and Furr were aware of the

23  information attributed to CW1.  Plaintiffs claim that CW1 "indicated that upper management, all the

24  way up to Sridhar, typically became aware right away."  ¶ 144.  But Plaintiffs provide no basis for

25  CW1's purported knowledge about Sridhar and Furr:  CW1 does not claim to have interacted with or

26  even met the two executives.  Courts routinely reject confidential witness allegations – and dismiss

27  claims on scienter grounds – where a witness cannot connect purported information with individual

28  Section 10(b) defendants. *E.g., Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 814 (N.D. Cal.

6

2019) ("None of the CWs had any direct (or indirect) contact with any of the Individual Defendants and therefore cannot provide reliable insight into the Defendants' state of mind"); *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1154 (C.D. Cal. 2018) ("since Plaintiff does not allege that FE2 had any meaningful contact with Defendants, the allegations related to FE2 do not support an inference that Defendants had any knowledge of the . . . reports to which FE2 had access"), *aff'd*, 794 F. App'x 669 (9th Cir. 2020).  Plaintiffs' conclusory confidential witness allegations fail to create a strong inference of scienter.

Plaintiffs' construction delay claim also fails for a separate reason unique to the Section 10(b) context.  Plaintiffs premise the claim on Item 303 of Regulation S-K, ¶ 140, but under controlling law, Item 303 does not provide a basis for liability in a Section 10(b) claim.  *NVidia*, 768 F.3d at 1056.  Thus even beyond the defects that beset their use of Item 303 in the context of their Section 11 claim, Item 303 cannot provide a basis for Plaintiffs' Section 10(b) claim.

2.  **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Bloom's Accounting For MSAs.**

Based on Bloom's restatement and revision, Plaintiffs claim that Bloom's accounting for its Managed Services Agreements (MSAs) rendered the Company's financial statements for 2016 through the third quarter of 2019 materially false or misleading.  The Section 11 Defendants have shown why this claim fails – on falsity and materiality grounds – as to all financial statements reported in the Registration Statement   The Section 11 Defendants' falsity and materiality arguments apply equally to Plaintiffs' attack on the Registration Statement under Section 10(b).

As to Plaintiffs' challenge to the financial statements for periods reported after the IPO – the second quarter of 2018 through the third quarter of 2019 – the Section 11 Defendants' falsity arguments again apply.  Plaintiffs have failed to comply with the requirements for challenging opinion statements laid down in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).

Critically, Plaintiffs' Section 10(b) challenge to all of the financial statements at issue also fails on scienter grounds.  Ninth Circuit law has long been clear that an error in applying GAAP – even an error that leads to a restatement – cannot in itself support a strong inference of scienter.

1    *Zucco*, 552 F.3d at 1000 ("the mere publication of a restatement is not enough to create a strong

2    inference of scienter"); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th

3    Cir. 2002).  Plaintiffs nevertheless contend that scienter can be inferred from Bloom's errors in

4    accounting for the MSAs.  ¶¶ 461-71.  Remarkably, Plaintiffs scarcely mention the two individual

5    defendants with respect to whom they must support that inference.  Plaintiffs do not refer to Sridhar

6    at all in their effort to show scienter with respect to Bloom's MSAs.  Plaintiffs do refer to Furr, but

7    only to observe that he has earned credentials and spent his career in business and finance.  ¶ 471.

8    Allegations of this sort are insufficient.  *E.g.*, *In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181,

9    at *8 (D. Ariz. July 5, 2006) ("The fact that [the company's CFO] had professional experience at the

10    time of the misclassification does not suggest that the mistake must have been intentional").

11    Rather than seeking to plead the necessary facts about Sridhar's and Furr's state of mind,

12    Plaintiffs provide their own views about lease accounting, including their view that "capital leases

13    are generally less desirable than operating leases." ¶ 465.  Plaintiffs then claim that the matter was

14    subject to "very clear bright line provisions" and that "[h]ad the Defendants bothered to actually

15    apply" those provisions, they would not have made errors.  ¶¶ 466, 470.

16    This does not suffice to create a strong inference of intentional wrongdoing.  Plaintiffs'

17    contention that the accounting errors were obvious is plainly belied by PwC's judgment, over

18    multiple audits and other reviews, that Bloom's treatment of the MSAs as sales was appropriate.  As

19    significantly, Plaintiffs' generalized contention that the errors were obvious is largely beside the

20    point in the scienter analysis, which is necessarily focused on the state of mind of particular

21    individuals:

22        A plaintiff . . . cannot merely point to a GAAP principle and contend that a correct
         interpretation was simple or obvious.  At the very least, the plaintiff must present facts
23        demonstrating that *the defendant* was aware of the relevant GAAP principle and that *this
         defendant* knew how that [principle] was being interpreted.  The plaintiff must then plead
24        facts explaining how *the defendant's incorrect interpretation* was so unreasonable or
         obviously wrong that it should give rise to an inference of deliberate wrongdoing.
25

26    *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1361 (C.D. Cal. 2014)

27    (internal quotation marks and citation omitted; emphasis added).  Plaintiffs' burden in this case is to

28    plead specific facts showing that Sridhar and Furr were familiar with the GAAP provisions

8

1    governing Bloom's accounting for its MSAs, with the way in which the Company was applying

2    those provisions and with the fact that this application was wrong.  *See, e.g., Bao v. Solarcity Corp.,*

3    2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (dismissing challenge to financial statements on

4    scienter grounds where plaintiffs fail to allege facts related to "Defendants' specific conduct

5    regarding accounting practices").  Plaintiffs have not pled the required facts here.

6          This is fatal.  Courts have repeatedly dismissed accounting-based claims on scienter grounds

7    even where Section 10(b) plaintiffs are able to plead significantly more facts about an individual

8    defendant's knowledge of accounting errors than Plaintiffs have pled here.  Thus in *Cadence*, where

9    the company was required to restate revenue related to software licenses with two major customers,

10   plaintiffs alleged that the individual defendants had spent time with those customers and played a

11   role in approving the transactions that were later restated.  *In re Cadence Design Sys., Inc., Sec.*

12   *Litig.*, 654 F. Supp. 2d 1037 (N.D. Cal. 2009).  This was insufficient to establish scienter:  Plaintiffs

13   had not shown that the individual defendants "were likely to know first hand the facts" necessary to

14   make a correct accounting determination.  *Id.* at 1046-49.  Similarly, in *Taleo* – another restatement

15   case – plaintiffs were able to show that the individual defendants were to varying degrees familiar

16   with the company's accounting procedures.  *In re Taleo Corp. Sec. Litig.*, 2010 WL 597987 (N.D.

17   Cal. Feb. 17, 2010).  This was again insufficient:  Plaintiffs failed to plead the required "facts

18   demonstrating that defendants 'were furnished with information that would have allowed them to

19   discern that the financial data *was wrong*.'"  *Id.* at *9 (citing and quoting *City of Brockton Ret. Sys.*

20   *v. Shaw Group, Inc.*, 540 F. Supp. 2d 464 (S.D.N.Y. 2008)) (emphasis in original).  The absence of

21   facts required to establish scienter is even starker in this case.  Plaintiffs do not even attempt to

22   connect Sridhar or Furr with Bloom's accounting for the MSAs.  Plaintiffs certainly have pled no

23   facts supporting a strong inference that the two executives knew that Bloom's accounting for the

24   transactions "was wrong."

25         Without mentioning Sridhar or Furr, Plaintiffs seek to build a scienter case by pointing to a

26   disclosure in the selected consolidated financial data presented in the Registration Statement.  Bloom

27   stated there that the Company had historically recognized revenue on the MSAs ratably over the life

28   of the contracts.  ¶ 434.  Plaintiffs claim that this disclosure shows scienter.  According to Plaintiffs,

1   Bloom "disclosed the proper way to account for the MS transactions" in the Registration Statement –

2   which shows that the Company knew what the appropriate accounting treatment was – but then did

3   not apply that treatment.  ¶ 437.

4           This contention fails for multiple reasons.  Most obviously, Plaintiffs plead no facts showing

5   that the description of revenue recognition in the Registration Statement bears in any way on Sridhar

6   or Furr's state of mind, or indicates that either executive intentionally deviated from GAAP with

7   respect to Bloom's MSA accounting.

8           Plaintiffs are also disregarding chronology.  The effect of Bloom's accounting error had a de

9   minimis effect on revenue in the periods reported in the Registration Statement.  ¶ 90 (alleging a 2.8

10  percent impact on revenue for 2017 and a 0.5 percent impact on revenue for the first quarter of

11  2018).  The obvious explanation for this is that during these periods, Bloom was applying sale

12  accounting to only a very small number of its MSA transactions; this is the reason the revisions to

13  revenue were so small when the error was corrected.  For the balance of its MSAs at that time, as

14  Plaintiffs note, Bloom explained that it had recognized revenue ratably.  ¶ 435.

15          Bloom also told investors in the Registration Statement that it was making changes to its

16  purchase arrangements such that moving forward, the Company would be able to recognize the vast

17  majority of its product and installation revenue at the time of acceptance, *i.e.*, upfront.  Ex. 1 at 62.

18  Consistent with that disclosure, Bloom advised investors in subsequent filings that the upfront

19  portion of its product and installation revenue in general was growing.  Ex. 4 at 75.  In its 2018 Form

20  10-K, Bloom reported that it now recognized product and installation revenue from of its MSAs at

21  acceptance, *i.e.*, upfront.  Ex. 6 at 42.  Bloom's public statements about revenue recognition, far

22  from showing intentional fraud, demonstrate that the Company was appropriately updating its

23  disclosures to reflect changes within the purchase options it offered to customers and the resulting

24  changes in the accounting treatment of those transactions.

25          Other aspects of Bloom's restatement also defeat rather than supporting an inference of

26  scienter.  Where the effect of a restatement is not to eliminate previously-reported revenue but only

27  to move revenue into later periods – which is the case here – this cuts against scienter.  *See IXIA*, 50

28  F. Supp. 2d at 1364.  In addition, there is no suggestion in the complaint that Bloom's MSA

1    accounting error turned a loss for any period into a profit.  For all reported periods, the result of the

2    restatement was simply to turn a loss into a larger loss.  ¶¶ 90, 191, 222, 279, 297, 345, 379.

3    Similarly, Plaintiffs do not allege that Bloom's error in accounting for the MSAs enabled the

4    Company to meet its own or analysts' projections for any quarter.  Even in cases where Section

5    10(b) plaintiffs are able to show such an effect, courts will not infer scienter in the absence of

6    particularized facts showing that the individual defendants knew the accounting was wrong.

7    *Cadence*, 654 F. Supp. 2d at 1042, 1046-48 (dismissing on scienter grounds notwithstanding

8    plaintiffs' allegation that company would have missed projections but for an accounting error that

9    was later the subject of a restatement).  Plaintiffs here do not allege that accounting errors enabled

10   Bloom to meet guidance or show a profit.

11       Indeed, Plaintiffs' scienter allegations are notable in multiple ways for what they lack.  For

12   all of Plaintiffs' insistence that Bloom's accounting for the MSAs was obviously wrong, Plaintiffs

13   cite no confidential witness suggesting that any person within Bloom *disagreed* with the Company's

14   treatment of the MSAs as sales.  Even in cases where plaintiffs *are* able to cite statements of

15   witnesses concluding that the challenged accounting was plainly wrong, courts dismiss on scienter

16   grounds where the facts alleged do not show that *the individual defendants* believed that to be the

17   case.  *Hypercom*, 2006 WL 1836181, at *7-11; *see also, e.g., Cadence*, 654 F. Supp. 2d at 1047

18   (dismissing on scienter grounds where, among other things, "[n]o CW resembles a 'whistle blower,'

19   or alleges that anyone within [the company] instructed them to do anything wrong").  Here, of

20   course, nobody but Plaintiffs themselves – with the benefit of the restatement – has suggested that

21   Bloom's error was obvious or intentional.  As discussed in the Section 11 Defendants' Brief, the

22   error turned on the evaluation of events-of-default provisions in a highly complicated series of

23   contractual arrangements.  And of course PwC, which was fully informed about the transactions, had

24   consistently agreed that Bloom's accounting was appropriate.  Because Plaintiffs bear the burden of

25   creating a strong inference of scienter, and because they have not cogently dispelled the far stronger

26   inference that Bloom's accounting error was the product of an innocent mistake, Plaintiffs'

27   restatement-based claim fails on scienter grounds.  *E.g., Taleo*, 2010 WL 597987, at *10-11

28   (dismissing where "there are no facts from which the Court could conclude or infer that the

11

1   accounting was so simple and basic that defendants could not have made an innocent mistake")

2   (internal quotation marks and brackets omitted).[3]

3       3.   **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Statements Related To Internal Controls.**

4

5       With respect to internal controls, Plaintiffs attack under Section 10(b) the same statement in

6   Bloom's Registration Statement they challenge under Section 11.  ¶ 174.  As discussed in the

7   Section 11 Defendants' Brief, Plaintiffs have mischaracterized the challenged statement and have

8   failed to comply with *Omnicare*'s framework for pleading claims attacking opinion statements.

9       Plaintiffs also challenge under Section 10(b) the statements, required by Sarbanes-Oxley, that

10  management, including the CEO and CFO, had evaluated internal controls and concluded that those

11  controls were "effective to provide reasonable assurance" that a company has disclosed required

12  information in its Exchange Act filings.  *E.g.*, ¶¶ 253, 284.  According to Plaintiffs, Bloom's later

13  recognition of an internal control weakness existing as of December 31, 2019 renders these

14  statements knowingly false.  *E.g.*, ¶¶ 254, 285.  Plaintiffs use the Sarbanes-Oxley statements in two

15  ways.  They claim both that the statements were materially false or misleading representations in

16  themselves, *id.*, and that the statements are probative of scienter with respect to *other* challenged

17  statements – namely, Bloom's financial statements.  ¶¶ 472-75.

18      Plaintiffs are wrong on both counts.  "Boilerplate language in a corporation's 10-K form, or

19  required certifications under Sarbanes-Oxley section 302(a) . . . add nothing substantial to the

20  scienter calculus. . . . [A]llowing Sarbanes-Oxley certifications to create an inference of scienter in

21  every case where there was an accounting error or auditing mistake by a publicly traded company

22  would [eviscerate] the pleading requirements for scienter set forth in the PSLRA."  *Zucco*, 552 F.3d

23  at 1003-04 (internal quotation marks and citations omitted).  Courts within the Ninth Circuit have

24  thus repeatedly recognized that an acknowledged internal control weakness – like an acknowledged

25  financial statement error – is insufficient to support a strong inference of scienter.  "'[A]llegations

26

27  ─────────────
    [3] Plaintiffs' inability to establish scienter is also fatal to their effort to show falsity under *Omnicare*'s
    first prong.  That prong requires a demonstration that a defendant did not subjectively believe his or
28  her opinion.  575 U.S. at 187-88; Section 11 Defendants' Brief at 10.  In the absence of facts about
    Sridhar's or Furr's state of mind, Plaintiffs have not shown that these defendants disbelieved the
    challenged opinion statements.

1   that Defendants had deficient internal controls during the class period does not create a strong

2   inference that Defendants knowingly [made] false or misleading statements.'" *In re Hansen Nat.*

3   *Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) (quoting *In re Loudeye Corp. Sec.*

4   *Litig.*, 2007 WL 2404626 (W.D. Wash. Aug. 17, 2007)); *see also, e.g., Hypercom*, 2006 WL

5   1836181, at *9 (plaintiffs fail to establish scienter based on company's subsequent recognition of

6   internal control weaknesses; "[p]resumably every company that issues a financial restatement

7   because of GAAP errors will cite as the reason a lack of effective internal controls").  Courts reject

8   such allegations both when Section 10(b) plaintiffs challenge the Sarbanes-Oxley statements

9   themselves and when they rely on those statements to demonstrate scienter with respect to other

10  challenged statements.  *See, e.g., M & M Hart Living Trust v. Global Eagle Entm't, Inc.*, 2017 WL

11  5635425, at *5 (C.D. Cal. Oct. 30, 2017) (dismissing on scienter grounds claim challenging

12  Sarbanes-Oxley certification); *Zucco*, 552 F.3d at 1003-04 (rejecting allegation that Sarbanes-Oxley

13  certification establishes scienter as to other challenged statements).

14          Plaintiffs here plead no facts suggesting that Sridhar or Furr knew at any point during the

15  purported class period of any defect in internal controls.  Plaintiffs rely entirely on the fact, known

16  only with hindsight, that Bloom *eventually* recognized a control weakness in connection with the

17  restatement.  This does not establish scienter.  "'An allegation that defendants should have known

18  about internal control deficiencies based on nothing more than later acknowledgement of such

19  weaknesses amounts to pleading fraud by hindsight.'"  *Bruce v. Suntech Power Holdings Co.*, 2013

20  WL 6843610, at *3 (N.D. Cal. Dec. 26, 2013) (quoting *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791

21  (N.D. Ill. 2007)).  Thus, where Section 10(b) plaintiffs "do not plead specific facts indicating that

22  any of the individual defendants *recklessly disregarded* or *intentionally exploited* internal control

23  deficiencies," they cannot state a fraud claim on the basis of a company's later acknowledgement of

24  those deficiencies.  *IXIA*, 50 F. Supp. 3d at 1364 (emphasis added).  Plaintiffs have certainly pled no

25  such facts in this case.  Indeed, Plaintiffs quote – and do not challenge – Bloom's statement in its

26  February 12, 2020 Form 8-K that the Company's error in accounting for the MSAs "did *not* result

27  from . . . any override of controls or from any misconduct."  ¶ 400 (emphasis added).  Plaintiffs have

28  failed to state a fraud claim on the basis of Bloom's Sarbanes-Oxley-mandated statements related to

1    internal controls.[4]

2          4.      **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Their Attack**
                   **On Bloom's Accounting For Contingent Liabilities.**
3

4          In addition to challenging Bloom's financial statements based on the restatement and

5    Bloom's accounting for the MSAs, Plaintiffs claim that the financial statements were materially false

6    or misleading because the Company (allegedly) did not appropriately account for contingent

7    liabilities related to its one-year service contracts.  Under Section 11, Plaintiffs launch this attack on

8    Bloom's financial statements for 2016, 2017 and the first quarter of 2018.  Under Section 10(b),

9    Plaintiffs expand that claim to encompass financial statements reported in Bloom's Forms 10-Q and

10   10-K for the second quarter of 2018 through the third quarter of 2019.  *E.g.*, ¶¶ 201-03, 244-48.

11         As discussed in the Section 11 Defendants' Brief, Plaintiffs have not established falsity with

12   respect to this claim.  Plaintiffs fail to comply with *Omnicare*'s requirements for challenging opinion

13   statements, and in any event have not shown that Bloom's financial statements contained errors

14   related to contingent liabilities.  Consistent with GAAP, Bloom recognized revenue and recorded

15   costs with respect to actual contracts – not potential future contracts.  Section 11 Defendants' Brief

16   at 11-13.  Plaintiffs' inability to show that the challenged financial statements were materially false

17

18

19   _____

20   [4] As noted, Plaintiffs challenge two separate sets of statements required by Sarbanes-Oxley.  *Supra*
     at 4.   The statements just discussed – statements that management has evaluated the effectiveness of
21   disclosure controls – are required by Sarbanes-Oxley Section 404. 15 U.S.C. § 7262.  Plaintiffs also
     challenge certifications made under Section 302 of Sarbanes-Oxley.  *E.g.*, ¶¶ 210, 286.  In the latter
22   certifications, Sridhar and Furr stated that "[b]ased on [their] knowledge," the accompanying Form
     10-Q or 10-K did not contain untrue or misleading facts and fairly presented the company's financial
23   condition.  *Id.*; *see* 15 U.S.C. § 7241.  Although the Section 302 certifications also refer to
     management's duty to design and evaluate effective internal controls, Plaintiffs do not challenge this
24   part of the certification; Plaintiffs claim only that the Section 302 certifications were false because
     Bloom (purportedly) accounted for MSAs and contingent liabilities improperly.  *E.g.*, ¶¶ 211, 287.
25   Plaintiffs have thus failed to plead scienter with respect to the Section 302 certifications for the same
     reasons they have failed to plead scienter with respect to the underlying financial statements.  *Supra*
26   at 7-12 (MSAs); *infra* at 14-16 (contingent liabilities).  Plaintiffs' attack on the Section 302
     certifications further fails because Plaintiffs have not shown that Sridhar or Furr disbelieved the
27   statements in the certifications – and that is required in light of the prefatory statement "based on my
     knowledge."  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 402 (S.D.N.Y. 2016) ("Because this
28   statement is qualified by the phrase '[b]ased on my knowledge,' the falsity of the statement is
     entirely dependent on what [the defendant] knew, not on what was objectively true at the time of the
     statement").

1   or misleading dooms their Section 10(b) claim just as it dooms their Section 11 claim.[5]

2       In addition, Plaintiffs again fail to allege facts supporting a cogent and compelling inference

3   of intentional fraud.  As with their attack on Bloom's MSA accounting, Plaintiffs allege no facts

4   supporting an inference that Sridhar or Furr intentionally falsified Bloom's financial statements.

5   Plaintiffs certainly have not pled facts showing that Bloom's accounting was so "obviously wrong"

6   that Sridhar and Furr could only have made the alleged errors intentionally.  Nobody but Plaintiffs –

7   for transparent litigation purposes – has suggested that Bloom's accounting for contingent liabilities

8   was inconsistent with GAAP, let alone obviously so.

9       Within this factual vacuum, Plaintiffs point, first, to Bloom's replacement of certain older-

10  generation servers in 2015.  ¶ 422.  This does not support an inference that Sridhar or Furr made

11  intentionally false statements about contingent liabilities.  On the contrary:  Bloom *disclosed* the

12  2015 replacements in the Registration Statement and subsequent filings, warning investors that

13  "[e]arly generations of our Energy Server did not have the useful life and did not perform at an

14  output and efficiency level that we expected."  Ex. 1 at 24; ¶ 423.  Bloom further disclosed that as a

15  result of issues with these early-generation servers, the Company in 2015 "implemented a fleet

16  decommissioning program" for certain servers, and that this resulted in a significant adjustment to

17  revenue for the fourth quarter of 2015.  Ex. 1 at 25; ¶¶ 69-70.  Recognizing and disclosing

18  difficulties with prior estimates does not show deliberate fraud; it shows good faith.  *See, e.g., Rigel,*

19  697 F.3d at 885 ("voluntarily publicly disclosed" information undermines inference of scienter).

20  Plaintiffs' suggestion to the contrary depends on a tortured series of inferences – that later

21  generations of Energy Servers would also underperform estimates; that Bloom would be required to

22  replace those servers under potential future service contracts; that Bloom's financial statements were

23  accordingly false insofar as the Company did not immediately record costs connected with those

24  future contracts; and that Sridhar and Furr therefore intentionally defrauded investors.  ¶¶ 420-24.

25  Not one of these inferences is warranted or supported by factual allegations.

26      Plaintiffs next point to a series of transactions Bloom entered into in June 2019, in which a

27

28  _____
    [5] As with their construction delay claim, Plaintiffs rely on Item 303 in connection with their Section 10(b) contingent liability claim.  *E.g.,* ¶¶ 151, 203.  This is contrary to controlling law.  Item 303 does not provide a basis for liability under Section 10(b).  *Supra* at 7.

new financing entity purchased a majority interest in a project that employed Bloom Energy Servers

to provide energy to public rate-payers in Delaware.  ¶ 425; Ex. 8 at Item 1.01.  As part of this series

of transactions, Bloom committed to decommission older-generation Energy Servers and to deploy

newer-generation servers if it was able to raise the capital needed to do so.  *Id.*; *see also* ¶¶ 71, 333,

353-71; Ex. 8 at Item 1.01; Ex. 9 at 32.  Plaintiffs do not and cannot allege that this complex series

of transactions had anything to do with Bloom's service contracts, or that Bloom was required to

enter into the transactions as a result of commitments it made in those contracts to maintain and

repair equipment.  Indeed, the very fact that Bloom advised investors of these transactions by means

of a Form 8-K – an SEC filing triggered in this case by the Company's entrance into a material

definitive agreement – shows that the Delaware project was anything *but* a routine repair or

replacement under the Company's service contracts.  *See* 17 CFR §§ 240.13a-11, 240.15d-11, Ex. 8.

Stated differently, the SEC filings on which Plaintiffs rely in an effort to establish falsity and

scienter, ¶¶ 333-38, in reality show that the June 2019 transactions were not related to contingent

liabilities under Bloom's service contracts.   These were transactions involving new parties, new

financing and new construction.   Even if the June 2019 transactions *were* linked with contingent

servicing liabilities, moreover, Plaintiffs' allegations shed no light whatsoever on Sridhar's or Furr's

state of mind with respect to Bloom's accounting for contingent liabilities.

      Plaintiffs finally point to what they label a "Change in Risk Warnings" related to contingent

liabilities.  ¶¶ 476-77.  This is baffling.  Section 10(b) plaintiffs generally argue that falsity or

scienter may be inferred when a company *fails* to change or update its risk disclosures.  *See, e.g.,*

*Rochester Laborers Pension Fund v. Monsanto Co.*, 883 F. Supp. 2d 835, 853 (E.D. Mo. 2012)

(plaintiffs attack risk disclosures on the basis that they "'remained virtually unchanged' during the

relevant time period"; court grants motion to dismiss).  In any event – although Plaintiffs' allegations

on this point are by no means clear – the change to which Plaintiffs appear to refer is contained not

in Bloom's risk disclosures but instead in the notes to the Company's audited financial statements.

In its 2018 Form 10-K, Bloom added a sentence to the financial statement note in which it discussed

warranty obligations in its service contracts:  "Customers may renew the [service contracts] leading

to future expense that is not recognized under GAAP until the renewal occurs."  Ex. 6 at 91.

1   Plaintiffs' bewildering claim appears to be that because Bloom made clear to investors in its Form

2   10-K that expenses related to potential future contracts are *not* recorded under GAAP, the Court

3   should infer that Sridhar and Furr knew that Bloom in fact *should have* recorded those expenses

4   under GAAP.  That is nonsensical.  Plaintiffs have not created the required cogent and compelling

5   inference of scienter with respect to Bloom's accounting for contingent liabilities.

6              5.    **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To ASC 606.**

7          Plaintiffs leave unclear whether they are challenging under Section 10(b) – as they do under

8   Section 11 – Bloom's statement that it was not required to apply ASC 606 at the time of the IPO.  If

9   Plaintiffs are indeed asserting such a claim, it fails as a matter of law.  As the Section 11 Defendants

10  have shown in their brief, Bloom's statement is demonstrably true as a legal matter.  Plaintiffs have

11  moreover alleged no facts at all about Sridhar's or Furr's knowledge of ASC 606, let alone facts

12  supporting a strong inference that Sridhar or Furr believed that Bloom was required to adopt this

13  provision earlier than it did.

14             6.    **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Challenged**
                     **Statements About Fuel Cell Life.**
15

16         With respect to fuel cell life, Plaintiffs challenge exactly the same statements under Section

17  10(b) that they challenge under Section 11 – the statements in the Registration Statement in which

18  Bloom estimated a five-year lifespan for its later-generation fuel cells.  ¶¶ 75, 184.  As the Section

19  11 Defendants have demonstrated, Plaintiffs have alleged no facts showing that the fuel cells needed

20  replacement in less than five years.  Plaintiffs rely on the Hindenburg authors' "extrapolation"

21  purportedly showing that a shorter lifetime is indicated, but the fact that a short seller has made a

22  different projection than a company does not show that the company's projection is wrong.  Even if

23  Plaintiffs had shown that the challenged estimate turned out to be wrong, moreover, they have not

24  pled what *Omnicare* requires – facts showing that Defendants did not subjectively believe their

25  opinion or omitted critical facts about the bases of their opinion. Section 11 Defendants' Brief at 10.[6]

26  _____

27  [6] Plaintiffs' citation to an anonymous technician and an anonymous industry expert quoted by the
    Hindenburg authors, ¶ 185, is doubly insufficient under the PSLRA's pleading standards.  *E.g., Diaz*
    *v. Northern Dynasty Minerals Ltd.*, 2018 WL 5099749, at *7 (C.D. Cal. April 30, 2018) (rejecting
28  allegations plaintiffs adopted from a short seller report where the sources cited by the short seller
    were not identified by name and did not purport to have worked for the defendant company).

17

Plaintiffs fail equally to plead scienter. They allege no facts whatsoever bearing on what Furr and Sridhar believed about fuel cell life, and that is fatal. *Supra* at 5.

7. **Plaintiffs Fail To Plead Falsity Or Scienter With Respect To Challenged Statements About Efficiency And Emissions.**

Finally, Plaintiffs challenge under Section 10(b) the same or very similar statements about efficiency and emissions they challenge under Section 11. *E.g.*, ¶¶ 194, 225, 235. Plaintiffs have not shown under Section 10(b) any more than they have shown under Section 11 that these statements were materially false or misleading. The third-party sources Plaintiffs cite in seeking to show falsity – the University of Delaware article, the City of Santa Clara lawsuit and others – are in no way inconsistent with the challenged statements. Section 11 Defendants' Brief at 24-25.

Plaintiffs also fail to plead facts supporting a cogent and compelling inference of deliberate wrongdoing. Plaintiffs cite a reference, in the February 2020 letter from Delaware state senators, to an "Amy Roe" who is supposed to have read some vaguely-described material related to carbon emissions into the record at a January 2019 hearing on a permit application. ¶ 182. Plaintiffs claim that this put the Section 10(b) Defendants "on notice" that Energy Servers "were not as clean as they represented to investors." ¶ 439. This is virtually unintelligible. Plaintiffs do not explain who Amy Roe is or what exactly she read into the record. Nor do they specify which "representation to investors" is supposed to have been contradicted by whatever Amy Roe said or did. They certainly plead no facts showing that Sridhar or Furr intentionally misled investors with respect to any challenged representation.

Plaintiffs also invoke the "core operations" principle, claiming that it is "absurd to suggest that the Section 10(b) Defendants did not know that the servers produced pollutants." ¶ 439. But Bloom did not state that its servers "produced [no] pollutants." Bloom compared emissions from Energy Servers with emissions from other specified energy sources and said that Bloom's emissions were lower. *E.g.*, ¶ 179 (Energy Servers produce "lower harmful emissions than conventional fossil fuel generation"). Plaintiffs allege no facts showing that these comparisons were false or misleading.

The core operations theory cannot help Plaintiffs over that difficulty. "Proof under [the core operations] theory is not easy." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d

18

1051, 1062 (9th Cir. 2014).  The theory has no application where – as here – plaintiffs have not

shown that any statement defendants actually made was false or misleading in the first place.

*McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *22 (N.D. Cal. Aug. 7, 2019) ("the

Court cannot find it would be 'absurd' to assume the Individual Defendants did not know their

statements are false and misleading because their statements are not in fact false or misleading").  In

any event, the core operations theory requires Plaintiffs to plead "either specific admissions by one

or more corporate executives of detailed involvement in the minutia of a company's operations . . .

or witness accounts demonstrating that executives had actual involvement in creating false reports."

*Intuitive Surgical*, 759 F.3d at 1062.  Plaintiffs have alleged nothing of the kind here.

### B.   Plaintiffs Have Not Created A Cogent And Compelling Inference Of Intentional Wrongdoing Under A Holistic Analysis.

In addition to their statement-specific scienter allegations, Plaintiffs invite the Court to infer

scienter based on Defendants' purported motivation to commit fraud as to all challenged statements.

¶¶ 441-60.  We discuss these general scienter allegations first and then present the holistic scienter

analysis required by *Tellabs*.

#### 1.   Plaintiffs' Generic Financial Motivation Allegations Do Not Support A Strong Inference of Scienter.

Under controlling law, allegations of motive and opportunity are "not independently

sufficient" to establish scienter.  *E.g.*, *Intuitive Surgical*, 759 F.3d at 1062.  Beyond this, Plaintiffs'

motive allegations are largely self-defeating.

***Insider stock sales.***  Plaintiffs point to two stock sales each by Sridhar and Furr.  ¶¶ 455-60.

Each sale was (1) made under a Rule 10b5-1 trading plan, and (2) made to pay tax liability incurred

when restricted stock grants vested.  Exs. 25-26.  Such sales involve no discretion on the part of an

officer or employee, and hence do not support – although they may rebut – an inference of scienter.

*Metzler Inv. GmbH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1067 n.11 (9th Cir. 2008) (stock sales

made under trading plans weigh against an inference of scienter); *In re Radian Sec. Litig.*, 612 F.

Supp. 2d 594, 611 (E.D. Pa. 2009) (stock sales made to cover tax liability weigh against an inference

of scienter) (citing authorities); *Plumley v. Sempra Energy*, 2017 WL 2712297, at *10-12 (S.D. Cal.

1   June 20, 2017) (stock sales made to pay tax withholding liability do not support an inference of

2   scienter).  The sales Plaintiffs cite weigh against an inference of scienter, not in favor of it.

3          ***Incentive compensation.***  Plaintiffs next claim that the Court should infer scienter because

4   Sridhar and Furr were entitled to incentive compensation on consummation of the IPO and

5   achievement of other unspecified milestones.  ¶¶ 442-46.  This is contrary to law.  "[I]t is common

6   for executive compensation, including stock options and bonuses, to be based partly on the

7   executive's success in achieving key corporate goals   . . . [and] we will not conclude that there is

8   fraudulent intent merely because a defendant's compensation was based in part on such successes."

9   *Rigel*, 697 F.3d at 884; *see also, e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig*., 406 F. Supp. 3d

10  845, 861 (S.D. Cal. 2019) (same); *In re Tibco Software, Inc.*, 2006 WL 1469654, at *21 (N.D. Cal.

11  May 25, 2006) ("Plaintiffs *concede* that allegations concerning incentive compensation are

12  insufficient as a matter of law") (emphasis in original).  Plaintiffs also claim that Sridhar's and

13  Furr's compensation was "unreasonable," but reasonableness is a negligence rather than a scienter

14  standard; in any event, decisions about executive compensation are made not by executives but by a

15  company's board of directors and hence would not bear on Sridhar's or Furr's scienter.

16         ***Corporate motivation.***  Plaintiffs finally allege that the Section 10(b) Defendants were

17  motivated to consummate an IPO at a purportedly inflated price so that Bloom could retire debt or

18  incentivize creditors to exchange convertible debt for equity.  ¶¶ 449-54.  Plaintiffs also suggest that

19  the Defendants were motivated to keep Bloom's stock price high because additional debt will come

20  due in late 2020 or 2021.  ¶¶ 447-48.  This too is contrary to law.  "[A]llegations of routine corporate

21  objectives . . . are not, without more, sufficient to allege scienter; to hold otherwise would support a

22  finding of scienter for any company that seeks to enhance its business prospects."  *Rigel*, 697 F.3d at

23  884 (citing *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002)); *see also Yates v.*

24  *Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 891 (4th Cir. 2014) (declining to infer scienter from

25  ubiquitous financial motivations, including the motivation to avoid default on a loan covenant).

26                    2.    **Plaintiffs' Scienter Allegations Are As Defective Considered Together As**
                            **Considered Separately.**

27

28         Plaintiffs' scienter allegations are no stronger taken together than considered separately.

                                              20

1   Plaintiffs cite no facts suggesting that any person within Bloom – or PwC, for that matter – disagreed

2   with Bloom's financial reporting at the time of the challenged statements, much less that Sridhar or

3   Furr believed that Bloom's financial statements were false or misleading.  The same is true of

4   Plaintiff's challenge to statements about internal controls, fuel cell life and fuel cell efficiency and

5   emissions:  Plaintiffs allege no facts indicating that Sridhar, Furr or anyone else at Bloom believed

6   that the challenged statements were false or misleading.  Plaintiffs present a single confidential

7   witness on the subject of construction delay – and that person admits that he or she did not work for

8   Bloom at the relevant time and does not purport to have interacted in any way with Sridhar or Furr.

9         Meanwhile, the facts alleged amply support an inference of good faith.  Bloom sought PwC's

10   input on MSA accounting in real time and was told that the auditor agreed that the Company's

11   accounting was appropriate.  On the subjects of contingent liabilities, fuel cell life and construction

12   delay, Bloom provided investors with robust risk disclosures, which weighs against an inference of

13   scienter and in favor of the inference that Defendants intended to portray the company's position

14   truthfully.  *E.g., Jasin v. Vivus, Inc.*, 2016 WL 1570164, at *22 (N.D. Cal. Apr. 19, 2016) ("the

15   Court agrees with Defendants that the thoroughness of [the] risk disclosures . . . negate[s] any

16   inference of scienter even further"), *aff'd*, 721 Fed. App. 665 (9th Cir. 2018); Section 11

17   Defendants' Brief at 3 (summarizing disclosures).

18         On the issue of motivation, Plaintiffs allege facts about incentive compensation and corporate

19   objectives that could be made against virtually any public company.  Plaintiffs identify no

20   discretionary stock sales that might indicate that Sridhar or Furr believed that Bloom's stock price

21   was inflated.  On the other side of the ledger, the motivation of the Hindenburg authors, on whom

22   Plaintiffs rely heavily, are very clear:  to drive down Bloom's stock price and thereby reap

23   substantial financial benefits.  The Hindenburg authors were free to do so, moreover, without the

24   fiduciary and legal constraints that bind Bloom and its executives when they make statements that

25   may influence stock price.  On the question of motivation, Plaintiffs and their principal source

26   clearly have the most to gain – and virtually nothing to lose – in denigrating Bloom's business.

27         Plaintiffs' burden is to allege facts supporting an inference of intentional wrongdoing that is

28   strong, that is cogent and that is at least as compelling as the competing inference that Sridhar and

1   Furr made the challenged statements with a good-faith belief that they were accurate and not

2   misleading.  Plaintiffs have not carried that burden.

3         **C.**     **Plaintiffs Have Not Established Loss Causation With Respect To Bloom's Statements About Fuel Cell Life And ASC 606.**

4

5         In addition to their shortfalls in pleading falsity and scienter, Plaintiffs fail to meet their

6   burden to plead loss causation as to two of the seven categories of challenged statements – those

7   about fuel cell life and those about ASC 606.  To adequately plead loss causation, a plaintiff must

8   allege that a company's stock price "fell significantly after the truth became known."  *Dura Pharms.,*

9   *Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  The relevant "truth" must relate to the allegedly false

10  statement or deceptive conduct:  Securities plaintiffs must "show a causal connection between the

11  fraud and the loss . . . by tracing the loss back to the very facts about which the defendant lied."

12  *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (internal

13  quotation marks and citations omitted).  In the Ninth Circuit, Section 10(b) plaintiffs must plead loss

14  causation with particularity.  *Oregon Pub. Emp. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 604-05.

15  Plaintiffs have not met their pleading burden here.

16        *Fuel cell life.*  Plaintiffs claim that the purported falsity of Bloom's statements about fuel cell

17  life was revealed to investors on September 17, 2019, when the Hindenburg authors issued their

18  report extrapolating a fuel cell life of less than three years.  ¶ 486.  But the Hindenburg critique on its

19  own terms cannot serve as a corrective disclosure.  The Hindenburg authors stated explicitly that "all

20  information [in the report] has been obtained from public sources."  Ex. 21 at 59.  With respect to

21  fuel cell life in particular, Hindenburg used public utility data as the source of its extrapolated

22  lifespan projections.  ¶ 185.  Reports of this sort – those offering opinions or analyses of publicly

23  available information rather than new factual information – cannot, as a matter of law, support loss

24  causation.  Loss causation requires the disclosure of *new* information, and the "negative

25  characterization of already public information" offered by a short-seller, analyst or reporter is not

26  new information.  *In re Omnicom Grp., Inc., Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010)

27  (collecting authorities).  Likewise, "the mere repackaging of already-public information by an

28  analyst or short-seller is simply insufficient to constitute a corrective disclosure."  *Meyer v. Greene*,

1  710 F.3d 1189, 1199 (11th Cir. 2013) (citing *Omnicom* and other appellate decisions).[7]

2       These decisions are precisely on point.  The Hindenburg authors, again, affirmatively stated

3  that their report is based on public information.  Because the Hindenburg critique cannot constitute a

4  corrective disclosure, and because Plaintiffs identify no other "revelation" that Bloom's estimate of

5  fuel cell lifespan was wrong, Plaintiffs' attack on that estimate fails on loss causation grounds.[8]

6       ***ASC 606.***  To the extent Plaintiffs are challenging Bloom's statement about ASC 606 under

7  Section 10(b), that challenge fails for a simple reason.  There has never been a corrective disclosure

8  about the timeliness of Bloom's adoption of this accounting provision.  Bloom correctly stated that it

9  was not required to adopt ASC 606 at the time of the IPO.  Plaintiffs point to no "revelation" that

10  this was untrue, nor to any corresponding stock drop.

11  **IV.    CONCLUSION**

12       The Court should dismiss Plaintiffs' Section 10(b) claim in its entirety for the reasons stated

13  above and in the Section 11 Defendants' Brief.  The Court should also dismiss Plaintiffs' controlling

14  person liability claim under Section 20(a) of the 1934 Act.  That claim depends on an underlying

15  primary violation, which Plaintiffs have failed to plead here.  *City of Dearborn Heights Act 435*

16  *Police & Fire Ret. Sys v. Align Tech., Inc.*, 856 F.3d 605, 623 (9th Cir. 2017)

17  Date:  July 1, 2020                                    SIDLEY AUSTIN LLP

18                                                          By:*/s/ Sara B. Brody*

19                                                             SARA B. BRODY (SBN 130222)

20                                                          *Attorneys for Defendants Bloom Energy Corp.,*
                                                             *KR Sridhar and Randy Furr*

21

22

---

23  [7] Courts in the Ninth Circuit have followed these decisions in multiple cases.  *E.g., Bonanno v.*
*Cellular Biomedicine Group, Inc.*, 2016 WL 4585753, at *4-6 (N.D. Cal. Sept. 2, 2016) (dismissing
24  on loss causation grounds where plaintiffs relied on blogger's analysis of publicly available
information; "[b]ecause the [blog] only collected and opined on already public information, it does
25  not constitute disclosure of 'the truth' as required for a corrective disclosure"); *In re Herbalife Sec.*
*Litig.*, 2015 WL 12732428, at *6 (C.D. Cal. Mar. 27, 2015) (dismissing where loss causation
26  allegations rested on short seller's assessment of public information); *see also Miller v. PCM, Inc.*,
2018 WL 5099722, at *11 (C.D. Cal. Jan. 3, 2018) (dismissing on loss causation grounds where
27  purported corrective disclosure was a blog post based on publicly available information).

28  [8] The Hindenburg authors' references to information obtained from a fuel cell technician and
industry expert do not change the analysis.  Neither Hindenburg nor Plaintiffs claim that this
information was unavailable to the investing public or known only to Bloom insiders.  ¶185.

23