UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISSA M. ROBERTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BLOOM ENERGY CORPORATION, et al., <br><br> Defendants. | Case No. 19-cv-02935-HSG <br><br> **ORDER DENYING MOTION TO LIMIT SCOPE OF CONFIDENTIALITY AGREEMENT AND GRANTING MOTIONS TO SEAL** <br><br> REDACTED VERSION <br><br> Re: Dkt. Nos. 44, 80, 87 |

Pending before the Court is Lead Plaintiff James Everett Hunt's motion to limit the scope of a confidentiality agreement between third-party witness Dwight Badger and Defendant[1] Bloom Energy Corporation. *See* Dkt. No. 44. Plaintiff seeks to interview Mr. Badger about Defendant Bloom Energy's finances and operations, but Mr. Badger and Defendant entered into a 2014 Settlement Agreement that includes a confidentiality provision. *See id.* The Court held a hearing on February 13, 2020. *See* Dkt. No. 108. For the reasons detailed below, the Court **DENIES** the motion.

I.  BACKGROUND

   A.  Procedural History

Plaintiff Elissa M. Roberts initially filed this securities class action on behalf of all persons who purchased or otherwise acquired Bloom Energy Corporation common stock during

---

[1] This action is filed against Defendant Bloom Energy as well as various of its officers and directors and the underwriters to Bloom Energy's initial public offering. *See* Dkt. No. 49 at ¶¶ 7–26. For purposes of this order, however, "Defendant" refers to Bloom Energy unless otherwise specified.

Defendant's July 25, 2018 initial public stock offering (the "IPO" or "Offering"). *See* Dkt. No. 1 ("Compl.") at ¶ 1. The original complaint asserted claims under Sections 11 and 15 of the Securities Act of 1933 against Defendant and certain of its officers and directors. *Id.* at ¶ 2. On September 3, 2019, the Court[2] appointed James Everett Hunt as the lead plaintiff in this action. *See* Dkt. No. 39.

As part of the motion granting the appointment, the Court granted Lead Plaintiff Hunt leave to file an amended complaint. *See id.* In preparation for filing the amended complaint, Lead Plaintiff continued to investigate Defendant's operations, including interviewing former employees. *See* Dkt. No. 44 at 1. As relevant to this motion, Lead Plaintiff also interviewed Mr. Badger, the co-founder of Advanced Equities, a now-defunct brokerage firm that raised over $200 million for Defendant several years before the company's initial public offering in July 2018. *See* Dkt. No. 46 ("Badger Decl.") at ¶ 2. Mr. Badger claims that his involvement with Defendant has made him familiar with and knowledgeable about the company's operations and finances. *See id.* In 2012, the Securities and Exchange Commission ("SEC") sanctioned Mr. Badger for disseminating false information about Defendant to investors. Dkt. No. 44 at 2. Although the SEC did not sanction Defendant for this same conduct, Mr. Badger threatened to sue Defendant as a result of this SEC investigation. *Id.* at 3. The parties thereafter entered into a private settlement agreement in 2014 (hereinafter the "2014 Settlement Agreement"). *Id.* Defendant's SEC filings show that the company recorded a $16.7 million charge in connection with Mr. Badger's settlement. *Id.*

Lead Plaintiff in this case believes that Mr. Badger possesses relevant information that "would be materially beneficial for the purposes of establishing liability." *See* Dkt. No. 44 at 3; Badger Decl. at ¶ 4. However, Lead Plaintiff states that Mr. Badger is unable to assist Lead Plaintiff without risking legal repercussions from Defendant based on the 2014 Settlement Agreement. *See* Dkt. No. 44 at 3. Lead Plaintiff believes that this confidentiality provision should not prevent Mr. Badger from discussing Defendant, including assisting Lead Plaintiff in this

---

[2] On December 13, 2019, the matter was reassigned from the Honorable Judge Orrick to this Court. *See* Dkt. No. 100.

2

lawsuit. *See id.* at 4; Badger Decl. at ¶¶ 5–6.

**B.     The 2014 Settlement Agreement**

Although Mr. Badger is willing to speak with Lead Plaintiff for purposes of this lawsuit, he claims that he has been previously threatened by Defendant's counsel that "any discussion or disclosure about the company would result in legal action for violating certain confidentiality provisions [of the 2014 Settlement Agreement]." Badger Decl. at ¶ 5. He argues that these threats were made "notwithstanding the fact that I do not have, and have never had, any intention of disclosing non-public information, trade secrets or proprietary information about Bloom Energy." *Id.* The confidentiality provision of the 2014 Settlement Agreement states:

> 8(c). Plaintiffs further agree that, from the execution of this Agreement, plaintiffs and the Releasing Persons shall not discuss or make any written or oral statements concerning the Company or any other Released Parties without obtaining prior consent from the Company or such Released Parties, as applicable. Notwithstanding the foregoing, Badger and Daubenspeck may make statements about the Company without receiving prior consent from Bloom only under the following circumstances:
>
> i.     Badger and Daubenspeck may mention the Company as is reasonably necessary as part of a formal employment application process . . . In such circumstances, Badger and Daubenspeck shall not make any written or oral statements concerning the Company other than the following: "Advanced Equities, [Badger or Daubenspeck's] former employer, served as a Placement Agent for Bloom Energy Corporation's issuance of Series D, E, and F stock. Advanced Equities raised approximately $200 million as Placement Agent. Advanced Equities' engagement with Bloom is covered by a confidentiality agreement, and I cannot say anything further about the engagement."

*See* Dkt. No. 45 ("Apton Decl.") at ¶ 2.

[Lines 23–28 redacted]

1  ████████████████████████████████████████████████████████████████████████

2  **C.      Pending Proceedings**

3        **i.      Arbitration Proceedings**

4  On July 20, 2018, less than a week prior to Defendant's IPO, Defendant disclosed that it

5  had received a "Statement of Claim" from Mr. Badger and his partner at Advanced Equities, Keith

6  Daubenspeck, seeking to compel arbitration for breaching the terms of the 2014 Settlement

7  Agreement. *See* Badger Decl. at ¶ 3. Defendant's counsel explains that the arbitration

8  proceedings were initiated by Mr. Badger ████████████████████████████████

9-21  ████████████████████████████████████████████████████████████████

22  Lead Plaintiff appears to dispute the nature of the arbitration and the relevant issues,

23  arguing that "[t]here is little (if any) overlap between the claims in arbitration and those before this

24  Court," pointing out that Defendant's description of the arbitration claims in its most recent

25  quarterly report to the SEC "does not mention anything about Mr. Badger attempting to invalidate

26  the confidentiality provisions in the 2014 settlement agreement." *See* Dkt. No. 91; *see also* Dkt.

27  No. 92 ("Suppl. Apton Decl."), Ex. A at 42 ("On June 15, 2019, a Second Amended Statement of

28  Claim was filed against us alleging securities fraud, fraudulent inducement, a breach of the

4

Confidential Agreement, and violation of the California unfair competition law.").

### ii. Illinois Action

On June 26, 2019, Mr. Badger and Mr. Daubenspeck commenced an action against three of Defendant's current or former executives in United States District Court for the Northern District of Illinois, Case No. 1:19-cv-04305 (the "Illinois Action"). Defense counsel Ms. Valenzuela Santamaria also represents Bloom Energy in that proceeding. However, the complaint in that action was filed under seal. *See* Valenzuela Santamaria Decl. at ¶ 12. At least according to defense counsel, however, the claims overlap considerably with those in this case as "Mr. Badger and Mr. Daubenspeck seek rescission of the 2014 Agreement." *See id.*

## II. MOTION TO LIMIT SCOPE OF CONFIDENTIALITY AGREEMENT

During the hearing on the motion, the Court asked Lead Plaintiff what authority this Court has to evaluate and potentially re-write the terms of the 2014 Settlement Agreement, which involves individuals who are not parties to this litigation ▮

▮

▮

▮

▮

In response, Counsel did not identify the grounds for the Court's authority to grant the requested relief.[3] And the Court has found none. ▮

▮

▮ To the extent Lead Plaintiff subpoenas Mr. Badger as part of this action once the pleadings are finalized, and should Mr. Badger seek to quash the subpoena based on the 2014 Settlement Agreement, the Court may have to consider the scope of the agreement at that time. In

---

[3] To the extent Lead Plaintiff cites to the non-binding order in *In re JDS Uniphase Corp. Securities Litigation*, 238 F. Supp. 2d 1127 (N.D. Cal. 2002), the Court is not persuaded by its reasoning as it does not address the threshold question of what authority the Court has to limit the scope of a third-party confidentiality agreement, ▮

5

1   the interim, if Mr. Badger believes he can provide information to Lead Plaintiff, consistent with
2   his obligations under the 2014 Settlement Agreement, he is free to do so at any time.  *See* Badger
3   Decl. at ¶ 5.
4         During the hearing, Counsel emphasized public policy concerns, urging that Defendant
5   should not be permitted to essentially gag witnesses who may have relevant information about its
6   allegedly fraudulent conduct.  Yet this theory proves too much.  In any private action arising under
7   15 U.S.C. §§ 78a *et seq.*, the PSLRA mandates that the Court stay discovery during the pendency
8   of any motion to dismiss, unless it is found pursuant to a party's motion that particularized
9   discovery is necessary to preserve evidence or prevent undue prejudice to that party.  15 U.S.C.
10  § 78u-4(b)(3)(B).  The Ninth Circuit has interpreted the automatic stay on all discovery under the
11  PSLRA as applying from the filing of the case until such time that "the court has sustained the
12  legal sufficiency of the complaint."  *See SG Cowen Sec. Corp. v. U.S. Dist. Court for NDCA*, 189
13  F.3d 909, 911 (9th Cir. 1999).  Here, briefing on Defendants' motions to dismiss has just been
14  completed, and the Court took the motions under submission on October 13, 2020.  *See* Dkt. No.
15  147.  Lead Plaintiff does not adequately explain why the Court must intervene to facilitate factual
16  investigation before the motions to dismiss have been resolved.

### III.  MOTIONS TO FILE UNDER SEAL

Defendant filed administrative motions to file under seal  portions of its opposition and supporting declarations in support of its opposition to the motion to limit the scope of the confidentiality agreement.  *See* Dkt. Nos. 80, 87.  The Court **GRANTS** the motions for the reasons detailed below.

#### A.  Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'"  *Id.* (quoting *Kamakana*, 447 F.3d at 1178).  "[A] strong presumption in favor of access is the starting point."  *Kamakana*, 447 F.3d at 1178 (quotations omitted).  To overcome this

strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal must "establish[] that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law . . . The request must be narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b).

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only tangentially related, to the underlying cause of action." *See Kamakana*, 447 F.3d at 1179–80 (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

//

### B. Discussion

Because Defendant seeks seal portions of documents which pertain to the motion to limit the scope of the confidentiality agreement, the Court applies the lower good cause standard. *See* Dkt. Nos. 80, 87. Defendant seeks to seal portions of its opposition brief; the declaration of Jessica Valenzuela Santamaria; and the supplemental declaration of Jessica Valenzuela Santamaria filed in support of its opposition. *See id.* Defendant explains that the documents contain information that Defendant is obligated to keep confidential under the terms of the 2014 Settlement Agreement. *See* Dkt. No. 80-2 ("Soderberg Decl.") at ¶¶ 4–6; Dkt. No. 87-2 at ¶¶ 4–6. More specifically, this information includes specific terms of the settlement agreement itself and information related to an arbitration proceeding that arose from the 2014 Settlement Agreement. *Id.* In short, the documents pertain to a third-party agreement not at issue in this case. But if released publicly, Defendant could be exposed to potential liability for breach of contract. *See id.* Accordingly, because the documents divulge confidential information unrelated to the public's understanding of the judicial proceedings in this action, the Court finds that there is good cause to file the selected portions of these documents under seal.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion to limit the scope of the confidentiality agreement. The Court further **GRANTS** the administrative motions to file under seal. Pursuant to Civil Local Rule 79-5(f)(1), documents filed under seal as to which the administrative motions are granted will remain under seal.

**IT IS SO ORDERED.**

Dated: 10/21/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge