UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) v. ) ) BLOOM ENERGY CORPORATION, et al., ) ) Defendants. ) ) ) | Case Number: 4:19-cv-02935-HSG STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

IT IS HEREBY STIPULATED AND AGREED by and between parties hereto, through their undersigned counsel, and subject to this Court's approval:

**1.    PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. The purpose of this Order is to streamline production to promote efficient electronic discovery in this action. The Parties agree to alert all other Parties concerning any technical problems associated with complying with this Protocol. To the extent a Party reasonably believes that compliance with this Protocol imposes an undue burden with respect to any protocol, source, or search term listed herein, it shall notify the other Parties, and the Parties shall promptly confer in an effort to resolve the issue

**2.    DEFINITIONS**

2.1.    "Document" or "Documents" means any writing however recorded, including handwriting, typewriting, printing, photographing, photocopying, transmitting by electronic mail

1

or facsimile and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds or symbols or combinations thereof, and any record created thereby, regardless of the manner in which the record has been stored, and also specifically includes Electronically Stored Information and Hard-Copy Documents.

2.2. "Electronically stored information" or "ESI" means any Document or Documents stored or transmitted in electronic form.

2.3. "Hard-Copy Document" means any Document existing in paper form at the time of collection.

2.4. "Hash Value" is a unique alphanumerical identifier that can be assigned to a file, a group of files or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the text contained within the file or files.

2.5. "Metadata" means data created as a function of the application software used to create the document or file. To the extent they are available and able to be captured at the time of collection, the metadata values that are to be extracted and produced in the metadata load files (.DAT file using concordance standard delimiters) are listed in "Addendum A" attached hereto.

2.6. "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

2.7. "Load Files" means electronic files provided with a production set of Documents and images used to load that production set into a Requesting Party's Document review platform.

2.8. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

2.9. "Searchable Text" means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

3. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the

Discovery of ESI.

**4.     LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI, as follows:

For Plaintiff: Adam M. Apton, Esq., Levi & Korsinsky, LLP

For Defendants: Matthew J. Dolan, Esq., Sidley Austin LLP and Robert H. O'Leary, Esq., Morgan, Lewis & Bockius LLP

Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**5.     PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

    a)   Only ESI created or received between March 30, 2017, and December 31, 2020 needs to be preserved, unless otherwise agreed in the ordinary course of discovery;

    b)   The parties will meet and confer on the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary. If the Parties fail to reach agreement, any Party may, but is not required to, bring the dispute to the Court for resolution;

    c)   The parties will meet and confer on the number of custodians per party for whom ESI will be preserved. If the Parties fail to reach agreement, any Party may,

but is not required to, bring the dispute to the Court for resolution; and

    d)    Defendants believe that the circumstances of this case do not warrant the preservation, collection, review, or production of ESI that is not reasonably accessible because they anticipate that enough relevant information can be yielded from reasonably accessible sources and, as necessary and appropriate, supplemented with deposition discovery.

    e)    The Parties agree to meet and confer regarding any disagreements. If the Parties fail to reach agreement, any Party may, but is not required to, bring the dispute to the Court for resolution.

**6.**    **SEARCH**

6.1    The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

6.2    The Producing Party may apply electronic searches in order to identify potentially responsive ESI. The Parties agree to meet and confer on a search protocol for such searches, comprising of (a) the custodians and/or sources of ESI to be searched; (b) the search terms to be applied against those custodians and/or sources; (c) the date range to be applied against those custodians and/or sources; and (d) any other search criteria or methods to be used to identify potentially responsive ESI (the "Search Protocol"). If the Parties fail to reach agreement as to the Search Protocol, either Party may, but is not required to, bring the dispute to the Court for resolution. In the absence of an agreement or court order regarding a Search Protocol, the Producing Party may apply a Search Protocol of its choosing, without prejudice to the Requesting Party's ability to seek later relief from the Court regarding the adequacy of the Search Protocol.

6.3    The fact that the Parties agree to a Search Protocol shall not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the Search Protocol in order to make final determinations as to the responsiveness of the ESI and the privilege and other

protections applicable to the ESI.

6.4     Where reasonable, including but not limited to if specific sources of potential ESI cannot be searched using the Search Protocol due to technical limitations, a Producing Party may employ means other than the Search Protocol in order to identify responsive Documents or ESI. The Parties agree to meet and confer regarding any disagreements. If the Parties fail to reach agreement, any Party may, but is not required to, bring the dispute to the Court for resolution.

**7.     PRODUCTION FORMATS**

7.1     ESI is to be produced in 300 DPI Group IV Grayscale Tagged Image File Format (.TIFF or .TIF) files.  TIFF files shall be produced in single-page format along with image load files (.OPT file and .LFP file). If TIFF files are unavailable or unable to be produced, documents may be produced in a similar graphic file format (*e.g.*, .JPG). All documents are to be provided with per document searchable text (.TXT) files, and such text files shall contain the full text extraction. In the event a document is redacted or scanned into TIFF format, the text file should contain that document's OCR text. These text files and image load files should indicate page breaks, to the extent possible. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

7.2     During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to TIFF, metadata values should be extracted and produced in a load file.

7.3     Unless otherwise stated herein, documents in families shall be produced and Bates-stamped in sequence with the Absolute Parent first in sequence, followed by any and all attachments. Absolute Parent shall be defined as the document that is the source for all other documents in a document family, regardless of whether attachments to the Absolute Parent are also parent documents with attachments. When producing responsive attachments, the parent email will be produced, regardless of responsiveness unless otherwise protected from disclosure.

7.4     The parties may deduplicate document families found to be MD5 Hash duplicates across or within custodians. If deduplication is done across custodians, then that party shall

include all custodians of a record (including custodians of deduplicated records) in the Custodian field delimited by semicolons. Moreover, (a) de-duplication shall be performed only at the document family level so that attachments are not de-duplicated against identical stand-alone versions of such documents and vice versa, although each family member shall be hashed separately for purposes of populating the MD5 Hash field; (b) attachments to emails, instant messages, or other documents shall not be disassociated from the parent email, instant Messages, or document even if they are exact duplicates of another Document in the production, except that non-substantive embedded objects such as email footers, logos, etc. need not be produced. A party electing to deduplicate exact duplicates across custodians shall take reasonable steps to ensure that at least one copy of a responsive exact duplicate that is located in the files of one or more custodians agreed to by the parties (or ordered by the Court) is produced.

7.5     Any Party may request the production of ESI in native format where the production in native format is reasonably necessary to the ESI's comprehension or use. For ESI produced in native format, a Bates-stamped placeholder TIFF bearing the legend "This Document has been produced in Native Format" shall also be produced in the same manner as other TIFFs.

7.6     Documents shall be exchanged on DVD-ROMs, CD-ROMs, USB drives, portable hard drives or through secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission. A production by secure file transfer shall be considered complete when made available to the Receiving Party.

7.7     To maximize the security of information in transit, any media on which documents are produced shall be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with the encrypted media.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

Communications involving trial counsel that post-date May 28, 2019, the date of the filing of the original complaint in this matter, are presumed privileged and need not be logged in any privilege log.

## 9. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

DATED: _June 27, 2022_____

LEVI & KORSINSKY, LLP

By: */s/ Adam M. Apton*
Adam M Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: (415) 373-1671
aapton@zlk.com
amccall@zlk.com

Nicholas Ian Porritt (admitted *pro hac vice*)
LEVI & KORSINSKY, LLP
1101 30th Street NW Suite 115
Washington, DC 20007
Telephone: (202) 524-4290
nporritt@zlk.com

*Lead Counsel for Plaintiffs and the Class*

Reed R. Kathrein (SBN 139304)
Lucas E. Gilmore (SBN 250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Facsimile: (206) 623-0594
steve@hbsslaw.com

*Additional Counsel for Plaintiffs and the Class*

| | | |
|---|---|---|
| 1 | DATED:  June 27, 2022 | SIDLEY AUSTIN LLP |
| 2 | | By: */s/Sara B. Brody* |
| 3 | | Sara B. Brody (SBN 130222) |
| | | sbrody@sidley.com |
| 4 | | SIDLEY AUSTIN LLP |
| 5 | | 555 California Street, Suite 2000 |
| | | San Francisco, CA 94104 |
| 6 | | Telephone: 415-772-1279 |
| 7 | | Matthew J. Dolan (SBN 291150) |
| 8 | | mdolan@sidley.com |
| | | SIDLEY AUSTIN LLP |
| 9 | | 1001 Page Mill Road, Building 1 |
| | | Palo Alto, CA 94304 |
| 10 | | Telephone: 650-565-7106 |
| 11 | | Robin Wechkin (admitted *pro hac vice*) |
| 12 | | rwechkin@sidley.com |
| | | SIDLEY AUSTIN LLP |
| 13 | | 8426 316th Place Southeast |
| | | Issaquah, SA 98027 |
| 14 | | Telephone: 415-439-1799 |
| 15 | | *Attorneys for Bloom and the Individual Defendants* |

DATED:        June 27, 2022                MORGAN, LEWIS & BOCKIUS  LLP

By: */s/ Charlene S. Shimada*
Charlene S. Shimada (SBN 91407)
charlene.shimada@morganlewis.com
Kevin M. Papay (SBN 274161)
kevin.papay@morganlewis.com
Robert H. O'Leary (SBN 284879)
bob.oleary@morgalewis.com
One Market, Spear Street Tower
San Francisco, California 94105-1596
Telephone: +1.415.442.1001

*Attorneys for Defendants J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Credit Suisse Securities (USA) LLC, KeyBanc Capital Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, HSBC Securities (USA) Inc., Oppenheimer*

9

*& Co. Inc., Raymond James & Associates, Inc., and Robert W. Baird & Co. Incorporated*

Pursuant to Civil Local Rule No. 5-1(h)(3), all signatories concur in filing this Stipulated Order re: Discovery of Electronically Stored Information.

DATED: _June 27, 2022_____     By: */s/ Adam M. Apton*_____
                                                                           Adam M Apton (SBN 316506)

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____6/28/2022_____     _____
                                                                           Hon. Haywood S. Gilliam, Jr.
                                                                           United States District Court Judge

**ADDENDUM A**

| Field | Definition | Doc Type |
|---|---|---|
| CUSTODIAN | Name of person from where Documents/files were collected or, in the case of non-human sources, a short description of that source (*e.g.*, "Shared Drive"). | All |
| ALLCUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | Ending Bates Number (production number) | All |
| BEGATTACH | First Bates number of family range (*i.e.*, Bates number of the first page of the parent Document) | All |
| ENDATTACH | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment or, if no attachments, the Document itself) | All |
| PAGE COUNT | Number of pages in the Document | All |
| APPLICATION | Commonly associated application for the specified file type. | All |
| NATIVE FILE LINK | The file path for Documents provided in Native Format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |

| FOLDER | Folder location of the e-mail within the PST/OST | E-mail |
|---|---|---|
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date Sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATERCVD | Date Received (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| HASHVALUE | Hash value (*e.g.*, MD5 or SHA-1) | All |
| FILENAME | Original file name at the point of collection | E-Document |
| TITLE | Internal Document property | E-Document |
| AUTHOR | Creator of a Document | E-Document |
| DATE CREATED | Creation Date (mm/dd/yyyy hh:mm:ss AM) | E-Document |
| DOCUMENT TYPE | Descriptor for the type of Document | All |
| PRODVOL | Name of media that data was produced on. | All |
| CONFIDENTIALITY | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| TIMEZONE | Time zone of data used during processing of data. | All |