Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Lead Counsel for Plaintiffs and the Class*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLOOM ENERGY CORPORATION, KR SRIDHAR, RANDY FURR, L. JOHN DOERR, SCOTT SANDELL, EDDY ZERVIGON, PETER TETI, MARY K. BUSH, KELLY A. AYOTTE, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, CREDIT SUISSE SECURITIES (USA) LLC, KEYBANC CAPITAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH IN CORPORATED, ROBERT W. BAIRD & CO., INCORPORATED, COWEN AND COMPANY, LLC, HSBC SECURITIES (USA) INC., OPPENHEIMER & CO. INC., RAYMOND JAMES & ASSOCIATES, INC., and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Case No. 4:19-cv-02935-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Honorable Haywood S. Gilliam, Jr.<br>Hearing Date: October 5, 2023<br>Hearing Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor or via Zoom |

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE** that on October 5, 2023, at 2:00 p.m. PDT,  in the United States

3 District Court, Northern District of California, Oakland Courthouse, Courtroom 2, 4th floor, Oakland

4 California or via Zoom, the Honorable Haywood S. Gilliam, Jr. presiding, the Court-appointed Lead

5 Plaintiff James Everett Hunt ("Lead Plaintiff") and additional plaintiffs Juan Rodriguez, Kurt Voutaz,

6 Joel White, Andrew Austin, and Ryan Fishman (together with Lead Plaintiff, "Plaintiffs") will and

7 hereby do move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying

8 the proposed class ("Settlement Class") for purposes of effectuating the proposed settlement  of the

9 above-captioned action ("Action"); (2) granting preliminary approval of the proposed Settlement on

10 the terms set forth in the Stipulation and Agreement of Settlement dated June 30, 2023 ("Stipulation");[1]

11 (3) authorizing the retention of Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the

12 administrator for the Settlement, and Western Alliance Bank ("Western Alliance") as escrow agent;

13 (4) approving the form and manner of notice of the Settlement to the Settlement Class; and (5) setting

14 a hearing date for final approval of the Settlement ("Fairness Hearing") and a schedule for various

15 deadlines in connection with the Settlement.

16      This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the

17 supporting Memorandum that follows; the Stipulation and exhibits thereto); the Declaration of

18 Nicholas I. Porritt ("Porritt Decl.") dated June 30, 2023; the Declaration of Adam C. McCall ("McCall

19 Decl.") dated June 30, 2023;  the Declaration of Susanna Webb (of proposed claims administrator Epiq

20 Class Action and Claims Solutions, Inc.) ("Webb Decl."), dated June 30, 2023; the pleadings and

21 records on file in the Action; and all such other matters as the Court may consider in evaluating the

22 Motion.

23

24

25      _____

26 [1] The Stipulation together with the exhibits thereto (consisting of the Stipulation; the [proposed]
Preliminary Approval Order (Ex. A); the proposed form of individual notice (the "Notice") (Ex. A-1);
27 the proposed Proof of Claim form ("Claim Form") (Ex. A-2); the proposed form of summary notice
("Summary Notice") (Ex. A-3), the proposed postcard notice ("Postcard Notice") (Ex. A-4); and the
28 [proposed] final judgment ("Final Judgment") (Ex. B)) are attached to the accompanying McCall Decl.

1    Unless otherwise defined herein, capitalized terms in this Motion and supporting Memorandum

2    have the same meanings as given to them in the Stipulation.

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     SUMMARY OF THE LITIGATION.......................................................................2

III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ......................5

        A.    Ninth Circuit Law Favors and Encourages Settlements................................5

        B.    The Proposed Settlement Should Be Preliminarily Approved ...................................6

              1.    The Settlement Enjoys an Initial Presumption of
                    Reasonableness as the Product of Arm's-Length Negotiations
                    Under the Auspices of an Experienced Mediator............................................7

              2.    The Proposed Settlement's Terms Are Fair, Reasonable and
                    Adequate .........................................................9

IV.     THE PROPOSED SETTLEMENT AND RELATED SUBMISSIONS DO
        NOT VIOLATE ANY OF THE NORTHERN DISTRICT CLASS ACTION
        GUIDELINES .........................................................................14

        A.    The Scope of the Releases Is Reasonable................................................14

        B.    Plaintiffs' Counsel's anticipated attorneys' fee request is reasonable ...................15

        C.    Plaintiffs have identified all agreements made relating to the Settlement ...............17

V.      CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS
        WARRANTED..........................................................................18

VI.     THE COURT SHOULD APPROVE THE FORM, CONTENT, AND
        METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT
        CLASS..................................................................................21

VII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..............................23

VIII.   CONCLUSION ..........................................................................24

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Alaska Elec. Pension Fund v. Flowserve Corp.,*
    572 F.3d 221 (5th Cir. 2009) ....................................................................................... 12

5

6

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ...................................................................................... 6

7

*Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ....................................................................................... 19

8

9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013) ...................................................................................................... 26

10

*In re Anthem, Inc. Data Breach Litig.,*
    327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................ 6, 25

11

12

*In re Apollo Grp. Inc. Sec. Litig.,*
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ............................................................... 19

13

*In re Aqua Metals, Inc. Sec. Litig.,*
    2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ................................................................. 8

14

15

*In re Banc of Cal. Sec. Litig.,*
    Case No. 8:17-cv-00118 (C.D. Cal. Dec. 4, 2019) ...................................................... 18

16

*Bellinghausen v. Tractor Supply Co.,*
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 19, 27

17

18

*Betorina v. Randstad US, L.P.,*
    2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ............................................................... 11

19

*In re Biolase, Inc. Sec. Litig.,*
    2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ............................................................ 16

20

21

*Booth v. Strategic Realty Tr., Inc.,*
    2015 WL 3957746 (N.D. Cal. Jun. 28, 2015) .............................................................. 25

22

*Bright v. Dennis Garberg & Assocs., Inc.,*
    2011 WL 13150437 (C.D. Cal. Aug. 24, 2011) ........................................................... 9

23

24

*In re Charles Schwab Corp. Sec. Litig.,*
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ............................................................. 12

25

*Chavez v. PVH Corp.,*
    2015 WL 12915109 (N.D. Cal. Aug. 6, 2015) ............................................................ 11

26

27

*Corzine v. Whirlpool Corp.,*
    2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ............................................................. 9

28

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017) ................................................................. 25

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770  (N.D. Cal. July 22, 2019) ............................... 17, 26, 29

*Fed. Ins. Co. v. Caldera Med., Inc.*,
   2017 WL 11037391 (C.D. Cal. Jan. 31, 2017) ............................................. 6

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................................... 21

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ............................................. 24

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................... 7, 9, 21, 22

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ............................................. 19

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...................................................................... 18

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................................................... 24

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ................................................................ 25

*Kendall v. Odonate Therapeutics, Inc.*,
   2022 WL 188364 (S.D. Cal. Jan. 18, 2022) ............................................... 10

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................... 27

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................................ 26

*Luna v. Marvell Tech. Grp., Ltd.*,
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ............................................. 24

*In re Magma Design Automation Sec. Litig.*,
   2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) ............................................. 23

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ............................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................. 12, 20

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................. 15

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 12

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.,*
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ................................................. 21

*Nitsch v. DreamWorks Animation SKG Inc.,*
   2017 WL 399221 (N.D. Cal. Jan. 19, 2017) .................................................. 11

*Nucci v. Rite Aid Corp.,*
   2020 WL 3187335 (N.D. Cal. Jun. 14, 2020) ................................................ 23

*In re Nuvelo, Inc. Sec. Litig.,*
   2011 WL 2650592 (N.D. Cal. July 6, 2011) .................................................. 19

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco,*
   688 F.2d 615 (9th Cir. 1982) ............................................................................ 8

*In re Omnivision Techs.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................ 20

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ......................................................................... 6, 20

*In re Portal Software, Inc. Sec. Litig.,*
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ...................................... 9, 15, 28

*Quiruz v. Specialty Commodities, Inc.,*
   2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) .................................................. 8

*Rael v. Children's Place, Inc.,*
   2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ..................................................... 6

*Ramirez v. Ghilotti Bros, Inc.,*
   2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ................................................. 9

*In re RH, Inc. Sec. Litig.,*
   2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ............................................... 17

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 6, 8

*In re Skilled Healthcare Grp., Inc. Sec. Litig.,*
   2011 WL 280991 (C.D. Cal. Jan. 26, 2011) ................................................... 7

*In re: Sandisk LLC Sec. Litig.,*
   Case No. 3:15-cv-01455-VC (N.D. Cal. May 24, 2019) ................................ 18

*Sheikh v. Tesla, Inc.,*
   2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ................................................. 9

*Stromberg v. Qualcomm Inc.,*
   14 F. 4th 1059 (9th Cir. 2021) ...................................................................... 26

*Syed v. M-I, L.L.C.*,
   2017 WL 3190341 (E.D. Cal. July 27, 2017) ........................................................... 19

*Szymborski v. Ormat Techs., Inc.*,
   2012 WL 4960098 (D. Nev. Oct. 16, 2012) ........................................................... 19

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ........................................................ 10

*Todd v. STAAR Surgical Co.*,
   2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ............................................................. 25

*Torres v. Pick-A-Part Auto Wrecking*,
   2018 WL 3570238 (E.D. Cal. July 23, 2018) ......................................................... 19

*In re UTStarcom, Inc. Sec. Litig.*,
   2010 WL 1945737 (N.D. Cal. May 12, 2010) ........................................................ 26

*Vataj v. Johnson*,
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ........................................................ 23

*In re Vaxart, Inc. Sec. Litig.*,
   Case No. 3:20-cv-05949-VC (N.D. Cal. Jan. 25, 2023) .................................... 16, 23

*In re Viropharma Inc. Sec. Litig.*,
   2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ............................................................ 11

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........................................................ 17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ............................................................................................... 23

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013) ................................................................................. 23

*Wong v. Arlo Techs., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ........................................................ 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ............................................................ 8

*In re Yahoo! Inc. Sec. Litig.*,
   Case No. 5:17-cv-00373 (N.D. Cal. May 9, 2018) ................................................ 19

**Statutes**
15 U.S.C. § 77k(e) ......................................................................................................... 12

28 U.S.C. § 1715 ........................................................................................................... 23

**Other Authorities**
*N.D. Cal. Proc. Guid. for Class Action Settlements* ............................................... passim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rules**
Fed. R. Civ. P. 23 ................................................................................................................ passim

1

## STATEMENT OF ISSUES TO BE DECIDED

2  1. Whether the Court will likely be able to approve the $3,000,000.00 (three million

3 dollars) partial proposed Settlement under Rule 23(e)(2) so that notice of the Settlement's terms and

4 conditions should be issued to members of the Settlement Class ("Settlement Class Members").

5  2. Whether the Court will likely be able to certify the Settlement Class for purposes of

6 effectuating the Settlement.

7  3. Whether the proposed form and content of the Notice, Summary Notice, Postcard

8 Notice, and Claim Form, and the proposed plan for disseminating notice to Settlement Class Members

9 (the "Notice Plan"), as detailed in the accompanying Webb Declaration and the Preliminary Approval

10 Order, should be approved.

11  4. Whether the Court should (a) schedule a Fairness Hearing in connection with the

12 proposed Settlement, the proposed Plan of Allocation, and Plaintiffs' Counsel's Fee and Expense

13 Application, and (b) set deadlines for submissions of various papers and filings in connection

14 therewith.

15  5. Whether the Court should approve Plaintiffs' Counsel's selection of Epiq to serve as

16 claims administrator, and its selection of Western Alliance to serve as escrow agent, in this matter.

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    PRELIMINARY STATEMENT

2

The proposed Settlement, if approved by the Court, will resolve all claims asserted against

3 Bloom Energy Corporation ("Bloom"), KR Sridhar, Randy Furr, L. John Doerr, Scott Sandell, Eddy

4 Zervigon, Peter Teti, Mary K. Bush, Kelly A. Ayotte, J.P. Morgan Securities LLC, Morgan Stanley &

5 Co. LLC, Credit Suisse Securities (USA) LLC, KeyBanc Capital Markets Inc., Merrill Lynch, Pierce,

6 Fenner & Smith Incorporated, Cowen and Company, LLC, HSBC Securities (USA) Inc., Oppenheimer

7 & Co. Inc., Raymond James & Associates, Inc., and Robert W. Baird & Co. Incorporated (collectively,

8 the "Settling Defendants"), in exchange for a cash payment of $3,000,000 for the benefit of the

9 Settlement Class.[2]   The Settlement was achieved after highly contested litigation, which included

10 preparing two amended complaints alleging both Securities Act and Exchange Act claims; briefing on

11 Defendants' motion to strike portions of the operative Second Amended Complaint; briefing on three

12 motions to dismiss, filed by the Section 10(b) Defendants, the Section 11 Defendants, and

13 PricewaterhouseCoopers LLP ("PwC"); briefing on Plaintiffs' Rule 54(b) motion to direct entry of

14 judgment as to PwC; fact discovery—including the production and review of over 13,200 targeted

15 documents totaling 171,500 pages; the deposition of Lead Plaintiff; numerous conferences to meet and

16 confer on discovery issues; briefing on Plaintiffs' motion for interlocutory appeal of the Court's

17 September 2021 order largely granting Defendants' motions to dismiss; briefing—and oral argument

18 on Plaintiffs' motion for class certification; two rounds of mediation briefs; and a hard-fought, full-

19 day virtual mediation session on December 20, 2022, with experienced Phillips ADR mediator

20 Michelle Yoshida, followed by several rounds of post-mediation discussion.  Ms. Yoshida ultimately

21 made a "mediator's recommendation," which the parties accepted, after which they further negotiated

22 a term sheet and settlement documents.   Porritt Decl. at ¶20.

23

The proposed Settlement, if approved, will result in a meaningful recovery for the Settlement

24 Class, while also preserving Plaintiffs' and the Class's ability to pursue, on appeal, accounting-based

25 Section 11 claims against PwC for its role as Bloom's auditor. Porritt Decl. at ¶6.  For all of the other

26

27

_____

[2] All capitalized terms have the same meaning as those set forth in the Stipulation of Settlement.

28 *See* McCall Decl. Ex. 1.

1    reasons set forth herein, Plaintiffs respectfully submit that the proposed Settlement readily merits

2    preliminary approval. *See* Porritt Decl. at ¶¶ 4-6.

3         Additionally, at the Fairness Hearing, the Court will have before it additional submissions in

4    support of the Settlement, and will be asked to make a final determination of whether, under Rule

5    23€(2), the Settlement is fair, reasonable, and adequate.  By this Motion, Plaintiffs request only that

6    the Court enter the [proposed] Preliminary Approval Order (McCall Decl., Ex. A), which will among

7    other things: (i) preliminarily approve the terms of the proposed Settlement as set forth in the

8    Stipulation; (ii) provisionally certify the Settlement Class for settlement purposes; (iii) appoint

9    Plaintiffs as class representatives and Plaintiffs' Counsel, Levi & Korsinsky LLP, as class counsel for

10   the Settlement Class; (iv) approve the selection of Epiq as claims administrator and Western Alliance

11   as escrow agent; (v) approve the form and content of the Notice, Claim Form, Summary Notice, and

12   Postcard Notice (*see* McCall Decl. at Exhibits A-1, A-2, A-3, and A-4), and approve the Settling

13   Parties' proposed Notice Plan for disseminating notice via mail, print and internet publication, and a

14   dedicated settlement website; (vi) set a time and date for the Fairness Hearing; (vii) approve a schedule

15   for (a) disseminating the Notice; (b) submitting "opt-out" requests or objections to the Settlement, the

16   Plan of Allocation and/or the Fee and Expense Application; (c) submitting completed Claim Forms;

17   (d) filing papers on final approval (including the Fee and Expense Application) and related matters;

18   and (e) approving the filing of the Corrected Second Amended Complaint.

19                                **II.    SUMMARY OF THE LITIGATION**

20        On May 28, 2019, the initial complaint in this Action was filed, captioned *Roberts v. Bloom*

21   *Energy Corp., at el.*, Case No. 4:19-cv-02935 (N.D. Cal.), alleging federal securities law violations

22   against Bloom and its current or former officers and directors. ECF No. 1; Porritt Decl. at ¶ 7.

23        On September 3, 2019, the Court appointed James Everett Hunt as lead plaintiff and approved

24   Levi as lead counsel. ECF No. 39; Porritt Decl. at ¶ 9.  Hunt and additional plaintiff Juan Rodriguez

25   thereafter filed an amended complaint on November 4, 2019, which named as additional defendants

26   the Underwriter Defendants. ECF No. 49; Porritt Decl. at ¶ 9.

27

28

1          In preparation for filing an amended complaint, Lead Plaintiff continued to investigate Bloom's

2    operations, including interviewing Dwight Badger, the co-founder of Advanced Equities, a now-

3    defunct brokerage firm that raised over $200 million for Bloom several years before the company's

4    initial public offering in July 2018. Porritt Decl. at ¶ 10.  Lead Plaintiff believed that Mr. Badger

5    possessed relevant information that "would be materially beneficial for the purposes of establishing

6    liability."  *Id.*  However, Mr. Badger believed he was unable to assist Lead Plaintiff due to the

7    confidentiality provision in a 2014 settlement he entered into with Bloom.  *Id.*  Accordingly, on

8    November 1, 2019, Lead Plaintiff moved for an order modifying the confidentiality provision in the

9    2014 settlement agreement between Bloom and Mr. Badger. Porritt Decl. at ¶ 11.  Defendants opposed,

10   arguing that the motion would violate the PSLRA's discovery stay and the agreement as not so overly

11   broad as warranting modification. *Id.*  The Court denied the motion, finding that the PSLRA's

12   discovery stay barred the application and decided that it would not address the scope of the agreement

13   until the pleadings were finalized. *Id.*

14          On April 21, 2020, Lead Plaintiff Hunt and additional plaintiffs Juan Rodriguez, Kurt Voutaz,

15   Scott Kline, Joel White, Andrew Austin, and Ryan Fishman (collectively, "Plaintiffs") filed the Second

16   Amended Complaint, which added PwC as a defendant. ECF No. 113; Porritt Decl. at ¶ 12.  Hagens

17   Berman Sobol Shapiro LLP was added as counsel. *Id.*  The Second Amended Complaint asserts claims

18   under Section 11 of the Securities Act of 1933 against all defendants and under Section 15 of the

19   Securities Act of 1933 against Bloom's directors and officers and claims under Sections 10(b) and

20   20(a) of the Securities Exchange Act of 1934 against Bloom, its current CEO and its former CFO.

21   Porritt Decl. at ¶ 12.

22          Specifically, the Second Amended Complaint alleges that in its IPO Registration Statement,

23   Bloom i) improperly accounted for loss contingencies relating to its Energy Servers; ii) improperly

24   accounted for revenue; iii) failed to review weaknesses in its internal controls; iv) misrepresented the

25   life cycle of its fuel cells; v) misled investors as to construction delays affecting its business; and vi)

26   misrepresented the efficiency and pollution output of its Energy Servers. ECF No. 113, ¶3; Porritt

27   Decl. at ¶ 12.  Plaintiffs further alleged that PwC, as Bloom's Auditor is strictly liable under Section

28

1   11 for alleged misrepresentations in the historical financial statements in the Registration Statement.

2   *Id*. ¶¶115-117; Porritt Decl. at ¶ 12.

3       On July 1, 2020, Defendants filed three motions to dismiss. *See* ECF Nos. 127-32; Porritt Decl.

4   at ¶13. On September 29, 2021, the Court largely granted the motions. ECF No. 157; Porritt Decl. at

5   ¶14. Specifically, the Court (1) dismissed the Section 10(b) claims in their entirety, (2) dismissed the

6   Section 11 claim against PwC in its entirety, and (3) dismissed the Section 11 claims against all

7   remaining Defendants as to all but two challenged statements. The sole surviving statements are (a) a

8   risk disclosure concerning construction delays, and (b) a statement that Bloom's latest-generation

9   Energy Servers were capable of beginning-of-life efficiency of 65%. *Id.*

10      Plaintiffs twice sought an immediate appeal, first moving for entry of judgment under Rule

11  54(b) and then moving for interlocutory appeal under U.S.C. § 1292(b). The Court denied both

12  motions. ECF Nos. 167, 188.

13      Plaintiffs accordingly litigated the narrowed case that remained. Plaintiffs served written

14  discovery on Defendants and 49 non-party subpoenas on Bloom's customers. Porritt Decl. at ¶ 17. The

15  parties agreed to targeted discovery in order to assess the strengths and weaknesses of the remaining

16  claims in connection with a possible mediation. *Id*. Plaintiffs received and reviewed over 13,200

17  documents totaling 171,500 pages. Porritt Decl. at ¶4.

18      Between March and June 2022, the parties conducted depositions and briefed class

19  certification, and the Court heard argument on June 30, 2022. ECF No. 201; Porritt Decl. at ¶ 18. (The

20  Court has not ruled on the motion, which has been terminated as moot subject to final approval of the

21  Settlement on March 16, 2023. ECF No. 226; Porritt Decl. at ¶18). In conjunction with Plaintiffs'

22  discovery efforts, the Settling Parties began discussing mediation in August 2022, and ultimately

23  agreed to mediate with Phillips ADR mediator Michelle Yoshida. Porritt Decl. at ¶19. The parties

24  exchanged two rounds of mediation briefs supported by evidence obtained in discovery. On December

25  20, 2022, the Settling Parties attended a full-day virtual mediation. *Id*. The Settling Parties did not

26  reach a settlement during the mediation but continued to engage in post-mediation discussions with

27  Ms. Yoshida. On January 4, 2023, Ms. Yoshida made a mediator's proposal, which the Settling Parties

28

1    accepted. Porritt Decl. at ¶20.  On January 10, 2023, the Court stayed all discovery and case deadlines

2    in light of the pending Settlement. ECF No. 216; Porritt Decl. at ¶ 24.

3        The Settling Parties subsequently negotiated a term sheet and stipulation of settlement.  Porritt

4    Decl. at ¶25.

5        Separately, between March 20, 2019, and May 7, 2019, three putative class actions based on

6    alleged misstatements and omissions in Bloom's July 24, 2018 IPO Registration Statement were filed

7    in the Superior Court of California, County of Santa Clara, and subsequently consolidated under the

8    name *In re Bloom Energy Securities Litigation*, Lead Case No. 19-cv-344894.  On December 17, 2019,

9    in light of the pendency of this Action, Santa Clara County Superior Court Judge Brian C. Walsh

10   granted a motion to stay the consolidated state court action, which stay is still in effect. Porritt Decl.

11   at ¶ 8. The State Court Action alleges that defendants made materially false or misleading statements

12   relating solely to construction delays in Bloom's Registration Statement.  State Court Action, ¶¶5-9.

13   Accordingly, the allegations asserted in the State Court Action were also asserted in this Action

14       **III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL**

15   **A.    Ninth Circuit Law Favors and Encourages Settlements**

16       The Ninth Circuit has a "judicial policy favoring compromise and settlement of class action

17   suits[.]" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 317 (N.D. Cal. 2018) (citing *In re*

18   *Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).  This "strong" policy is particularly

19   applicable "where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223

20   (9th Cir. 2015); *Rael v. Children's Place, Inc.*, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020)

21   (citing "overriding public interest" in settling class actions").  The Ninth Circuit has also stated that

22   the Court's role in evaluating the proposed settlement:

> must be limited to the extent necessary to reach a reasoned judgment that the agreement
> is not the product of fraud or overreaching by, or collusion between, the negotiating
> parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all
> concerned.

26   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Fed. Ins. Co. v. Caldera Med.,*

27   *Inc.*, 2017 WL 11037391, at *3 (C.D. Cal. Jan. 31, 2017); *see also In re Pac. Enters. Sec. Litig.*, 47

28

1    F.3d 373, 378 (9th Cir. 1995) (where parties have been represented by competent counsel, this factor

2    justifies judicial policy favoring approval of settlements).

### B.    The Proposed Settlement Should Be Preliminarily Approved

4        Judicial approval of a class action settlement involves two steps.  First, the court preliminarily

5    reviews the proposed settlement to determine if it merits issuing notice of its terms to the class.  Second,

6    after notice has been issued, the court decides whether to grant final approval. *See* Rule 23(e)(1) & (2);

7    *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7-8 (N.D. Cal. Sept. 4, 2018).

8        By this Motion, Plaintiffs request that the Court grant preliminary approval so that notice can

9    be issued to the Settlement Class.  The applicable standard is whether the Court finds that it "will likely

10   be able" to approve the Settlement as "fair, reasonable, and adequate" after a final Fairness Hearing.

11   Rule 23(e)(1)(B).  In considering whether final approval is likely, the 2018 Amendments to Rule 23(e)

12   instruct courts to consider whether:

13       (A) the class representatives and class counsel have adequately represented the class;
         (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is
14       adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the
         effectiveness of any proposed method of distributing relief to the class, including the
15       method of processing class-member claims; (iii) the terms of any proposed award of
         attorney's fees, including timing of payment; and (iv) any agreement required to be
16       identified under Rule 23(e)(3); and (D) the proposal treats class members equitably
         relative to each other.
17

18   Fed. R. Civ. P. 23(e)(2). Similarly, the Ninth Circuit has identified seven factors (the "*Boeing* factors")

19   to consider in evaluating the fairness of a class action settlement, including: (1) the strength of

20   plaintiffs' case; (2) the risk, expense, complexity, and [likely] duration of further litigation; (3) the risk

21   of maintaining class [action status throughout the trial]; (4) the amount of the settlement;

22   (5) investigation and discovery [completed]; (6) the experience and views of counsel; and (7) the

23   reaction of class members.  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *see also Rodriguez*

24   *v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009)(citing factors to consider for Settlement); *In*

25   *re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2022 WL 612804, at *4 (N.D. Cal. Mar. 2,

26   2022).  "The relative degree of importance to be attached to any particular factor will depend upon …

27   the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

28

presented by each individual case." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).[3]   As set forth below, each of these criteria supports final approval.

**1.    The Settlement Enjoys an Initial Presumption of Reasonableness as the Product of Arm's-Length Negotiations Under the Auspices of an Experienced Mediator**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement."   Advisory Committee Notes to 2018 Rule 23(e)(2) amendments. The Settlement here embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

*First*, courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight.   *See Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) ("that experienced counsel involved … approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *5 (N.D. Cal. Dec. 31, 2019) (citing "presumption of correctness" that attaches to class settlements "reached in arm's-length negotiations between experienced capable counsel after meaningful discovery"); *Ramirez v. Ghilotti Bros, Inc.*, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014) ("When class counsel is experienced and supports the settlement, and the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement"); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007) (same).

Here, the Settling Parties have litigated the case since 2019, and fully understood the legal strengths and weaknesses of the case.  Plaintiffs' Counsel conducted a pre-filing investigation, and after the pleadings were settled, obtained meaningful document discovery.  Plaintiffs also had the benefit of the exchange of pre-mediation briefs and their consulting expert's views on Defendants' causation defenses and damages.  Plaintiffs and their counsel had adequate time to "reasonably

---

[3]There appears to be no substantive difference between the two articulations of the class action approval standard in Rule 23.  *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019).

evaluate their respective positions," *Bright v. Dennis Garber & Assocs., Inc.*, 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (granting preliminarily approval), even if formal discovery was not complete. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *10 (granting preliminary approval where parties were "at the outset of formal discovery"); *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) (approving settlement where "[l]ittle formal discovery had been completed at the time of settlement" but Plaintiffs' counsel had conducted pre-suit investigation, filed two amended pleadings, and obtained informal discovery).

*Second*, Plaintiffs' Counsel engaged in a rigorous, arms'-length negotiation process with Defendants' Counsel under the auspices of Ms. Yoshida, whose experience courts have often noted. *See* Porritt Decl. at ¶33; *see Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (noting that mediation before Michelle Yoshida , Esq., of Phillips ADR Enterprise resulted in "serious, informed, and non-collusive negotiations"); *Todd v. STAAR Surgical Co.*, No. CV145263MWFGJSX, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (citing Ms. Yoshida as an "experienced mediator").  Through her experience and perspective, Ms. Yoshida provided Plaintiffs' Counsel with frank assessments and valuable insights into the strength and weakness of their remaining case and the likelihood of success at trial and on appeal. *See* Porritt Decl. at ¶ 34.

Moreover, because even those efforts were insufficient to result in any agreement, it was only after several weeks of additional negotiations under the mediator's auspices that matters progressed to the point where Ms. Yoshida, on January 4, 2023, decided to make a mediator's recommendation for settlement. *See* Porritt Decl. at ¶ 20. And even after the Settling Parties had accepted the mediator's recommendation in principle, the Settling Parties still required months to reach further clarity on certain matters (related primarily to the scope of the releases, the class definition, and carving out claims against PwC) before agreeing on a written settlement term sheet that documented the material terms of the Settlement on February 17, 2023.  It was ultimately not until after another four months of drafting and negotiations that the Settling Parties were finally able to finish negotiating and sign the Stipulation of Settlement and related exhibits thereto. Porritt Decl. at ¶ 26.   The key role played by the experienced mediator in both supervising the negotiations and formulating the "ice-breaking"

mediator's recommendation on which the resulting settlement is based, all *strongly* support preliminary approval here.  *See, e.g., Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *7 (N.D. Cal. Apr. 6, 2017) ("assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive") *Chavez v. PVH Corp.*, 2015 WL 12915109, at *2 (N.D. Cal. Aug. 6, 2015) (same); *see also In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (participation of an independent mediator "virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties").

Finally, throughout the Action and settlement negotiations, Settling Defendants were zealously represented by experienced counsel at Sidley Austin LLP and Morgan, Lewis & Bockius LLP.  Such representation dispels any suggestion that a settlement process was infected with collusion or was otherwise procedurally defective.  *See Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 399221, at *2 (N.D. Cal. Jan. 19, 2017) (granting approval where there was arm's length negotiations among experienced counsel "on both sides").

Based on a well-informed understanding of the strengths and weaknesses of the Settlement Class's claims, Plaintiffs' Counsel believes that the Settlement is in the best interests of the Settlement Class and avoids the substantial risk that the Settlement Class could recover less than the Settlement Amount, or nothing, if the Action were to continue.

### 2.    The Proposed Settlement's Terms Are Fair, Reasonable and Adequate

The mediator recommended a settlement payment of $3 million in consideration for appropriately tailored releases of the Settling Defendants.  PwC is not included in the release, and Plaintiffs' claims against PwC are expressly reserved.  Porritt Decl. at ¶ 6.

The proposed Settlement readily meets the applicable requirements.

### a.    The Settlement provides an immediate and meaningful recovery relief, especially in light of the costs, risks, and delay of further litigation

In assessing whether the Settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation, the benefits afforded to the Class, and the immediacy and certainty of the proposed recovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  Thus,

> The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, [i]t has been held proper to take the bird in hand instead of a prospective flock in the bush.

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, the proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $3,000,000. By contrast, if Plaintiffs had instead chosen to pursue the claims to be released under the proposed Settlement, they would have faced a significant risk of recovering significantly less than $3 million and could well have recovered nothing at all.

As a general matter, it is well established that securities class actions are notoriously difficult, complex, and uncertain. *See, e.g., In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011) ("prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery … risks included proving loss causation and the falsity of the representations at issue."); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).

This case was no exception. After the Court's September 2021 ruling on Defendants' motion to dismiss, this case was reduced to only the '33 Act claim on two narrow statements: a risk disclosure about construction delay and the 65% beginning-of-life efficiency specification. Plaintiffs firmly believe that the Court correctly determined that these statements are actionable. But success at the pleading stage is no guarantee of success at summary judgment or trial. Porritt Decl. at ¶ 34. Defendants had substantial defenses on both of the remaining statements. On the construction delay risk disclosure, Defendants would have sought to establish that they could not have foreseen at the time of the IPO that construction delays ultimately caused Bloom to miss third-quarter guidance. On the beginning-of-life efficiency specification, Defendants were expected to offer lay and expert engineering evidence supporting the challenged 65% figure. The Underwriter Defendants were additionally expected to vigorously pursue an affirmative defense of due diligence.

In addition, the Settling Defendants had very serious causation and damages defenses with

respect to both of the two remaining challenged statements. As to the construction delay risk disclosure, Plaintiffs have alleged that the truth was completely revealed on November 6, 2018, when Bloom announced a 4% miss. Defendants' position was that no information about the guidance miss leaked into the market before November 6, 2018, and that given Plaintiffs' own efficient-market allegations, the truth was completely revealed on that date. Defendants would likely have attempted to establish that no relevant information about construction delays was revealed to the market on any day *other* than November 6, 2018. If Defendants had succeeded with this negative causation defense, damages would have been limited to the single-day November 6, 2018 decline. But Bloom's stock price following that decline was $17.25, which was *higher* than the $15 IPO price. This presented a very real possibility that damages would have been zero: Section 11's damages formula is based on the difference between the IPO price and subsequent *lower* prices at the time of sale or the commencement of an action. Assuming Plaintiffs could nevertheless recover for the one-day November 6 decline, Plaintiffs' expert estimates damages of approximately $50 million. Porritt Decl. at ¶ 32.

Plaintiffs faced similarly daunting causation and damages obstacles for the beginning-of-life efficiency statement. That statement was corrected on September 17, 2019, when short-seller Hindenburg Research published a report criticizing numerous aspects of Bloom's business. The original complaint in this case, however, was filed four months earlier, in May 2019. Defendants have maintained that because Section 11(e) caps damages by reference to the value of a stock at the "time such suit was brought," Plaintiffs cannot establish damages in connection with the beginning-of-life efficiency statement, which was not corrected until after the damages cap took hold. While Plaintiffs have argued throughout this litigation that the "time such suit was brought" is the date of the operative rather than the original complaint, there is no guarantee Plaintiffs would succeed.

Moreover, even if Plaintiffs prevailed as a legal matter on the complaint-date issue—which would have put damages for the beginning-of-life efficiency statement back in play—Defendants would again have mounted a strong negative causation defense. If successful, that defense would have limited damages to the single-day decline following the revelation of the truth on September 17, 2019. Bloom's stock price fell only $0.88 that day. Plaintiffs' expert believes that this one-day decline

corresponds to damages of $7.8 million. Even that figure is based on the assumption that the entirety of the September 17, 2019 drop can be attributed to the correction of the beginning-of-life efficiency statement. Defendants, of course, would have sought to attribute some or all of the decline to significant other items of company-specific information revealed by Hindenburg report.

The total amount of damages are complex and subject to heated dispute between the parties. Considering Defendants' formidable causation and damages defenses, Plaintiffs risked recovering **_nothing_** for either of the two challenged statements and associated stock price declines, even if they succeeded in establishing falsity. Had Plaintiffs surmounted in part the causation and damages issues, recovery may still have been very limited. For example, Plaintiffs' expert calculates damages for November 6, 2018, and September 17, 2019 (the two surviving corrective disclosures) to be $57.8 million when considering just the declines on those dates. Under this scenario, the $3 million recovery represents approximately 5.2% of the total maximum recovery of the remaining claims as calculated by Plaintiffs' expert.

Similarly, Plaintiffs' expert calculates the total recoverable damages for the remaining claims and the dismissed accounting claims (drops on November 6, 2018, September 17, 2019, February 13, 2020, and April 1, 2020) to be $108.2 million. Therefore, the $3 million recovery represents approximately 2.8% of the total maximum recovery of allegations assuming that Plaintiffs would be able to reinstate their accounting claims on appeal and then successfully prosecute them.

Finally, the maximum statutory damages recoverable on the Section 11 claims are approximately $170.4 million, with no allowance for the negative causation defense. Therefore, the $3 million settlement Plaintiffs have achieved is 1.8% of the total maximum statutory damages. So when the Settlement is appropriately evaluated against the complexity and range of potential damages, it represents 1.8% to 5.2% of potential damages and is, accordingly, comparable to similar Section 11 settlements.[4] *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) (recognizing the "significant risk that continued litigation might yield a smaller recovery or no

---

[4] McCall Decl. Ex. G_ (Cornerstone, Securities Class Action Settlements 2022 Review and Analysis, at 6-8) (Finding the median settlement amount Section 11 damages of greater than $150 million to be 4.6% of "Simplified Statutory Damages").

recovery at all"); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (same). Given all of the foregoing risks and potential costs to establishing liability and damages, the $3,000,000 proposed Settlement is fair, reasonable and adequate, and represents a strong recovery for the Settlement Class.

### b. The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, and the Proposed Plan of Allocation is Fair and Reasonable

The Court must also ultimately assess whether a proposed settlement "treats class members equitably relative to each other" under Rule 23(e)(2)(D), and whether the proposed methods for distributing "relief" to class members will be "effective" under Rule 23(e)(2)(C)(ii).

Here, the [proposed] Plan of Allocation ("POA") was formulated in close consultation with Plaintiffs' damages consultant and provides for customary *pro rata* distribution of the Net Settlement Fund among all eligible Settlement Class Members who have submitted a valid proof of claim. Porritt Decl. at ¶¶35-36. *See* Fed. R. Civ. P. 23(e)(2)(D). While the plan of allocation treats Section 11 and Section 10(b) purchasers the same, under the plan of allocation all Section 11 Settlement Class Members will still be able to recover for every drop under the plan of allocation, including the drops associated with the dismissed accounting claims on February 13, 2020, and April 1, 2020. Further, in light of the import of Section 10(b) claims, it is appropriate to treat the Class Members equally. As both claims concern the substantially the same misrepresentations and the questions of loss causation (or negative causation) significantly overlap, treating them the same is the fairest way to ensure that all Settlement Class Members are treated equally under the plan of allocation while conserving the maximum amount of the settlement for the Settlement Class Members.

More specifically, each Settlement Class Member's recovery will be based upon the relative losses they sustained as a result of the Settling Defendants' alleged misconduct, with each eligible Settlement Class Member receiving a *pro rata* distribution from the Net Settlement Fund, based on a common formula applicable to all Class Members that takes into account the estimated amount of inflation-per-share in Bloom stock at the times that they purchased and sold (if they sold) their shares. Each Settlement Class Member will then receive a *pro rata* distribution of the Net Settlement Fund based on his, her, or its Recognized Claim as a percentage of the total Recognized Claims of all

Settlement Class Members.  *Id.*  Such customary POAs, based on *pro rata* allocations to each class member under a common formula, ensure that each Settlement Class Member's recovery are based upon the relative losses they sustained, and that eligible Settlement Class Members will receive distributions calculated in the same manner, and are routinely held to be fair and reasonable.  *See, e.g.*, *In re Vaxart, Inc. Sec. Litig.*, Case No. 3:20-cv-05949-VC, ECF No. 273 (N.D. Cal. Jan. 25, 2023); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *5, 20 (N.D. Cal. Oct. 25, 2019); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* allocation "equitable"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).[5]

Moreover, as confirmed by the accompanying Webb Decl., Epiq is highly experienced in administering securities class action settlements.  Accordingly, there is no reason to believe that the "effectiveness" of the means to be used here in distributing the settlement proceeds to members of the Settlement Class will be any less here than in any other securities class action settlement.

## IV.  THE PROPOSED SETTLEMENT AND RELATED SUBMISSIONS DO NOT VIOLATE ANY OF THE NORTHERN DISTRICT CLASS ACTION GUIDELINES

For the Court's convenience, a "checklist" setting forth this District's specific "procedural guidance" considerations and/or recommendations for consideration at preliminary approval—and a note of where the information addressing each relevant point is addressed in Plaintiffs' settlement submissions—is attached to the Porritt. Decl. at Ex. 2.  *See also N.D. Cal. Proc. Guid. for Class Action Settlements* ("N.D. Cal. Guid.").  Certain of these considerations are discussed in more detail below.

### A.  The Scope of the Releases Is Reasonable

The Stipulation provides for Class Members to release the "Released Claims" as against the "Released Parties."  *See* Stip., ¶¶ 3.1-3.3.  Released Claims include claims by "Plaintiffs or any Settlement Class Member that (a) arise out of or relate in any way to the purchase or acquisition of

---

[5]  To reduce administrative costs, the POA provides that "Recognized Claims" of less than $10 will not be paid.  If funds remaining after the initial distribution of the Net Settlement Fund to eligible Class Members are so small that a further re-distribution to Class Members would not be economically feasible, they will be donated to a non-profit §501(c)(3) entity approved by the Court. Stip., ¶4.15.

1   Bloom common stock during the Class Period and (b) arise out of or relate in any way to the acts, facts,

2   events, occurrences, statements, representations or omissions that were or could have been alleged or

3   asserted by Plaintiffs or any member of the Settlement Class in the Action, or which could have been

4   alleged in the Action[.]"  Stip., ¶1.44.[6]

5           The release is thus appropriately limited to claims that relate to the same factual allegations as

6   set forth in the operative Corrected Second Amended Complaint, and it releases *only* claims arising

7   from the purchase or acquisition of Bloom common stock during a "Class Period" that is the same as

8   that alleged in the operative complaint.  *See* Stip., ¶1.44; *see also* N.D. Cal. Guid., ¶ 1(c) (requiring

9   differences between claims to be released and claims in operative complaint to be explained).  Here,

10  the sole differences in the Corrected Second Amended Complaint and the operative Second Amended

11  Complaint is to conform the end of the Class Period to the allegations in the complaint that identify

12  March 31, 2020 as the last corrective disclosure.  In short, the releases are no broader than the factual

13  predicate of the underlying claims, consistent with Ninth Circuit law.  *Hesse v. Sprint Corp.*, 598 F.3d

14  581, 590 (9th Cir. 2010).  Indeed, other than the carve out of claims against PwC, the proposed releases

15  are also consistent with release provisions routinely approved by this Court and other courts across the

16  country in other securities class actions.  *See, e.g.*, *In re: Sandisk LLC Sec. Litig.*, Case No. 3:15-cv-

17  01455-VC, at ECF Nos. 274-75 (N.D. Cal. May 24, 2019) (approving similar basic release language);

18  *In re Banc of Cal. Sec. Litig.*, Case No. 8:17-cv-00118, at ECF Nos. 592 at ¶ 1.31, and 595 at 3 (C.D.

19  Cal. Dec. 4, 2019) (same); *In re Yahoo! Inc. Sec. Litig.*, Case No. 5:17-cv-00373, at ECF Nos. 102,

20  105 at ¶ 31 (N.D. Cal. May 9, 2018) (same);

21  **B.      Plaintiffs' Counsel's anticipated attorneys' fee request is reasonable**

22          As set forth in the Notice, Plaintiffs' Counsel intends to seek an attorneys' fee award of not

23  more than 33% of the Settlement Fund.  The Ninth Circuit established 25% of a common fund as the

24  "benchmark" award for attorneys' fees in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272

25  (9th Cir. 1989), and courts in this Circuit (and elsewhere) "have consistently approved of attorney fee

26  awards over the 25% benchmark[,] specifically at a rate of 30% or higher" based on a consideration of

27

28          [6] By contrast, "Released Claims" specifically ***exclude*** all claims against PwC. Stip., ¶1.44.

all relevant facts and circumstances. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015).[7]

The Ninth Circuit has identified five non-exclusive factors that are typically relevant to a district court's fee determination, namely: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). In complex securities class actions such as this, courts in this Circuit regularly award fee percentages of 30% to 33⅓%. *See, e.g., Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (approving 30% fee); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming 33⅓% fee); *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee on $12 million recovery in securities case). In sum, although 25% is often cited as a "benchmark," a closer look at fee awards across the country confirms that courts typically award *less* than 25% in cases involving "mega-settlements," but typically award *more* than 25% in securities cases, as here, that settle for less than $5 million.[8]

A fee of up to 33% is also reasonable in light of Plaintiffs' Counsel's "lodestar" (*i.e.*, hours expended on the settled claims by each attorney and professional, multiplied by their respective hourly rates). Here, to date Plaintiffs' Counsel have devoted a total of approximately 2,935 hours to all claims asserted in the Action, with a total lodestar value of roughly $1.8 million (subject to detailed review and adjustment to reflect billing judgment when counsel submits their Fee and Expense Application at

---

[7] *See also, e.g.,Torres v. Pick-A-Part Auto Wrecking*, No. 116CV01915, 2018 WL 3570238, at *7 (E.D. Cal. July 23, 2018) (33⅓% fee); *Syed v. M-I, L.L.C.*, No. 112CV01718, 2017 WL 3190341, at *5 (E.D. Cal. July 27, 2017) (33⅓% fee); *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *3 (D. Nev. Oct. 16, 2012) (awarding 30% fee "does not seem an extraordinary or extravagant fee for counsel"); *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding 33% fee on $145 million settlement); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18-22 (C.D. Cal. June 10, 2005) (awarding 33⅓% fee on $27 million settlement); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *1-3 (N.D. Cal. July 6, 2011) (30% fee on $8.9 million settlement).

[8] *See, e.g.,* McCall Decl. Ex. H (NERA, McIntosh & Starykh, *Recent Trends in Securities Class Action Litig.,* at 22 (finding that, over the last 25 years, the *median* fee award in securities cases that settled below $5 million was 30%, with median fee awards only falling below 25% for securities cases that settle $100 million or more) (*cf.* $3 million settlement here)).

final approval). Were the Court to grant a full 33% fee (equal to roughly $990,000), that would equate to a lodestar multiplier of *less than* 1.0x (a so-called "negative multiplier") -- which would be *below* the kind of positive multipliers (typically ranging from 1.0 to 4.0) that are typically awarded in class actions. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 18, 2018) (3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at \*7-9 (N.D. Cal. Dec. 6, 2017) (3.66 multiplier), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & 1051 n.6 (9th Cir. 2002) (affirming 3.65 multiplier, and noting that most common multipliers fall between 1.0 and 4.0). Plaintiffs' Counsel therefore respectfully submit that they should be allowed to request attorneys' fees of up to 33% (and include that figure in the Notice) as being within the range of reasonableness for comparable securities cases, while recognizing that the Court will, of course, reserve final decision upon any fee award until the Fairness Hearing.

Plaintiffs' Counsel also intends to seek reimbursement of their expenses in an amount not to exceed $85,000 (excluding the $12,500 also to be included in their Fee and Expense Application, for PSLRA reimbursement to the Plaintiffs). *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that would normally be charged to a fee-paying client"). Here, these expenses include document database management fees, filing fees, legal research costs, expert fees, and mediation fees. Plaintiffs' Counsel will submit a detailed accounting of all expenses sought to be reimbursed as part of their Fee and Expense Application.

**C.    Plaintiffs have identified all agreements made relating to the Settlement**

In addition to the settlement term sheet and subsequent Stipulation, the Settling Parties have entered into a customary, confidential "Opt-Out Agreement" that gives the Settling Defendants the option to terminate the proposed Settlement if the amount of liability represented by valid Requests for Exclusion ("opt-outs") exceeds an agreed "Opt-Out Threshold." *See* Stip., ¶ 10.5. Such agreements have no negative impact on a securities settlement's fairness. *See, e.g.*, *Hefler*, 2018 WL 4207245, at \*11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). As is standard practice in securities cases, the Settling Parties have agreed to keep the supplemental Opt-Out Agreement's terms

confidential, to avoid encouraging the formation of an opt-out group that might result in "blowing up" the settlement to the Class's detriment. If the Court requires, the Opt-Out Agreement can be submitted under seal. *See* Stip., ¶ 10.5.

## V.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED

Plaintiffs also request provisional certification of the Settlement Class for settlement purposes, although at this stage the Court need only determine whether it "will likely be able" to grant certification at final approval after the Fairness Hearing. *See* Fed. R. Civ. P. 23(e)(1)(B).[9]

The proposed Settlement Class—which is as alleged in the Corrected Second Amended Complaint—consists of: "All persons and entities that purchased or otherwise acquired Bloom Energy Corporation's publicly traded common stock either (i) pursuant and/or traceable to the Registration Statement for Bloom's IPO or (ii) on the open market between July 25, 2018 and March 31, 2020, and were damaged thereby."[10] Stip., ¶1.51. Here, "[a]s in almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the requirements of Rule 23." *In re Magma Design Automation Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007), and courts in this District regularly certify shareholder classes for settlement purposes. *See, e.g.*, *In re Vaxart, Inc. Sec. Litig.*, Case No. 3:20-cv-05949-VC, ECF No. 273 (N.D. Cal. Jan. 25, 2023); *Vataj v. Johnson*, 2021 WL

---

[9] Plaintiffs' arguments for class certification are also set forth in more detail in Plaintiffs' motion for class certification filed on March 18, 2022. ECF No. 183.

[10] Excluded from the Class are: (i) Defendants and the Individual Defendants' immediate family members; (ii) the officers, and directors of Bloom and the Underwriter Defendants, at all relevant times; (iii) the, affiliates, and subsidiaries of Bloom, at all relevant times; (iv) Bloom's affiliates and employee retirement and/or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Bloom common stock pursuant or traceable to the Registration Statement through any such plan(s); (iv) any entity in which Defendants have a controlling interest; and (vi) the legal representatives, heirs, successors, or assigns of any such excluded person or entity. Provided, however, that any "Investment Vehicle" shall not be excluded from the class. "Investment Vehicle" means any investment company, separately managed account, collective investment trust, or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds, hedge funds, and retirement accounts and employee benefit plans, in which any Defendant has or may have a direct or indirect interest, or as to which that Defendant or its affiliates may act as an investment advisor or manager, but in which any Defendant alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest.

1    1550478, at \*6-7 (N.D. Cal. Apr. 20, 2021); *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at \*2 (N.D.

2    Cal. Apr. 19, 2021).

3    **Numerosity**: Rule 23(a)(1) requires that the class be so numerous that joinder of all class

4    members is impracticable. Classes that consist of 40 or more members usually satisfy numerosity. *See,*

5    *e.g.*, *Nucci v. Rite Aid Corp.*, 2020 WL 3187335, at \*10 (N.D. Cal. Jun. 14, 2020).  Given Plaintiffs'

6    estimate that there were 20.7 million shares of Bloom common stock sold during Bloom's IPO, and

7    71.1 million damaged shares in the Settlement Class, numerosity is easily satisfied here.  *See also*

8    Webb Decl. at ¶ 22 (estimating need to send out Notices to as many as 100,000 Settlement Class

9    Members).

10    **Commonality**: Rule 23(a)(2) is satisfied where class members share at least one common

11    question of law or fact.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Wang v.*

12    *Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013).  This Action involves myriad common

13    questions, including whether: (i) Defendants' statements were false or misleading; (ii) the facts that

14    Defendants misrepresented or omitted were material; (iii) Defendants acted with scienter, (iv) the price

15    of Bloom's common stock was artificially inflated by Defendants' misleading statements;

16    (v) Defendants' misleading statement caused the Settlement Class's losses; (vi) the Individual

17    Defendants were controlling persons of Bloom; and (vii) the Settlement Class suffered damages.

18    Courts routinely certify securities cases involving similar common questions.  *See, e.g.*, *Luna v.*

19    *Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at \*2 (N.D. Cal. Oct. 27, 2017) ("lead plaintiff's

20    allegations that investors were defrauded by the same misleading statements over the same period of

21    time, and suffered similar losses as a result are sufficient to fulfill Rule 23(a)'s commonality

22    requirement."); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at \*4 (N.D. Cal. Mar.

23    16, 2016) (commonality satisfied by common questions such as "whether Defendants: (1) violated [the

24    Exchange Act and Securities Act]; (2) misrepresented or omitted material facts; (3) knowingly or

25    recklessly disregarded that their statements were false and misleading; and, if so, whether Defendants'

26    (4) false statements artificially inflated the price of [the defendant's] stock …").  Commonality is thus

27    met here.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Typicality**: Rule 23(a)(3) requires that the claims or defenses of the class representative are typical of the claims or defenses of other class members. Under Rule 23(a)(3)'s "permissive standards," "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (and further emphasizing that "typical" does not mean "identical"). Typicality is readily satisfied in securities fraud class actions, where, as here, "plaintiffs have bought and sold stock for investment purposes, subject to the same information and representations as the market at large." *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *5 (C.D. Cal. Jan. 5, 2017) (internal quotes omitted); *see also Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *4 (N.D. Cal. Jun. 28, 2015). Here, Plaintiffs, like other Settlement Class Members, purchased Bloom common stock during Bloom's IPO and/or during the Class Period at artificially inflated prices and suffered damages as the truth about Bloom was disclosed and its stock price declined. Simply put, typicality is satisfied here because the evidence that Plaintiffs would present to prove their claims would also prove the Settlement Class's claims. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011) (finding typicality met for plaintiffs who suffered same injury as absent class members because of drop in stock price).

**Adequacy**: Courts in the Ninth Circuit apply a two-prong Rule 23(a)(4) adequacy test: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members? and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 505 (N.D. Cal. 2017) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). As described above, Plaintiffs' claims are typical of those of other Settlement Class Members, and Plaintiffs thus have no interests antagonistic to those of other Class Members. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309-10 (N.D. Cal. 2018) (no conflicts where class members were all victims of the same event and sought same type of relief). Plaintiffs have also shown their adequacy by actively participating in this Action, including by becoming involved as plaintiffs, consulting regularly with their counsel, producing discovery, reviewing motions, and staying apprised of all settlement discussions. *See* Porritt Decl. at ¶27.

**Predominance and Superiority**: Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, *Stromberg v. Qualcomm Inc.*, 14 F. 4th 1059, 1067 (9th Cir. 2021), even if there are some elements of the claims that may not be susceptible to class-wide proof. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). "The predominance requirement is readily met in securities fraud cases," *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *9 (N.D. Cal. May 12, 2010), and this case is no exception. Indeed, the core elements of the settled claims here—falsity, materiality, scienter, and loss causation—are all readily susceptible to class-wide proof. *See Extreme Networks*, 2019 WL 3290770, at *5 (common questions of falsity, materiality, scienter, and loss causation predominated); *UTStarcom*, 2010 WL 1945737, at *9 (predominance met where plaintiff alleged "a common course of conduct affecting all purchasers" of defendant company's securities).

Superiority is routinely found where, as here, "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

In sum, no issues prevent the Court from certifying the Class for settlement purposes, or appointing Plaintiffs as class representatives and Plaintiffs' Counsel as Class Counsel.

## VI.    THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances." Further, Rule 23(e)(1)(B) requires that such notice be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]." The notices "must generally describe[] the terms

1    of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

2    forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).[11]

3         Here, the proposed Notice—a copy of which is attached at McCall Decl. Ex. A-1—includes all

4    information required by the Federal Rules, the PSLRA, and this District's *Procedural Guidance for*

5    *Class Action Settlements*.  In particular, the proposed Notice describes in plain English the proposed

6    Settlement's terms, as well as: (i) the nature, history, and status of the litigation; (ii) the definition of

7    the proposed Settlement Class and who is excluded; (iii) the reasons for the Settlement; (iv) the amount

8    of the Settlement; (v) the estimated average recovery per damaged share; (vi) the Settlement Class's

9    claims; (vii) that the Settling Parties disagree over damages and liability; (viii) the maximum amount

10   of attorneys' fees and expenses that Plaintiffs' Counsel will seek; (ix) the terms of the Plan of

11   Allocation; and (x) the date, time, and location of the Fairness Hearing.  The proposed Notice also sets

12   forth the Class Members' rights to: (i) request exclusion from the Settlement Class, and how to do so;

13   (ii) object to the Settlement, POA, and/or Fee and Expense Application, or any aspects thereof, and

14   how to do so; and (iii) submit a claim to participate in the Settlement, and instructions on how to

15   complete and submit a Claim Form.  The Notice also provides contact information for Plaintiffs'

16   Counsel.

17        Under Rule 23(h)(1), "[n]otice of the motion [for attorneys' fees] must be served on all parties

18   and, for motions by class counsel, directed to class members in a reasonable manner."  The Notice

19   satisfies these requirements, as it will advise that (a) Plaintiffs' Counsel will apply to the Court for

20   attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of expenses of not more than

21   $85,000, from the Settlement Fund, and that (b) copies of their Fee and Expense Application will be

22   available on the settlement website.  *See* Notice at p. 3 (McCall Exs. A-1); Porritt Decl. at ¶ 47.

23        Plaintiffs' proposed method for disseminating notice to the Class also satisfies all applicable

24   standards, *e.g.*, *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30,

25

26        [11] The notice must also explain in basic terms the nature of the action, class definition, class claims,
     issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and
27   binding nature of a class judgment. Fed. R. Civ. P. 23(b) (3); *Bellinghausen v. Tractor Supply Co.*, 303
     F.R.D. 611, 624 (N.D. Cal. 2014).
28

2007) ("notice by mail and publication is the best notice practicable under the circumstances, as mandated by FRCP 23(c)(2)(B)") and should therefore also be approved.[12]

Plaintiffs also request that the Court approve the retention of Epiq, a highly experienced class action claims administration firm. *See* Webb Decl. at ¶ 5.  Consistent with Rules 23(c)(2)(B) & 23(e)(1), and as set forth in the Webb Decl. at ¶¶ 10-21, Epiq will carry out the robust Notice Plan (as directed by the [proposed] Preliminary Approval Order) to identify and disseminate the Postcard Notice (McCall Decl. Ex. A-4) to Settlement Class Members by U.S. mail, as supplemented by publication of the Summary Notice in *Investors' Business Daily* (*see* McCall Decl. Ex. A-3) and a press release on the internet via *PR Newswire,* which will also direct readers to the settlement website for additional information. Webb Decl. at ¶ 19.

As per the N.D. Cal. Guidance at ¶ 2, Epiq estimates that Notice and Administration costs here, which will be paid out of the Settlement Fund, will be roughly $211,392. Webb Decl., ¶ 22.  This is an estimate, given that the administration has not yet commenced, and final Notice and Administration costs will largely depend upon the number of Notices mailed and the number of Claim Forms submitted for processing.  *Id.*  Based on Epiq's experience in other recent securities settlements, it estimates that approximately 25% of potential Settlement Class Members to whom notice is mailed will submit claims. *Id.* ¶ 24 Epiq's costs are necessary in order to effectuate the Settlement and, as estimated, at approximately 7% of the total Settlement Amount, are reasonable in relation to the value of the Settlement.  *Id.* ¶ 22; *see also* N.D. Cal. Guid., ¶ 2 (preliminary approval motion should identify "proposed settlement administrator" and discuss anticipated costs, their reasonableness, and who will pay them); *Extreme Networks*, 2019 WL 3290770, at *2, *12 (approving $500,000 in administration costs from $7 million settlement fund).

## VII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval, the Court must also set a date for the Fairness Hearing, and set deadlines for certain future events (*e.g.*, for mailing the Notice, publishing the

---

[12] Bloom will also serve, or cause to be served, the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA") on behalf of all Defendants.  Stip., ¶4.3; see N.D. Cal. Guid., ¶ 10.

Summary Notice, filing final approval briefs, requesting exclusion from the Settlement Class, serving

objections to the Settlement, submitting Claim Forms).  Plaintiffs propose the following schedule:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing Postcard Notice to Settlement Class Members ("Notice Deadline") | 21 calendar days after the Court's entry of the Preliminary Approval Order ([proposed Prelim. Approval Order, ¶ 15 (McCall Decl. Ex. A)) |
| Deadline for publishing the Summary Notice | 20 business days after entry of Preliminary Approval Order (*Id.*, ¶ 18) |
| Deadline for filing papers in support of final approval of the Settlement, plan of allocation, and Plaintiffs' Counsel's request for attorneys' fees and litigation expenses | 35 calendar days prior to the Fairness Hearing (*Id.*, ¶ 28) |
| Deadline for requesting exclusion from the Settlement Class, or for filing objections to the Settlement, Plan of Allocation, and/or the Fee and Expense Application | Exclusions: 30 calendar days prior to Fairness Hearing (*Id.*, ¶ 23) <br> Objections: 21 calendar days prior to Fairness Hearing (*Id.*, ¶ 26) |
| Deadline for filing reply papers | 7 calendar days prior to Fairness Hearing (*Id.*, ¶ 29) |
| Fairness Hearing | To be set by Court and inserted at ¶7 of Prelim. Approval Order [*Note*: should be set for at least 75 days after entry of Prelim. Approval Order to allow time for issuance of Notice][13] |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Deadline (*Id.*, ¶ 21) |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the [Proposed]

Preliminary Approval Order, which will: (i) provisionally certify the proposed Settlement Class for

settlement purposes; (ii) appoint Plaintiffs as class representatives and Plaintiffs' Counsel as class

counsel for settlement purposes; (iii) preliminarily approve the Settlement; (iv) authorize retention of

Epiq as the claims administrator for the Settlement and Western Alliance as the escrow agent;

(v) approve the form, content, and method of disseminating notice to the Settlement Class;

(vi) schedule a final Fairness Hearing; and (vii) approves the filing of the Corrected Second Amended

Complaint.

---

[13] Under this schedule, class members will have more than 35 days to "opt out" or submit objections to the Settlement and/or Fee and Expense Application. *See* N.D. Cal. Guid., ¶ 9.

1   Dated: June 30, 2023                    Respectfully submitted,

2

3                                            **LEVI & KORSINSKY, LLP**

4                                            _/s/ Nicholas I. Porritt_                          .
                                             Nicholas I. Porritt
5                                            Max E. Weiss
                                             55 Broadway, 10th Floor
6                                            New York, NY 10006
                                             Tel: (212) 363-7171
7                                            Email: nporritt@zlk.com
                                             Email: mweiss@zlk.com
8                                            (_admitted pro hac vice_)

9
                                             Adam M. Apton (SBN 316506)
10                                           Adam C. McCall (SBN 302130)
                                             1160 Battery Street East
11                                           Suite 100 - #3425
                                             San Francisco, CA 94111
12                                           Telephone: (415) 373-1671
                                             Email: aapton@zlk.com
13                                           Email: amccall@zlk.com

14
                                             _Lead Counsel for Plaintiffs and the Class_
15

16                                           -and-

17                                           Reed R. Kathrein (SBN 139394)
                                             Lucas Gilmore (SBN 250893)
18                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                             715 Hearst Avenue, Suite 202
19                                           Berkeley, CA 94710
                                             Tel:    (510) 725-3000
20                                           Email: reed@hbsslaw.com
                                             Email: lucasg@hbsslaw.com
21

22                                           Steve W. Berman
                                             **HAGENS BERMAN SOBOL SHAPIRO LLP**
23                                           1301 Second Avenue, Suite 2000
                                             Seattle, WA  98101
24                                           Telephone: (206) 623-7292
                                             Email: steve@hbsslaw.com
25                                           (to be _admitted pro hac vice_)

26
                                             _Additional Counsel for Plaintiffs and the Class_
27

28