UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EVERETT HUNT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BLOOM ENERGY CORPORATION, et al.,<br><br>Defendants. | Case No. 19-cv-02935-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 237 |

Pending before the Court is Plaintiffs' motion for preliminary approval of class action settlement. *See* Dkt. No. 237. The Court held a hearing on the motion on October 5, 2023. For the reasons detailed below, the Court **GRANTS** the motion.

I. **BACKGROUND**

A. **Factual Allegations**

Lead Plaintiff James Everett Hunt and Plaintiffs Juan Rodriguez, Kurt Voutaz, Joel White, Andrew Austin, and Ryan Fishman purchased shares of Defendant Bloom Energy Corporation's common stock either (1) when Bloom went public through an Initial Public Offering ("IPO") on July 25, 2018; or (2) on the public market between July 25, 2018, and March 31, 2020. *See* Dkt. No. 237-10, Ex. C ("CSAC") at ¶¶ 1–2, 8–14, 50–51.[1] Plaintiffs brought this action against Bloom and certain of its officers and directors, as well as its underwriters and auditors, regarding alleged misrepresentations and omissions in Bloom's IPO Registration Statement. *See id.* at ¶¶ 3, 52. Plaintiffs alleged that the Registration Statement misrepresented and failed to disclose, *inter*

---

[1] As part of the settlement, the parties have agreed to file a corrected version of the second amended complaint that conforms the end of the Class Period from February 12, 2020, to March 31, 2020, the date of the last corrective disclosure. *See* Dkt. No. 237-1 at ¶ 23.

*alia*, (1) that Bloom was already facing significant construction delays that were interfering with its installations; and (2) issues regarding the efficiency of its Energy Server technology (*i.e.*, the rate at which fuel is converted into electricity). *See id.* at ¶¶ 3, 53–104, 137–417. Based on these allegations, Plaintiffs asserted violations of the federal securities laws under Sections 11 and 15 of the Securities Act of 1933; Sections 10(b) and 20(a) of the Securities Exchange Act of 1934; and SEC Rule 10b-5. *See id.* at ¶¶ 105–136, 499–514.

### B. Procedural History

Defendants brought three motions to dismiss the second amended complaint. In September 2021, the Court granted in part and denied in part the motions. *See* Dkt. No. 157. As relevant to the proposed settlement, the Court (1) dismissed the Section 10(b) claims in their entirety; (2) dismissed all the claims against PricewaterhouseCoopers ("PwC"), Bloom's independent auditor; and (3) dismissed the Section 11 claims against all remaining Defendants as to all but two challenged statements. *See id.* Plaintiffs chose not to amend, Dkt. No. 159 at 3, and the only claims that remain are those under Section 11 regarding the alleged misrepresentations about construction delays and the efficiency of Bloom's Energy Servers. *Id.*

Plaintiffs subsequently moved for entry of judgment under Federal Rule of Civil Procedure 54(b) regarding the accounting-based claims against PwC and the other Defendants. Dkt. No. 160. The Court denied this motion. *See* Dkt. No. 167. Plaintiffs then requested that the Court certify the motion to dismiss order relating to the Section 11 accounting claims for interlocutory appeal under 28 U.S.C. § 1292(b). *See* Dkt. No. 170. The Court also denied this motion. Dkt. No. 188. The parties—except PwC—therefore continued to engage in discovery, brief class certification, and discuss the possibility of settlement. *See* Porritt Decl. at ¶¶ 4, 16–19.

### C. Settlement Agreement

In December 2022, the remaining parties[2] participated in mediation with Phillips ADR mediator Michelle Yoshida. *See* Dkt. No. 237 at 1, 4–5. Ms. Yoshida made a mediator's proposal

---

[2] The proposed settlement does not involve PwC since the claims against it have already been dismissed in their entirety. Plaintiffs have reserved the right to pursue the accounting claims against PwC on appeal. *See* Dkt. No. 237 at 9; *see also* Porritt Decl. at ¶ 6. The Court's later references in this order to "parties," therefore, does not include PwC unless explicitly stated.

that the parties accepted.  Dkt. No. 237-1 ("Porritt Decl.") at ¶ 20.  The parties ultimately entered into a stipulation and agreement of settlement, fully executed in June 2023.  *See* Dkt. No. 273-3, Ex. 1 ("SA").  The key terms are as follows:

Class Definition:  The Settlement Class is defined as "all Persons and entities that purchased or otherwise acquired Bloom Energy Corporation's publicly traded common stock either (i) pursuant and/or traceable to the Registration Statement for Bloom's IPO or (ii) on the open market between July 25, 2018, and March 31, 2020, and were damaged thereby."  SA at § 1.51.

Settlement Benefits:  Defendant will make a $3,000,000 non-reversionary payment.  SA §§ 1.50, 1.53, 2.1–2.3.  The settlement fund includes notice and administration expenses, taxes and tax expenses, Court-approved attorneys' fees and costs, any award to Plaintiffs as allowed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and any other Court-approved fees or expenses.  *Id.* §§ 1.5, 1.29, 2.2, 7.2–7.3.  Payments to class members will be distributed per the allocation plan on a pro rata basis.  *Id.* §§ 6.1–6.2.  Each class member must submit a proof of claim and release form to the Claims Administrator to be eligible for payment.  *Id.* §§ 1.6, 1.40; *see also* Dkt. No. 237-6, Ex. A-2 (Claim Form).  Payments will be calculated based on the "recognized loss" for each share, using a method that accounts for that portion of the losses on Class Period purchases of Bloom shares that can be fairly attributed to the alleged misconduct in the CSAC.  SA § 1.42, 4.1; *see also* Dkt. No. 237-5, Ex. A-1 at 13–18 (Plan of Allocation).

*Cy Pres* Distribution:  Defendants will not have a reversionary interest in the settlement fund if there is a balance remaining after distribution.  SA § 4.15.  Instead, additional distributions will be made to authorized claimants.  *Id.*  Any remaining balance six months after such re-distribution will be donated to the Bay Area Financial Education Foundation.  *See* Dkt. No. 242.

Release:  All Settlement Class Members will release Defendants and their subsidiaries from:

> any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, including both known claims and Unknown Claims, that

3

> have been or could have been asserted in this Action, or any other action arising under the federal securities laws, that (a) arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this Action, or which could have been alleged in this Action, or (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, sale, disposition, or holding of any Bloom securities acquired pursuant and/or traceable to Bloom's July 24, 2018 IPO Registration Statement or on the open market between July 25, 2018 and March 31, 2020, provided, however, that the following are expressly excluded from the definition of Released Claims: all claims that have been or may in the future be brought against PwC. In addition, "Released Claims" does not include any claims to enforce any of the terms of this Stipulation.

SA § 1.44.

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed 33% of the Settlement Fund, or $990,000. SA at §§ 1.20, 7.2

Opt-Out Procedure: Any class member who wishes to opt out of the Settlement must submit a timely request for exclusion. SA §§ 8.1–8.2. The timing for opt outs and objections to the Settlement will be set at least 45 days after the filing of the motion for attorneys' fees in a separate scheduling order. *Id.*; *see also* Section VI below. Defendants retain the right to withdraw if the number of opt-outs reaches an agreed-upon threshold. *Id.* § 1.32. The threshold is set out in a confidential supplemental agreement. *Id.*

## II. PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id*. at 557.

A. **Rule 23(a) Certification**

The Court finds that all the requirements of Rule 23(a) are met:

- **Numerosity.** Plaintiffs estimate that there were 20.7 million shares of Bloom common stock sold during Bloom's IPO, and 71.1 million damaged shares in the Settlement Class. *See* Dkt. No. 237 at 19; *see also* CSAC at ¶¶ 2, 51. They anticipate mailing notice to approximately 100,000 potential class members. *See* Dkt. No. 237-16 at ¶ 22. Although the exact number of class members is unknown at this time, joinder of the tens of thousands of estimated class members would be impracticable.

- **Commonality**. Common questions of law and fact include whether (1) statements in the Registration Statement misrepresented material facts about Bloom; (2) the price of Bloom common stock was artificially inflated during the Class Period; and (3) members of the Class have sustained damages and the proper measure of such damages. *See* Dkt. No. 237 at 19.

- **Typicality.** Plaintiffs' claims are both factually and legally similar to those of the putative class because they allege that, like the other class members, they purchased Bloom common stock at prices that were inflated because Defendants made false and materially misleading statements in the Registration Statement during the Class Period. *See id.* at 20.

- **Adequacy of Representation.** The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or counsel have a conflict with other class members. Plaintiffs' counsel has been

appointed class counsel in numerous federal and state class actions. *See* Porritt Decl. at ¶¶ 39–40; Dkt. No. 183-8, Ex. 7. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date, and will continue to do so.

### B. Rule 23(b)(3) Certification

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met:

- **Predominance.** The Court concludes that for purposes of settlement, common questions predominate here because the same operative facts apply to each proposed class member: each class member purchased and/or acquired Bloom common stock during the Class Period and suffered losses in their shares' value as a result of prices that first were artificially inflated based on Defendants' alleged misrepresentations and omissions, then dropped once the truth about the existence and scale of construction delays affecting Bloom's business and the efficiency of its Energy Server technology was later revealed. Although the class members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).

- **Superiority.** A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

### C. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints them as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted declarations

detailing their expertise in representing plaintiffs in class action suits, especially securities class actions. *See* Porritt Decl. at ¶¶ 39–40; Dkt. No. 183-8, Ex. 7. Accordingly, the Court appoints Levi & Korsinsky LLP as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

### III.   PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A.   Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class;

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

#### a. Clear Sailing Provision

Here, the Settlement Agreement contains a clear sailing arrangement, which states that Defendants will not oppose Plaintiffs' motion for attorneys' fees and costs. *See* SA § 7.4  The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Roes*, 944 F.3d at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (quotations omitted). The Ninth Circuit has recently emphasized that "[t]he touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class." *Lowery v. Rhapsody Int'l, Inc.*, 69 F.4th 994, 997 (9th Cir. 2023).

When deciding to award attorney's fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method,

twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Even if the Court were to award the requested 33% of the fund (or $990,000) in attorneys' fees, however, the majority of the monetary settlement will still be distributed to class members. *See Lowery*, 69 F.4th at 997 ("Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class."). But in any event, the Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case. At this stage, the Court does not find that the clear sailing provision weighs against preliminary approval.[3]

### b. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted). A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it." *Id*. (quotation omitted).

Here, the parties have selected the Bay Area Financial Education Foundation as its *cy pres* recipient. *See* Dkt. No. 242. The Bay Area Financial Education Foundation is a nonprofit organization devoted to providing financial education for Title I schools, low to moderate income communities, at-risk youth, and organizations that support BIPOC students. *Id.* at 2. For

---

[3] To the extent Plaintiffs' counsel suggests that it is entitled to attorneys' fees in the amount of $990,000, *see* Dkt. No. 237 at 15–17, the Court need not—and does not—decide that issue now. Preliminary approval is not an endorsement or pre-approval of any future fee request.

example, its curriculum includes the "basics of investing," which provides "an understanding of the value of investing early and regularly, different investment strategies and the costs and benefits of each, compound interest, stocks and bonds, risk vs. return, asset allocation, passive vs. active investing and target date funds." *Id.*

The Court preliminarily finds that the Bay Area Financial Education Foundation shares the interests of the class members in educating and protecting the investing public. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Class.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the settlement agreement authorizes Plaintiffs to seek an "award" for their role in this lawsuit, as well as any reasonable costs and expenses related to the representation of Class Members, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. *See* SA §§ 1.7, 1.20, 7.3.

The PSLRA generally prohibits incentive or service awards to class representatives. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 960, n.4 (9th Cir. 2009) (citing 15 U.S.C. § 78u-4(a)(2)(A)(vi)). Plaintiffs are not precluded, however, from seeking an award of "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *Id.* § 78u-4(4). Plaintiffs will need to provide "meaningful evidence demonstrating that the requested amounts represent actual costs and expenses incurred directly as a result of the litigation." *See In re Twitter Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2022 WL 17248110, at *2 (N.D. Cal. Nov. 21, 2022) (quotation omitted). The Court will consider the evidence presented in Plaintiffs' motion

1  and evaluate the reasonableness of any award request.  Because Plaintiffs' intent to seek
2  reasonable costs and expenses is not per se unreasonable, the Court finds that this factor weighs in
3  favor of preliminary approval.
4      Further, the settlement agreement does not single out any segment of the class for
5  favorable treatment.  Each authorized claimant will receive a pro rata distribution of the
6  Settlement Fund in proportion to their potential damages based on the allocation plan.  *See* Porritt
7  Decl. at ¶¶ 35–36.

### iii. Settlement within Range of Possible Approval

9      The Court also generally considers whether the settlement is within the range of possible
10  approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider
11  plaintiffs' expected recovery balanced against the value of the settlement offer."  *Lenovo*, 2018
12  WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.
13      First, the Court notes that the $3 million settlement amount was the mediator's
14  recommendation.  *See* Porritt Decl. at ¶ 20.  Plaintiffs and counsel, with the aid of damages
15  experts, estimated the maximum recovery at trial to be approximately $57.8 million for the two
16  surviving corrective disclosures.  *See* Dkt. No. 237 at 10–13.  Counsel further explains that it
17  would have been difficult to obtain this amount at trial given Defendants' "substantial defenses."
18  *Id.* at 10.  For example, Defendants would have argued that at the time of the IPO they could not
19  have foreseen that construction delays would have caused Bloom to miss its third-quarter
20  guidance.  *Id.*  Defendants also would have offered lay and expert testimony attesting to the
21  efficiency of the Energy Servers.  *Id.*  Additionally, Defendants would have attempted to establish
22  that damages for any of the alleged misstatements were minimal because Bloom's stock *rose* the
23  day after Bloom's missed guidance was leaked to the market and only fell $.88 after information
24  about the efficiency of the Energy Servers was disclosed.  *Id.* at 11.
25      The Settlement Agreement provides for approximately 5.2% of the maximum estimated
26  recovery for the remaining claims.  *Id.* at 12.  Even considering the possible estimated recovery for
27  *all* claims initially alleged against Defendants, Counsel estimates that the Settlement Agreement
28  represents approximately 1.8% of the maximum estimated recovery.  *Id.*  The Court finds that this

11

1    is not outside the range of a reasonable recovery, particularly given the risks that Plaintiffs would

2    face if they continued to litigate this action through trial.[4]  *See, e.g.*, *In re Lyft, Inc. Sec. Litig.*, No.

3    19-CV-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022).

4          Further, the scope of the proposed release does not push this settlement outside the range

5    of possible approval for purposes of preliminary settlement.  The release, although broad, is

6    consistent with Ninth Circuit law and the identical factual predicate rule, and further underscores

7    the adequacy of the settlement.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A

8    settlement agreement may preclude a party from bringing a related claim in the future even though

9    the claim was not presented and might not have been presentable in the class action, but only

10   where the released claim is based on the identical factual predicate as that underlying the claims in

11   the settled class action.") (quotation omitted).

12         In sum, the Court finds that this settlement is well within the range of possible approval.

13         **iv.**   **Fairness of Supplemental Agreement**

14         The Court must also review the fairness of the parties' confidential supplemental

15   agreement.  *See* SA § 1.32.  The existence of a termination option triggered by the number of class

16   members who opt out of the Settlement does not by itself render the Settlement unfair.  *See, e.g.*,

17   *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec.

18   18, 2018).  Here, the parties filed the supplemental agreement provisionally under seal.  *See* Dkt.

19   No. 244-3, Ex. 3.  Having reviewed the supplemental agreement, the Court concludes that the

20   termination provision does not preclude preliminary approval.

21         **v.**   **Obvious Deficiencies**

22         The Court also considers whether there are obvious deficiencies in the settlement

23   agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in

24   favor of preliminary approval.

25         \*   \*   \*

---

[4] *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements: 2021 Review and Analysis, Cornerstone Research (2022), available at https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf.

1  Having weighed the relevant factors, the Court preliminarily finds that the settlement
2 agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court
3 **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when
4 submitting their motion for final approval.

## IV.   PROPOSED PLAN OF ALLOCATION

The Court also must preliminarily approve the Plan of Allocation.  Such a distribution plan is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate.  *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Vinh Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (quotation omitted).

The Plan of Allocation here uses a "recognized loss" value that tailors the recovery of each class member to the timing of any sales or purchases of Bloom common stock relative to periods of alleged artificial inflation and corrective disclosures, as well as the number of shares at issue in each Class Member's claim.  *See* SA § 1.42, 4.1; *see also* Dkt. No. 237-5, Ex. A-1 at 13–18 (Plan of Allocation).  The Settlement Fund will thus be distributed on a pro rata basis according to each Class Member's recognized loss.  The Court preliminarily approves the allocation plan.

## V.   PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The notice may be sent by "United States mail, electronic means, or other appropriate means."  *Id.*  Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  The notice must clearly and concisely state in plain, easily understood language:

13

|   |   |
|---|---|
| (i) | the nature of the action; |
| (ii) | the definition of the class certified; |
| (iii) | the class claims, issues, or defenses; |
| (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
| (v) | that the court will exclude from the class any member who requests exclusion; |
| (vi) | the time and manner for requesting exclusion; and |
| (vii) | the binding effect of a class judgment on members[.] |

Fed. R. Civ. P. 23(c)(2)(B). In addition, the PSLRA requires that notice include (1) "[t]he amount of the settlement . . . determined in the aggregate and on an average per share basis," (2) "the average amount of [the] potential damages per share," (3) a statement of any fees or costs that counsel intends to seek from the settlement fund, (4) class counsel's contact information, and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7).

The parties have agreed that a third-party settlement administrator, Epiq Class Action and Claims Solutions, Inc., will send class notice via first-class mail to those Class Members who may be identified through reasonable efforts. Direct mail notification will be provided to all Class Members identified by Bloom, as well as to thousands of financial institutions, including brokerage firms, banks, and other third-party nominees, that regularly monitor proposed securities class action settlements. *See* Dkt. No. 237-16 ("Webb Decl.") at ¶¶ 11–13. All persons and entities identified as potential Class Members will be sent the Settlement Notice Postcard, which directs the recipient to a settlement website to find additional information regarding the Settlement Agreement and process. *Id.* Epiq will also publish the notice on the DTC Legal Notice System ("LENS"). *Id.* at ¶ 15. LENS allows participating banks and brokers to review the Settlement Notice Package and directly contact Epiq to obtain copies of the Settlement Notice Postcard for their clients who may be Class Members. *Id.* at ¶¶ 15–16. The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

The Court has also carefully reviewed the proposed notice, as revised, and is satisfied that it meets the requirements of the PSLRA and the Federal Rule of Civil Procedure 23(c)(2)(B). *See*

14

Dkt. No. 237-5, Ex. A-1 (Notice); Dkt. No. 237-7, Ex. A-3 (Summary Notice); Dkt. No. 237-8, Ex. A-4 (Postcard Notice). The notice clearly describes the nature of the case, the settlement, and the available options, including how to opt out of or object to the Settlement Agreement. *Id.* The notice also informs class members that Class Counsel will file a motion with the Court for attorneys' fees and costs.

To enable class members to review the motion for attorneys' fees and any request for an award to Plaintiffs, Class Counsel shall include language in the notice, including the Postcard Notice: (1) indicating the deadline for filing the attorneys' fees motion and request for an award to Plaintiffs; (2) specifically stating the deadline for any Class Member to object to these motions; and (3) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court therefore finds that with these changes, the content of the proposed notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## VI. CONCLUSION

The Court **GRANTS** the motion for preliminary approval. Dkt. No. 237. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall also be submitted to the Court within seven days of the date of this Order:

//
//
//
//
//
//

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above.

   **IT IS SO ORDERED.**

Dated: 10/31/2023

                _____
                HAYWOOD S. GILLIAM, JR.
                United States District Judge