Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Lead Counsel for Plaintiffs and the Class*

[additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELISSA M. ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLOOM ENERGY CORPORATION, KR SRIDHAR, RANDY FURR, L. JOHN DOERR, SCOTT SANDELL, EDDY ZERVIGON, PETER TETI, MARY K. BUSH, KELLY A. AYOTTE, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, CREDIT SUISSE SECURITIES (USA) LLC, KEYBANC CAPITAL MARKETS INC., MERRILL LYNCH, PIERCE, FENNER & SMITH IN CORPORATED, ROBERT W. BAIRD & CO., INCORPORATED, COWEN AND COMPANY, LLC, HSBC SECURITIES (USA) INC., OPPENHEIMER & CO. INC., RAYMOND JAMES & ASSOCIATES, INC., and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Case No. 4:19-cv-02935-HSG<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Honorable Haywood S. Gilliam, Jr.<br>Hearing Date: May 2, 2024<br>Hearing Time: 2:00 p.m.<br>Place: Courtroom 2, 4th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 2, 2024 at 2:00 p.m. pacific time, in the United States District Court, Northern District of California, Oakland Courthouse, Courtroom 2, 4th floor, Oakland California, the Honorable Haywood S. Gilliam, Jr. presiding, the Court-appointed Lead Plaintiff James Everett Hunt ("Lead Plaintiff") and additional plaintiffs Juan Rodriguez, Kurt Voutaz, Joel White, Andrew Austin, and Ryan Fishman (together with Lead Plaintiff, "Plaintiffs") will and hereby do move for an Order pursuant to Federal Rule of Civil Procedure 23 for entry of the [Proposed] Final Judgment Approving Class Action Settlement, as well as Final Judgment pursuant to Rule 54(b) against non-settling Defendant PricewaterhouseCoopers LLP ("PwC"), each of which are submitted herewith.[1]

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the terms of the proposed Settlement are fair, reasonable, and adequate, notice of the proposed Settlement has been disseminated in accordance with the Preliminary Approval Order, and there have been no objection to the Settlement to date. Accordingly, Plaintiffs request the Court grant final approval of the proposed Settlement of this Action and the proposed Plan of Allocation.

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows; the Stipulation and exhibits thereto; the Declaration of Nicholas I. Porritt ("Porritt Decl.") dated February 1, 2024; the Declaration of Susanna Webb (of proposed claims administrator Epiq Class Action and Claims Solutions, Inc.) ("Webb Decl."), dated January 31, 2024; the declaration of lead plaintiff James Hunt dated January 29, 2024; the pleadings

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated June 30, 2023 (ECF No. 237-3), or the concurrently filed Declaration of Nicholas I. Porritt in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Porritt Declaration").

and records on file in the Action; and all such other matters as the Court may consider in evaluating the Motion.[2]

---

[2] Defendants take no position with respect to this motion.

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.   Whether the Court should approve the proposed $3,000,000 million all cash, non-

3  reversionary settlement as fair, reasonable, and adequate under Rule 23(e).

4      2.   Whether the Court should approve the Plan of Allocation as fair and reasonable.

5      3.   Whether the Court should finally certify the Action as a class action pursuant to Rules

6  23(a) and (b)(3) for settlement purposes only.

7      4.   Whether Final Judgment should be entered by the Court in the form attached hereto.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     THE LITIGATION AND SETTLEMENT .............................................................. 2

    A.   Procedural Background ................................................................................ 2

    B.   Mediation Efforts and Settlement Negotiations ......................................... 5

III.    STANDARDS FOR FINAL APPROVAL UNDER RULE 23€ AND *HANDLON*............. 5

IV.     ARGUMENT ......................................................................................................... 7

    A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors ....................................... 7

       1.   Plaintiffs and Lead Counsel Adequately Represented the Settlement Class ................... 7

       2.   The Settlement Is The Result Of Arm's-Length Negotiations........................................ 8

       3.   The Settlement Is An Excellent Result For the Settlement Class In Light of The Benefits of The Settlement And The Risks of Continued Litigation ....................................... 9

       4.   The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval ....................................... 12

       5.   The Settlement Treats All Settlement Class Members Equitably Relative To Each Other 13

       6.   The Positive Reaction Of The Settlement Class Supports Settlement Approval ........... 14

       7.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval .... 14

    B.   The Plan Of Allocation Is Fair And Reasonable ................................................. 17

    C.   The Settlement Class should Be Finally Certified ............................................. 19

    D.   The Notice Program Satisfies Rule 23 and Due Process .................................... 19

    E.   The Court Should Also Enter Separate Judgment Against Non-Settling Defendant PwC. 19

V.      CONCLUSION ................................................................................................... 20

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

*Christine Asia Co. v. Yun Ma,*
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................................... 13

*Churchill Vill., L.L.C. v. Gen. Elec.,*
   361 F.3d 566 (9th Cir. 2004)................................................................................................... 9

*City of Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2nd Cir. 1974).................................................................................................. 15

*Garner v. State Farm Mut. Auto. Ins. Co.,*
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................................................................... 6

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998)......................................................................................... 1, 7, 9, 17

*Hefler v. Wells Fargo & Co.,*
   2018 WL 6619983 (N.D. Cal. 2018).............................................................................. 6, 12, 15

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
   298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................ 11

*In re American Apparel, Inc. Shareholder Litig.,*
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................................................ 12

*In re Apple Computer Sec. Litig.,*
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................................ 11

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011)................................................................................................... 9

*In re BP p.l.c. Sec. Litig.,*
   852 F. Supp. 2d 767 (S.D. Tex. 2012) ................................................................................... 11

*In re Carrier IQ, Inc., Consumer Privacy Litig.,*
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)......................................................................... 13

*In re Extreme Networks, Inc. Sec. Litig.,*
   2019 WL 3290770 (N.D. Cal. July 22, 2019) ........................................................................... 7

*In re Heritage Bond Litig.,*
   2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................................... 16, 19

*In re Immune Response Sec. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................................. 11

*In re Mego Fin. Corp. Sec. Litig.,*
   213 F.3d 463 (9th Cir. 2000)......................................................................................... 13, 15, 16

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................... 8

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................... 5, 12, 14, 17

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ..................................................................................... 7

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ....................................................................................... 5

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................... 10

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ................................................................................ 10

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................... 11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ........................................................... 16

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) ......................................................................... 9

*Maley v. Del Global Tech. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 17

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................................. 7

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............................................................ 7

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................................. 11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................................... 8

*Schueneman v. Arena Pharmaceuticals, Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020) ........................................................... 17

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................................................... 15

*Tan Chao v. William*,
  2020 WL 763277 (2d Cir. Jan. 2, 2020) .................................................................... 13

*Thomas v. MagnaChip Semiconductor Corp.*,
  2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ........................................................... 13

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................................................. 16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ....................................................................................... 5

*Vikram v. First Student Management, LLC*,
  2019 WL 1084169 (N.D. Cal. March 7, 2019) ........................................................... 15

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................... 14

*Wong v. Arlo Technologies, Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .......................................................... 6, 9

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .............................................................. 14

**Rules**

Fed. R. Civ. P. 23(b) ............................................................................................................. 19

Fed. R. Civ. P. 23(c) ............................................................................................................. 19

Fed. R. Civ. P. 23(e) ...................................................................................................... passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants Bloom Energy Corporation ("Bloom"), KR Sridhar, Randy Furr, L. John Doerr, Scott Sandell, Eddy Zervigon, Peter Teti, Mary K. Bush, Kelly A. Ayotte, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Credit Suisse Securities (USA) LLC, KeyBanc Capital Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Cowen and Company, LLC, HSBC Securities (USA) Inc., Oppenheimer & Co. Inc., Raymond James & Associates, Inc., and Robert W. Baird & Co. Incorporated (collectively, the "Settling Defendants") in exchange for a cash payment of $3,000,000 (the "Settlement Amount"). Porritt Decl. ¶¶ 8-9.  The terms of the Settlement are set forth in the Stipulation (ECF No. 237-3), which was preliminarily approved by the Court on October 31, 2023. *Id*., at ¶28.

The $3,000,000 Settlement is procedurally fair, as it is the product of arm's-length negotiations helped facilitated by the with experienced Phillips ADR mediator Michelle Yoshida and was only achieved after years of hard-fought litigation against skilled defense counsel.  The Settlement is also substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action, and meaningfully assessed the risks of establishing liability and damages. Porritt Decl. ¶14.  Indeed, as described in greater detail in the Porritt Declaration, before agreeing to the Settlement, Lead Counsel, among other things: (i) conducted comprehensive investigations prior to the filing two amended complaints (the operative pleading being the Corrected Second Amended Complaint (ECF No. 237-10)); (ii) fully briefed the Defendants' three motion(s) to dismiss the amended complaint; (iii) reviewed over 13,200 documents totaling 171,500 pages; (iv) briefed requests for interlocutory appeal; (v) briefed the motion for class certification; (vi) defended the deposition of the lead plaintiff; (vii) briefed and participated in extensive mediation; and (viii) negotiated the Settlement. Porritt Decl. ¶¶26-27. While the mediation

efforts were initially unsuccessful, the Parties continued to negotiate in good faith and came to an agreement in principle in January 2023. *Id.*, at ¶27.

Based on this substantial work and Lead Counsel's experience, Plaintiffs and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and instead provides a fair and immediate cash recovery—is in the best interests of the Settlement Class. Porritt Decl. ¶14; *see* Hunt Decl.

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval. Approximately 67,333 copies of the Postcard Notice have been sent to potential Settlement Class Members and their nominees, and, to date, no objections or requests for exclusion have been received or entered on the docket. Webb Decl., ¶¶ 10, 17-18.

Finally, the Plan of Allocation reflects an assessment of the damages that Plaintiffs contends could have been recovered under the theories of liability and damages asserted in the Action. Porritt Decl. ¶¶ 46-51. The Plan of Allocation ties each participating Settlement Class Member's recovery to when the securities were acquired and sold and is a fair and reasonable method for distributing the Net Settlement Fund. *Id.*, at ¶¶ 52-54. The Plan of Allocation thus warrants approval.

For these reasons, as well as those set forth below and in the Porritt Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation, grant final certification of the Settlement Class for settlement purposes, and enter Final Judgment resolving the claims asserted against the Settling Defendants.

## II.     THE LITIGATION AND SETTLEMENT[3]

### A.     Procedural Background

Bloom traded on the NASDAQ under the ticker symbol "BE" during the Class Period. On May 28, 2019, a class action complaint was filed in the United States District Court for the Northern District of California. *Id.,* at ¶17. On September 3, 2019, the Court issued an Order (1) appointing James

---

[3] The Porritt Declaration submitted in connection with Plaintiffs' motion for final approval is an integral part of this submission. For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, inter alia, the factual and procedural history of the Action (¶¶17-28); the nature of the claims asserted (¶¶19-24); the motions to dismiss and appeal attempts (¶25); discovery, class certification, and settlement negotiations (¶¶26-28); and the risks and uncertainties of continued litigation (¶¶29-36).

Evertt Hunt as the Lead Plaintiff for the Action; and (2) approving Plaintiffs' selection of Levi & Korsinsky, LLP as Lead Counsel for the proposed plaintiff class. *Id.,* at ¶18.

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) a detailed review of Bloom's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Bloom; (iii) research reports by securities and financial analysts; (iv) economic analyses of stock price movement and pricing data; (v) through a private investigator, conducting numerous fact interviews with former employees and other third parties; and (vi) review and analysis of other publicly available material and data. *Id.,* at ¶19. As part of this investigation, Lead Counsel also consulted with an expert in the field of damages. *Id.*

In preparation for filing the amended complaint, Lead Plaintiff continued to investigate Bloom's operations, including talking with Dwight Badger, the co-founder of Advanced Equities, a now-defunct brokerage firm that raised over $200 million for Bloom almost ten years before the company's initial public offering in July 2018. Lead Plaintiff believed that Mr. Badger possessed relevant information that "would be materially beneficial for the purposes of establishing liability." *Id.,* at ¶20. However, Mr. Badger believed he was unable to assist Lead Plaintiff due to the confidentiality provision in a 2014 Settlement Agreement between Bloom and Mr. Badger. *Id.*

On November 4, 2019, Plaintiffs filed and served the First Amended Complaint against Bloom Energy and certain officers and directors. *Id.,* at ¶22. While the First Amended Complaint was pending, Bloom Energy filed its Form 10-K for 2020 which restated certain financials. Lead Counsel conducted an additional extensive factual investigation, which included: (a) a detailed review of (i) Bloom Energy's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Bloom Energy; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private investigator, conducting numerous fact interviews with former employees and other third parties; (c) a review and analysis of other publicly available material and

data; and (d) consulting with experts in the field of damages and accounting. *Id.,* at ¶23.

On April 21, 2020, Lead Plaintiff Hunt and additional plaintiffs Juan Rodriguez, Kurt Voutaz, Scott Kline, Joel White, Andrew Austin, and Ryan Fishman filed the Second Amended Complaint against Bloom, KR Sridhar, Randy Furr, L. John Doerr, Scott Sandell, Eddy Zervigon, General Colin L. Powell, Peter Teti, Mary K. Bush, Kelly A. Ayotte, the Underwriter Defendants, and adding PwC as an additional defendant. *Id.,* at ¶24. Specifically, the Second Amended Complaint alleges that the Registration Statement for its initial public offering, Bloom i) improperly accounted for loss contingencies relating to its Energy Servers; ii) improperly accounted for revenue; iii) failed to review weaknesses in its internal controls; iv) misrepresented the life cycle of its fuel cells; v) misled investors as to construction delays affecting its business; and vi) misrepresented the efficiency and pollution output of its Energy Servers. *Id.* Plaintiffs further alleged that PwC, as Bloom's Auditor, is liable under Section 11 for alleged misrepresentations in the audited financial statements in Bloom's Registration Statement. *Id.* Hagens Beman Sobol Shapiro LLP was also added as additional counsel. *Id.*

On July 1, 2020, three separate motions to dismiss the Second Amended Complaint were filed by Bloom, the Individual Defendants, the Underwriter Defendants, and PwC. *Id.,* at ¶25. On September 29, 2021, the Court granted in part and denied in part the motions to dismiss. ECF No. 157. The Court: (1) granted the motion to dismiss the 10(b) claims; (2) granted PwC's motion to dismiss all the claims against it; and (3) granted in part and denied in part the other defendants' motion to dismiss claims under Section 11. *Id.* Specifically, the Court granted in part the Section 11 Defendants' motion to dismiss based on accounting errors, fuel cell life, emissions, and internal controls, but denied the motion to dismiss the Second Amended Complaint based on Bloom's statements in Bloom's Registration Statement about their Energy Servers' efficiency and construction delays. *Id.* The Court dismissed the accounting allegations against all the defendants—which resulted in PwC being entirely dismissed from the action. *Id.* Accordingly, the sole remaining misrepresentations as to the remaining defendants relate to (a) a risk disclosure concerning construction delays, and (b) a statement that Bloom's latest-generation Energy Servers were capable of beginning-of-life efficiency of 65%. *Id.* Plaintiffs twice sought an immediate appeal, first moving for entry of judgment under Rule 54(b) and then moving for interlocutory appeal under U.S.C. § 1292(b). The Court denied both motions. *Id.*

1    Plaintiffs accordingly litigated the narrowed case that remained. Plaintiffs served written

2    discovery on Defendants and 49 non-party subpoenas on Bloom's customers. *Id.,* at ¶26. Plaintiffs

3    received and reviewed over 13,200 documents totaling 171,500 pages. *Id.* Between March and June

4    2022, the parties conducted depositions and briefed class certification, and the Court heard argument

5    on June 30, 2022. *Id.* The Court has not ruled on the motion, which has been terminated as moot subject

6    to final approval of the Settlement on March 16, 2023. *Id.*

7              **B.       Mediation Efforts and Settlement Negotiations**

8              In conjunction with Plaintiffs' discovery efforts, the Settling Parties began discussing

9    mediation in August 2022, and ultimately agreed to mediate with Phillips ADR mediator Michelle

10   Yoshida. The parties agreed to targeted discovery to assess the strengths and weaknesses of the

11   remaining claims in connection with a possible mediation. *Id.,* at ¶27.The parties exchanged two

12   rounds of mediation briefs supported by evidence obtained in discovery. *Id.* On December 20, 2022,

13   the Settling Parties attended a full-day virtual mediation. *Id.* The Settling Parties did not reach a

14   settlement during the mediation but continued to engage in post-mediation discussions with Ms.

15   Yoshida. *Id.* On January 4, 2023, Ms. Yoshida made a mediator's proposal, which the Settling Parties

16   accepted. *Id.* On January 11, 2023, the Court stayed all discovery and case deadlines considering the

17   pending Settlement. *Id.* The Settling Parties subsequently negotiated a term sheet and stipulation of

18   settlement. *Id.*

19   **III.     STANDARDS FOR FINAL APPROVAL UNDER RULE 23€ AND *HANDLON*.**

20             Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

21   settlement of class action claims and states that a class action settlement should be approved if the

22   court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit and

23   throughout the country, "there is a strong judicial policy that favors settlements particularly where

24   complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

25   Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an

26   overriding public interest in settling and quieting litigation," and this is "particularly true in class action

27   suits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court

28   must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law

suits.").  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation.  The settlement of complex cases also contributes to the conservation of scarce judicial resources.  *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

Rule 23(e)(2)—which governs final approval—requires courts to consider several factors in determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918.  "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Technologies, Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021).  "That test includes the following factors:

[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Hanlon*); *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (same).

As explained below and in the Porritt Declaration, application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants Court approval.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and

class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel, Levi & Korsinsky, has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, among other things, conducting two extensive investigation of the claims through a detailed review of all publicly available documents as well as numerous interviews with former employees and third parties, drafting two amended complaints, litigating three motions to dismiss, engaging in discovery, drafting and arguing a motion for class certification, participating in a hard-fought arm's-length mediation, and obtaining a $3,000,000 Settlement for the benefit of the Settlement Class following a dismissal order. Porritt Decl. ¶¶ 24-29.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Plaintiffs as Class Representative and Levi & Korsinsky as Class Counsel, Plaintiffs and Class Counsel have adequately represented the Settlement Class.  *See* Preliminary Approval Order ECF No. 245.  This factor supports final approval of the Settlement.

### 2.    The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness; that "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").

Here, Lead Counsel engaged in rigorous settlement negotiations with counsel for the Defendants in a process assisted by an experienced, well-respected Mediator.  Porritt Decl. ¶¶ 13, 27. This included multiple calls with the mediator and the exchange of settlement offers. *Id*. While the mediation efforts were initially unsuccessful, the Parties continued to negotiate in good faith and

signed a stipulation of settlement on June 30, 2023 (the "Stipulation"). Porritt Decl. Porritt Decl. ¶¶2, 27.

It is also important to note that the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"). Accordingly, this factor militates in favor of final approval.

### 3. The Settlement Is An Excellent Result For the Settlement Class In Light of The Benefits of The Settlement And The Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor), and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026). As discussed below, each of these factors supports the Settlement's approval.

#### a. The Strength of Plaintiffs' Case and Risk Of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

The risks of continued litigation here were considerable, and there was a high likelihood that the Class would receive nothing. In considering the Settlement, Plaintiffs and Lead Counsel weighed the risks inherent in succeeding on appeal and establishing all the elements of the claims, as well as the likely further expense and duration of the Action. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement). Here, the risks were extremely real as the Court

had already dismissed most of the allegations in the Second Amended Complaint.  Porritt Decl. ¶ 25. Further, there were also substantial risks to success at class certification, summary judgment and trial. *Id.*, at ¶¶ 35-36.

Defendants adamantly deny any wrongdoing, and as in their motions to dismiss, were prepared to make a multi-pronged defense against Plaintiffs' claims. *Id.*, at  ¶¶ 30-34.  Although Plaintiffs and Lead Counsel believe that this case has substantial merit, they recognize the significant risks associated with the case, specifically concerning the completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.  *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims").  Likewise, the determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert testimony.  *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages.").

Continued litigation would be uncertain, complex, costly, and lengthy—additional depositions would have had to be taken, experts would need to be designated and expert discovery completed, Defendants' expected summary judgment motion(s) would have to be successfully briefed and argued, and trials are innately expensive, risky, and uncertain. Porritt Decl. ¶35.  Moreover, any judgment favorable to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong the case for years with the ultimate outcome uncertain. *Id.*, at ¶36.  By contrast, the $3,000,000 Settlement provides a favorable, immediately realizable recovery and eliminates all the risk, delay, and expense of continued litigation. *Id.*, at ¶9. An evaluation of the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citation omitted).

There is no better indication of the future risks Plaintiffs faced in continuing litigation than that of the Court's dismissal of the majority of its claims.  *See In re Xcel Energy, Inc., Sec., Deriv. &*

1    *"ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than

2    its own order dismissing the shareholder … litigation to assess the risks involved."); *see also In re BP*

3    *p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal

4    legislation and authoritative precedents have created for plaintiffs in all securities actions formidable

5    challenges to successful pleading.").

6          On top of those risks, assuming the parties did not settle, a further escalation of risks would

7    have followed.  For example, to defeat a summary judgment motion and prevail at trial, Plaintiffs

8    would have to prove by a preponderance of the evidence, among other things, that: (i)  Defendants

9    made false and/or misleading statements in their IPO Registration Statement; and (ii) the alleged

10   putative class suffered damages as a result of such false statements.  Although Plaintiffs and Lead

11   Counsel believe that the case has merit, they recognize establishing liability beyond the pleading stage

12   is uncertain. Porritt Decl. ¶30; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172

13   (S.D. Cal. 2007) (approving settlement and noting that "the Court also recognizes that the issues of

14   scienter and causation are complex and difficult to establish at trial.").

15         Moreover, any judgment favorable to the Settlement Class likely would be the subject of post-

16   trial motions and appeal, which could prolong the case for years with the ultimate outcome

17   uncertain.  *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)

18   (overturning jury verdict for plaintiffs after extended trial); *Robbins v. Koger Props., Inc.*, 116 F.3d

19   1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on

20   appeal on loss causation grounds and judgment entered for defendant).

21         In sum, continued litigation would be risky and uncertain, and assuming the litigation were

22   even able to proceed past the pleading stage, it would be complex, costly, and lengthy.  By contrast,

23   the $3,000,000 Settlement provides a favorable, immediately realizable recovery and eliminates all the

24   risks of continued litigation.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176

25   (S.D.N.Y. 2014) ("[t]he present value of a certain recovery at this time, compared to the slim chance

26   for a greater one down the road, supports approval of a settlement that eliminates the expense and

27   delay of continued litigation, as well as the significant risk that the Class could receive no recovery").

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.**    **Risks Of Maintaining Class Action Status**

While Plaintiffs and Lead Counsel are confident the Class meets the requirements for certification, a class had not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree. Furthermore, "[e]ven if the Court were to certify a class, there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).  "Because there was a risk that the court would not have certified a class in the first place had the parties not settled, and a further risk that, even if it did, that class might later have been decertified, this factor too weighs in favor of approving the settlement."  *In re American Apparel, Inc. Shareholder Litig*., 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

**4.**    **The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval**

Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

**Rule 23 (e)(2)(C)(ii):** Here, the method for processing Settlement Class Members' claims and distributing the Net Settlement Fund to eligible claimants is well-established and effective.  Epiq Class Action and Claims Solutions, Inc. ("Epiq"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims, or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See Hefler*, 2018 WL 6619983, at *12; *Thomas v. MagnaChip*

*Semiconductor Corp.*, 2017 WL 4750628, at *8 (N.D. Cal. Oct. 20, 2017) (approving similar plan of distribution).

**Rule 23(e)(2)(C)(iii):** The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees is taken into account. As detailed in the accompanying Fee Memorandum, a proposed attorneys' fee of 30% ($900,000) of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. The proposed attorneys' fee is also consistent with awards in similar complex class action cases. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶ 7.5.

**Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Plaintiffs noted in their preliminary approval papers, Plaintiffs and Bloom entered into a confidential agreement that establishes certain conditions pursuant to which Bloom may terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion (or "opt out") from the Settlement Class meet the conditions set forth in the agreement. This agreement was filed with the Court under seal on October 30, 2023. ECF No. 244-3. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### 5. The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. The

formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the Securities Act and the Exchange Act and takes into consideration when each Claimant purchased and/or sold shares of Bloom Energy common stock. Plaintiffs will receive the same level of *pro rata* recovery, based on their Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members. ¶¶ 56-65. Accordingly, this factor favors final approval of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### 6.  The Positive Reaction Of The Settlement Class Supports Settlement Approval

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. As required by Rules 23 (e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement. Webb Decl., Ex. B. Approximately 67,333 copies of the Postcard Notice have been distributed to potential Settlement Class Members and the Summary Notice was published in *Investor's Business Weekly* and transmitted over the *PR Newswire*, a national online newswire service. *Id.* ¶¶ 10, 12. To date, no requests for exclusion have been received, and no objections have been filed with the Court. *Id.* ¶¶ 17-18. The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members.").

### 7.  The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

**The Amount Offered In Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Wells Fargo*, 2018 WL 6619983, at *8. "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Indeed, "[t]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 n.2 (2nd Cir. 1974); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.").

Here, Plaintiff's damages expert estimates that if Plaintiffs had prevailed on their allegations, and (i) Plaintiffs survived motion(s) for summary judgment on all elements and also convinced a jury that liability was proven; and (ii) the Court and jury accepted Plaintiffs' damages theory, including defeating Defendants' affirmative defenses as to each stock price drop dates alleged in this case—*i.e.*, Plaintiff's *best case scenario*—the total *maximum* damages would be approximately $57.8 million. Porritt Decl. ¶ 33. Of course, less than a complete victory on any aspect of these assumptions would decrease recoverable damages, and each element at issue (including Defendants' affirmative causation defenses) was strongly contested by Defendants. Under such a scenario, the $3,000,000 recovery represents approximately 5.2% of the estimated maximum damages potentially available in this Action. Porritt Decl. ¶ 11.

Especially in the light of these risks, the percentage of recovery is reasonable and well within the range of other securities class action settlements, especially given the procedural history and stage of the litigation. *Id.* Of course, Defendants would have continued to challenge all aspects of the case, and given the current procedural posture of the case, the prospect that Plaintiffs would have obtained

*any* recovery was far from guaranteed. *Id.* at ¶¶29-36. Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of approval.

**The Extent Of Discovery Completed And The Stage Of The Proceedings**: "In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d at 459 (9th Cir. 2000). "Instead, courts look for indications the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

Here, Lead Counsel conducted an extensive investigation into the claims asserted in this Action, which included a far-reaching review of publicly available information, significant work with a private investigator who conducted numerous fact interviews with former employees and other third parties, and consultation with experts in the fields of financial analysis, loss causation, and damages. Porritt Decl. ¶19. Additionally, Lead Counsel filed the First Amended Complaint, filed the Second Amended Complaint, opposed Defendants' three motion(s) to dismiss, engaged in fact discovery, participated in a mediation process, and reviewed and analyzed the Court's decisions. Porritt Decl. ¶¶20-25. As a result of these efforts, Plaintiffs and Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, and the significant risks to establishing liability and damages. This understanding enabled Plaintiffs and Lead Counsel to negotiate the Settlement intelligently and responsibly. *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiff (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the . . . industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

**The Experience And Views Of Counsel:** "The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation." *Id.*

1        As discussed above, Lead Counsel has a thorough understanding of the merits and weakness

2   of the claims, as well as extensive prior experience litigating securities class action cases.  Under such

3   circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the best

4   interests of the Settlement Class likewise supports the Settlement's approval.  *See In re Omnivision*,

5   559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation in favor of

6   settlement presumptively reasonable because counsel demonstrated knowledge about the case and

7   securities litigation in general).

8        **The Presence Of A Governmental Participant** "Because no government entities are

9   participants in this case, this factor is neutral." *Amgen*, 2016 WL 10571773, at \*4.

10        As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a

11   finding that the Settlement is fair, reasonable, and adequate, or is neutral.  Final approval is, therefore,

12   appropriate.

13       **B.     The Plan Of Allocation Is Fair And Reasonable**

14        Plaintiffs also request final approval of the Plan of Allocation.  A plan of allocation in a class

15   action "is governed by the same standards of review applicable to approval of the settlement as a

16   whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  The

17   allocation formula used in a plan of allocation "need only have a reasonable, rational basis, particularly

18   if recommended by experienced and competent counsel." *Maley v. Del Global Tech. Corp.*, 186 F.

19   Supp. 2d 358, 367 (S.D.N.Y. 2002).  "A plan which fairly treats class members by awarding a *pro rata*

20   share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter*

21   *alia*, the relative strengths and weaknesses of class members' individual claims and the timing of

22   purchases of the securities at issue should be approved as fair and reasonable." *Schueneman v. Arena*

23   *Pharmaceuticals, Inc.*, 2020 WL 3129566, at \*7 (S.D. Cal. June 12, 2020).

24        The Plan of Allocation, as detailed in ¶¶39-54 of the Porritt Declaration, and set forth in the

25   Notice (Webb Decl., Ex. B). Under the proposed Plan of Allocation, each Authorized Claimant will

26   receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*,

27   the $3 million Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii)

28

Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court.

The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of Bloom Energy common stock and the decline that occurred in the price of the stock. Porrit Decl. ¶ 50; Webb Decl., Ex. B at ¶ 48. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Bloom Energy common stock the Claimant purchased, acquired, or sold during the Settlement Class Period. If a Claimant purchased and sold shares prior to a corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero. *Id.*; Webb Decl., Ex. B at ¶ 49. This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective. Porrit Decl. ¶ 53; Webb Decl., Ex. B at ¶ 60. When it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed—subject to Court approval—to the Bay Area Financial Education Foundation. *Id.* The Bay Area Financial Education Foundation is a 501(c)(3) nonprofit organization devoted to financial education on Title I schools and low to moderate income communities, at-risk youth, and organizations that support BIPOC students; bringing financial literacy to those who need it most. Part of its financial curriculum is a module titled "Basics of Investing" which involves "foundational investing principles, including stocks, bonds, index funds, and exchange-traded funds." https://www.bafef.org/modules. Therefore, this is a proper *cy pres* recipient because of the nature of the securities fraud claims asserted in the Action

Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims. *Id.* at ¶54. To date, no objections to the Plan of Allocation have been received by Lead Counsel or filed on this Court's docket. *Id.* at ¶¶7, 45. Accordingly, Plaintiffs respectfully request that the Court approve the

proposed Plan of Allocation. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

### C.  The Settlement Class should Be Finally Certified

The Court's October 31, 2023 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). Porrit Decl. ¶28. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 237), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D.  The Notice Program Satisfies Rule 23 and Due Process

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This Court has already found that the proposed notice program is adequate and sufficient (*see* Preliminary Approval Order, ECF No. 245), and Lead Counsel and Epiq carried out the notice program as proposed. *See* Webb Decl., at ¶¶4-16.  The Settlement Class has, therefore, received "the best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

### E.  The Court Should Also Enter Separate Judgment Against Non-Settling Defendant PwC.

The claims against non-settling Defendant PwC were completely dismissed in the Court's September 29, 2021 Order on the three motions to dismiss. Porritt Decl. ¶26. As part of the Settlement, Plaintiffs have explicitly preserved their right to appeal the Court's order dismissing PwC. *See* ECF No. 237-3 (Stipulation) ¶¶ 1.44, 1.46, 3.2. Accordingly, Plaintiffs respectfully request the Court enter the accompanying separate final judgment against PwC pursuant to Rule 54(b).

1

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed

motion for final approval of the Settlement and approve the proposed Plan of Allocation.

Dated: February 1, 2024                         Respectfully submitted,

                                               **LEVI & KORSINSKY, LLP**

                                        */s/ Nicholas I. Porritt*                         .
Nicholas I. Porritt
Max E. Weiss
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7171
Email: nporritt@zlk.com
Email: mweiss@zlk.com
(*admitted pro hac vice*)

Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
Telephone: (415) 373-1671
Email: aapton@zlk.com
Email: amccall@zlk.com

*Lead Counsel for Plaintiffs and the Class*

-and-

Reed R. Kathrein (SBN 139394)
Lucas Gilmore (SBN 250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel:    (510) 725-3000
Email: reed@hbsslaw.com
Email: lucasg@hbsslaw.com

Steve W. Berman
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com
(to be *admitted pro hac vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Additional Counsel for Plaintiffs and the Class*