UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EVERETT HUNT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BLOOM ENERGY CORPORATION, et al.,<br><br>    Defendants. | Case No. 19-cv-02935-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 253, 254 |

Pending before the Court are Plaintiffs' unopposed motions for final approval of class action settlement and for attorneys' fees and costs. Dkt. Nos. 253, 254. The Court held a final fairness hearing on May 2, 2024. For the reasons detailed below, the Court **GRANTS** the motions.

**I.    BACKGROUND**

    **A.    Factual Allegations and Procedural Background**

Lead Plaintiff James Everett Hunt and Plaintiffs Juan Rodriguez, Kurt Voutaz, Joel White, Andrew Austin, and Ryan Fishman purchased shares of Defendant Bloom Energy Corporation's common stock either (1) when Bloom went public through an Initial Public Offering ("IPO") on July 25, 2018; or (2) on the public market between July 25, 2018, and March 31, 2020. *See* Dkt. No. 237-10, Ex. C ("CSAC") at ¶¶ 1–2, 8–14, 50–51. Plaintiffs brought this action against Bloom and certain of its officers and directors, as well as its underwriters and auditors, regarding alleged misrepresentations and omissions in Bloom's IPO Registration Statement. *See id.* at ¶¶ 3, 52. Plaintiffs alleged that the Registration Statement misrepresented and failed to disclose, *inter alia*, (1) that Bloom was already facing significant construction delays that were interfering with its installations; and (2) issues regarding the efficiency of its Energy Server technology (*i.e.*, the rate

at which fuel is converted into electricity). *See id.* at ¶¶ 3, 53–104, 137–417. Based on these allegations, Plaintiffs asserted violations of the federal securities laws under Sections 11 and 15 of the Securities Act of 1933; Sections 10(b) and 20(a) of the Securities Exchange Act of 1934; and SEC Rule 10b-5. *See id.* at ¶¶ 105–36, 499–514.

In September 2021, the Court granted in part and denied in part the three motions to dismiss the second amended complaint. *See* Dkt. No. 157. As relevant to the settlement in this case, the Court (1) dismissed the Section 10(b) claims in their entirety; (2) dismissed all the claims against PricewaterhouseCoopers ("PwC"), Bloom's independent auditor; and (3) dismissed the Section 11 claims against all remaining Defendants as to all but two challenged statements. *See id.* Because Plaintiffs chose not to amend, the only claims that remained were those under Section 11 regarding the alleged misrepresentations about construction delays and the efficiency of Bloom's Energy Servers. *See* Dkt. No. 159 at 4.[1]

The Court subsequently denied Plaintiffs' motion for entry of judgment under Federal Rule of Civil Procedure 54(b) regarding the accounting-based claims against PwC and the other Defendants, *see* Dkt. No. 167, as well as Plaintiffs' motion to certify the motion to dismiss order relating to the Section 11 accounting claims for interlocutory appeal under 28 U.S.C. § 1292(b), *see* Dkt. No. 188. The parties, except PwC,[2] continued to engage in discovery, brief class certification, and discuss the possibility of settlement. *See* Dkt. No. 237-1 at ¶¶ 4, 16–19.

In December 2022, the parties participated in a full-day mediation with Phillips ADR mediator Michelle Yoshida. *See* Dkt. No. 237 at 11. The parties ultimately entered into a settlement agreement, fully executed in June 2023. *See* Dkt. No. 237-3, Ex. 1 ("SA" or "Settlement Agreement"). Plaintiffs filed a motion for preliminary approval on June 30, 2023, *see* Dkt. No. 237, and the Court granted the motion on October 31, 2023, *see* Dkt. No. 245. The parties now seek final approval of the class action settlement, and Plaintiffs seek attorneys' fees

---

[1] All references to page numbers in filings are to the ECF pagination at the top of the document.
[2] As described in the Court's preliminary approval order, the settlement in this case did not involve PwC since the claims against it were dismissed in their entirety. *See* Dkt. No. 245 at 2 n.2. As part of their motion for final approval, Plaintiffs have submitted a proposed judgment as to PwC. *See* Dkt. No. 253-5. The Court's later references in this order to "parties," therefore, do not include PwC unless explicitly stated.

and costs. *See* Dkt. Nos. 253, 254.

**B.     Settlement Agreement**

The key terms of the Settlement Agreement are as follows:

<u>Class Definition</u>:  The Settlement Class is defined as "all Persons and entities that purchased or otherwise acquired Bloom Energy Corporation's publicly traded common stock either (i) pursuant and/or traceable to the Registration Statement for Bloom's IPO or (ii) on the open market between July 25, 2018, and March 31, 2020, and were damaged thereby." SA § 1.51.

<u>Settlement Benefits</u>:  Defendant will make a $3,000,000 non-reversionary payment. SA §§ 1.50, 1.53, 2.1–2.3.  The settlement fund includes notice and administration expenses, taxes and tax expenses, Court-approved attorneys' fees and costs, any award to Plaintiffs as allowed under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and any other Court-approved fees or expenses. *Id.* at §§ 1.5, 1.29, 2.2, 7.2–7.3.  Payments to class members will be distributed per the allocation plan on a pro rata basis. *Id.* at §§ 6.1–6.2.  Each class member must submit a proof of claim and release form to the Claims Administrator to be eligible for payment. *Id.* at §§ 1.6, 1.40; *see also* Dkt. No. 237-6, Ex. A-2 (Claim Form).  Payments will be calculated based on the "recognized loss" for each share, using a method that accounts for that portion of the losses on Class Period purchases of Bloom shares that can be fairly attributed to the alleged misconduct in the CSAC. SA §§ 1.42, 4.1; *see also* Dkt. No. 237-5, Ex. A-1 at 13–18 (Plan of Allocation).

*Cy Pres* <u>Distribution</u>:  Defendants will not have a reversionary interest in the settlement fund if there is a balance remaining after distribution. SA § 4.15.  Instead, additional distributions will be made to authorized claimants. *Id.*  Any remaining balance six months after such re-distribution will be donated to the Bay Area Financial Education Foundation.  *See* Dkt. No. 242.

<u>Release</u>:  All Settlement Class Members will release Defendants and their subsidiaries from:

> any and all claims, rights, demands, obligations, damages, actions or causes of action, or liabilities whatsoever, of every nature and description, including both known claims and Unknown Claims, that have been or could have been asserted in this Action, or any other action arising under the federal securities laws, that (a) arise out of,

> are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to in this Action, or which could have been alleged in this Action, or (b) arise out of, are based upon, or relate in any way to the purchase, acquisition, sale, disposition, or holding of any Bloom securities acquired pursuant and/or traceable to Bloom's July 24, 2018 IPO Registration Statement or on the open market between July 25, 2018 and March 31, 2020, <u>provided</u>, however, that the following are expressly excluded from the definition of Released Claims: all claims that have been or may in the future be brought against PwC. In addition, "Released Claims" does not include any claims to enforce any of the terms of this Stipulation.

SA § 1.44.

<u>Attorneys' Fees and Costs</u>: Class Counsel will file an application for attorneys' fees not to exceed 33% of the settlement fund, or $990,000. SA §§ 1.20, 7.2.

<u>Opt-Out Procedure</u>: Any class member who wishes to opt out of the Settlement must submit a timely request for exclusion. SA §§ 8.1–8.2. The timing for opt outs and objections to the Settlement was set at least 45 days after the filing of the motion for attorneys' fees in a separate scheduling order. *See* Dkt. No. 249. Defendants retain the right to withdraw if the number of opt-outs reaches an agreed-upon threshold. SA § 1.32. The threshold is set out in a confidential supplemental agreement. *Id.*

## II.   DISCUSSION

### A.   Final Settlement Approval

#### 1.   Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on October 31, 2023, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 245 at 4–7.

#### 2.   The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only

1    after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.
2    23(e)(2).  Where the parties reach a class action settlement prior to class certification, the Ninth
3    Circuit has cautioned that such settlement agreements "must withstand an even higher level of
4    scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under
5    Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944
6    F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d
7    935, 946 (9th Cir. 2011)).  "This more exacting review is warranted to ensure that class
8    representatives and their counsel do not secure a disproportionate benefit at the expense of the
9    unnamed plaintiffs who class counsel had a duty to represent." *Id*. (internal quotations marks and
10   citations omitted).

11   The Ninth Circuit has identified several "subtle signs" the Court should consider in
12   determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect
13   the negotiations." *Roes*, 944 F.3d at 1043 (citations omitted).  These include: "(1) when counsel
14   receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-
15   sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-
16   upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns
17   unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th
18   594, 607–08 (9th Cir. 2021) (citation omitted).

19   To assess whether a proposed settlement comports with Rule 23(e), the Court may also
20   consider some or all of the following factors:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

26   *McKinney-Drobnis*, 16 F.4th at 609 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575
27   (9th Cir. 2004)) (emphasis omitted).  In addition, "[a]dequate notice is critical to court approval of
28   a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court

5

finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

### i. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id*. Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 245 at 13–15; *see also* Dkt. No. 255-1 ("Supp. Webb Decl."). As of April 1, 2024, Epiq Class Action and Claims Solutions, Inc. ("Epiq") mailed a total of 68,394 Postcard Notices to potential Settlement Class Members and their nominees. Supp. Webb Decl. at ¶ 5. Epiq re-mailed 221 Postcard Notices. *Id*. at ¶ 6. Epiq also published notice on the DTC Legal Notice System website, in *Investor's Business Weekly* and *PR Newswire*, and on the settlement website, and maintained a toll-free telephone number for the settlement. Dkt. No. 253-2 ("Webb Decl.") at ¶¶ 11–16. As of May 1, 2024, Epiq received 23,856 timely claims, and has processed 21,367, or 89.56% of the timely claims received. Dkt. No. 257 ("Second Supp. Webb Decl.") at ¶¶ 3, 5. The total preliminary recognized loss for these claims is approximately $74 million. *Id*. at ¶ 5. Also as of May 1, 2024, Epiq received no objections to the settlement and four requests for exclusion from the Settlement Class. *See* Supp. Webb Decl. at ¶¶ 9–11; Second Supp. Webb Decl. at ¶¶ 6–7. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

///

### ii. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See* Dkt. No. 245 at 7–12; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to class members; and the Court still carefully scrutinizes the request for attorneys' fees and costs to ensure class members' interests are protected under the settlement. *See* Section II.B. The Court further finds that other factors discussed in *McKinney-Drobnis* also indicate that the proposed settlement is fair, adequate, and reasonable.

#### a. Strength of Plaintiffs' Case, Litigation Risk, and Risk of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching v. Siemens Indus., Inc.*, Case No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. Were this case to proceed, Class Counsel anticipate significant risks that the Settlement Class would recover substantially less than the Settlement Amount, or nothing at all. *See* Dkt. No. 253-1 ("Porritt Decl.") at ¶ 29. Counsel emphasize that the Court already granted Defendants' motions to dismiss the majority of Plaintiffs' claims and that this case has been reduced to two narrow statements, both of which are subject to significant

1  factual disputes as to falsity. *Id*. at ¶¶ 29–31. In addition, Defendants plan to raise substantial
2  causation and damages defenses, such that Plaintiffs' potential recovery could be dramatically
3  limited, if not eliminated. *See id*. at ¶¶ 31–34, 38. In short, despite having confidence in their
4  claims, Class Counsel acknowledge facing uncertainty in establishing liability beyond the
5  pleading stage. *See* Dkt. No. 253 at 19 (citing Porritt Decl. at ¶ 30). In reaching a settlement,
6  Plaintiffs have ensured a favorable recovery for the class and avoided these risks. *See Rodriguez*,
7  563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement).
8  Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL
9  2926210, at *4 (favoring settlement to protracted litigation).

### b.     Settlement Amount

The Court previously concluded that the amount of the settlement was within the range of possible approval. *See* Dkt. No. 245 at 11–12. Its opinion has not changed. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, Case No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (citing cases).

Here, Plaintiffs' damages expert estimates that, assuming Plaintiffs were to prevail on all remaining claims against Defendants, the realistic total maximum recoverable damages would be approximately $57.8 million. Porritt Decl. at ¶¶ 33, 37. Accordingly, the gross settlement amount represents approximately 5.2% of the estimated maximum damages potentially available in this action. *Id*. at ¶ 11. Counsel contends that this amount is fair and reasonable in light of the range of other securities class action settlements, the procedural history and stage of this litigation, and the fact that Defendants would likely assert defenses which could substantially reduce Plaintiffs' damages even further. Dkt. No. 253 at 23–24; Porritt Decl. at ¶¶ 37–38. The Court agrees that this recovery is in line with comparable class action settlements. *See, e.g.*, *In re Aqua Metals, Inc. Sec. Litig.*, Case No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (approving settlement fund amount of 7.3% of the class's total estimated damages); *Azar v. Blount Int'l, Inc.*, Case No. 3:16-cv-0483-SI, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving

United States District Court
Northern District of California

settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions"). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).

The Court also approves of the plan of allocation and the proposed *cy pres* recipient for the same reasons discussed at preliminary approval. *See* Dkt. No. 245 at 9–10, 13. The settlement fund will be distributed on a pro rata basis according to each class member's recognized loss. *See id.* at 13 (citing SA §§ 1.42, 4.1; Dkt. No. 237-5, Ex. A-1 at 13–18 (Plan of Allocation)). And the proposed *cy pres* recipient, the Bay Area Financial Education Foundation, does work that aligns with the objectives of the securities laws underlying this case and the class members' interest in protecting investors. *See* Dkt. No. 245 at 9–10 (citing Dkt. No. 242). Thus, there is a sufficient "driving nexus" between the class and the *cy pres* recipient. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). The Court thus finds that this factor weighs in favor of approval.

### c.     Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The parties reached settlement after four years of contested litigation involving significant discovery and extensive investigation into Plaintiffs' claims. *See* Porritt Decl. at ¶¶ 13, 19–25; Dkt. No. 253 at 24. Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### d.     Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural*

*Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.") (citation omitted).

As discussed above, the settlement terms were publicized through a notice process that this Court has deemed adequate. Only four class members requested exclusion from the settlement, and no class members objected. *See* Supp. Webb Decl. at ¶¶ 9–11; Second Supp. Webb Decl. at ¶¶ 6–7; *see also Martin v. AmeriPride Servs., Inc.*, Case No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.") (citations omitted). The Court finds that the positive reaction of the settlement class supports approval of the settlement.

\* \* \*

After considering and weighing the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees and Costs

In its unopposed motion and consistent with the Settlement Agreement, Class Counsel ask the Court to approve an award of $900,000.00 in attorneys' fees and $85,000.00 in costs and expenses. *See* Dkt. No. 254 at 3, 10–28.

#### 1. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft*

*Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In common fund cases, 25% of the total pool is the "benchmark" for a reasonable fee award. *See, e.g.*, *In re Bluetooth,* 654 F.3d at 942. However, even where the benchmark is requested, the award "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. These circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See id*. at 1048–50.

In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Laffitte*, 1 Cal. 5th at 506. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965). Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citations omitted).

### 2. Discussion

Class Counsel here seek $900,000.00 in attorneys' fees and $85,000.00 in costs, or $985,000.00 total. *See* Dkt. No. 254. They urge that their requested fees are appropriate under the "percentage of fund" method, in that they represent 30% of the $3,000,000 settlement fund, which is below the maximum amount that may be requested under the parties' Settlement Agreement. *See generally id*.

The first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). As discussed, Class Counsel obtained a significant recovery for the class by securing a $3,000,000 non-reversionary settlement

11

fund. The Court agrees that this is a good result that confers benefits on the class. The fact that no class members have objected and only four class members opted out buttresses this conclusion.

This recovery must be considered in light of the significant risks that Plaintiffs would face in further litigation. In fact, the risk that further litigation might result in Plaintiffs not recovering *at all* is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. As Class Counsel explained in support of the motion for final approval, Plaintiffs would face considerable difficulty obtaining similar recovery through further litigation, given the narrowness and complexity of the case. *See* Porritt Decl. at ¶¶ 29–31. Counsel acknowledged that there is a substantial risk that Defendants could succeed in reducing or eliminating recoverable damages by establishing that the remaining two statements were not materially false or misleading, or via successful damages and causation defenses. *See id*. at ¶¶ 31–34, 38; *see also* Dkt. No. 254 at 17–18. Given these challenges, this factor weighs in favor of awarding substantial fees. *See Vizcaino*, 290 F.3d at 1048.

Class Counsel also litigated this case skillfully and professionally. The risk that counsel took in litigating this case on a contingency basis for the last few years weighs in favor of a substantial attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Counsel spent considerable time on this case without any certainty that they would be compensated. *See, e.g.*, Dkt. No. 254 at 19–22; Porritt Decl. at ¶¶ 66–68. Further, counsel conducted an extensive investigation, engaged in substantial and voluminous fact discovery, and defended against three simultaneous motions to dismiss. *See* Porritt Decl. at ¶¶ 13, 19–25.

However, the Court is also cognizant of its obligation to review class fee awards with particular rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino*, 290 F.3d at 1052 (internal quotation marks and citation omitted).

Here, given all the above factors, particularly the significant amount of work Class

1    Counsel performed in this case, the substantial risk taken on a contingency basis, and the good
2    results achieved, the Court finds that an increase above the 25% benchmark is warranted, and that
3    the requested award of 30% of the fund, or $900,000.00, is appropriate under the circumstances.
4    Courts in this district have awarded similar fees in comparable securities cases. *See, e.g.*, *In re*
5    *Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (awarding 28% of the
6    common fund in securities class action); *In re Nuvelo, Inc. Sec. Litig.*, Case No. C 07–04056 CRB,
7    2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding 30% of the common fund in
8    securities class action); *In re CV Therapeutics, Inc., Sec. Litig.*, Case No. C 03–3709 SI, 2007 WL
9    1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding 30% of the common fund in securities class
10   action); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377–78 (N.D. Cal. 1989)
11   (surveying securities cases nationwide and noting, "This court's review of recent reported cases
12   discloses that nearly all common fund awards range around 30% . . . ."); *In re Pac. Enterprises*
13   *Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of the common fund in
14   simultaneous securities and derivative class action).

15   The reasonableness of an award of 30% of the settlement fund is also confirmed by a
16   lodestar cross-check. As a final check on the reasonableness of fees, the Court may compare the
17   requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at
18   1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the
19   litigation, provides a check on the reasonableness of the percentage award."). The Court must
20   "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*,
21   461 U.S. at 434 (citation omitted).

22   Class Counsel represent that they expended 2,929.4 hours on this case, resulting in a
23   lodestar of $1,793,118.50.[3] *See* Dkt. No. 254 at 20; Porritt Decl. at ¶ 62. Counsel's hourly rates
24   range from $900 to $1,000 for partners, $500 to $675 for associates, $475 for staff attorneys, and
25   $325 for paralegals. Porritt Decl. at ¶ 62; *see also id.*, Ex. A (Lodestar Report from Inception

---

[3] Additional counsel Hagens Berman Sobol Shapiro LLP expended 525.3 hours on this case, resulting in a lodestar of $393,055.00. *See* Dkt. No. 254 at 20 n.3; Porritt Decl. at ¶ 62. At the final fairness hearing, Class Counsel explained that the attorneys' fees for additional counsel is factored into Plaintiffs' fees request.

1    through January 31, 2024). This is in line with prevailing rates in this district in similar cases for
2    personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*,
3    Case No. 16-cv-05479-JST, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 18, 2018) (finding rates
4    ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245
5    to $350 for paralegals to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*
6    *Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17,
7    2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and
8    $80 to $490 for paralegals to be reasonable). The requested amount represents a 0.5 negative
9    multiplier—*i.e.*, approximately half of fees actually incurred—to Class Counsel's anticipated
10   lodestar. Dkt. No. 254 at 23; Porritt Decl. at ¶¶ 62, 71. In similar cases, courts, including this
11   Court, have approved multipliers ranging from 1.0 to 4.0. *See Vizcaino*, 290 F.3d at 1051
12   n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and
13   54% in the 1.5 to 3.0 range); *In re Lyft Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2023 WL
14   5068504, at \*12 (N.D. Cal. Aug. 7, 2023) (approving 1.47 multiplier in securities case); *In re*
15   *Aqua Metals*, 2022 WL 612804, at \*9 (approving 0.4 negative multiplier in securities case); *Vataj*
16   *v. Johnson*, Case No. 19-cv-06996-HSG, 2021 WL 5161927, at \*9 (N.D. Cal. Nov. 5, 2021)
17   (approving 2.5 multiplier in securities case). Overall, the lodestar cross-check supports the
18   reasonableness of the fee.
19       An attorney who has created a common fund for the benefit of the class is also entitled to
20   reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d 16 at 19. Here,
21   Class Counsel request $85,000.00 in costs, which is the same amount that was published in the
22   notice sent to class members and less than the $85,453.26 that counsel represents was incurred in
23   this litigation. *See* Dkt. No. 254 at 11, 27–28; Porritt Decl. at ¶ 74; Webb Decl., Ex. A; *id.*, Ex. B
24   at ¶ 5. To support their request, counsel have submitted an expense report containing a breakdown
25   of their costs and expenses, which includes costs for investigations, experts, mediation, and travel.
26   *See* Porritt Decl., Ex. C (Expense Report from Inception through January 31, 2024). The largest
27   claimed cost of $25,785.00 was for the retention of accounting and damages experts. *Id*. The
28   Court finds that counsel's requested expenses are reasonable and **GRANTS** the request as to the

14

costs.

\* \* \*

The Court accordingly **GRANTS** the request for attorneys' fees and costs, and awards to Class Counsel $900,000.00 in attorneys' fees and $85,000.00 in costs, for a total of $985,000.00.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 253, and **GRANTS** the motion for attorneys' fees, Dkt. No. 254.  The Court awards attorneys' fees in the amount of $900,000.00 and costs in the amount of $85,000.00.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement.  The parties are further directed to file a short stipulated final judgment of two pages or less within 7 days from the date of this order.  The judgment need not, and should not, repeat the analysis in this Order.  For guidance on the format of such a stipulated judgment, the Court directs the parties to review *Vataj v. Johnson*, Case No. 4:19-cv-06996, Dkt. No. 139.

Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the Settlement Agreement).  In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.  The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website.  The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorney's fees granted in this Order until the Post-Distribution Accounting has been filed.  Class counsel shall file a proposed order releasing the

1   remainder of the fees when they file their Post-Distribution Accounting.

2   **IT IS SO ORDERED.**

3   Dated: 5/6/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge